**KELLER POSTMAN LLC**
   Warren D. Postman (330869)
   wdp@kellerpostman.com
   Albert Y. Pak (*pro hac vice* forthcoming)
   albert.pak@kellerpostman.com
1100 Connecticut Ave, N.W. Suite 1100
Washington, D.C. 20036
Telephone: 202-918-1123
Facsimile: 312-971-3502

   Patrick A. Huber (*pro hac vice* forthcoming)
   patrick.huber@kellerpostman.com
150 North Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone: 312-280-5790
Facsimile: 312-971-3502

**DAVIS & NORRIS, LLP**
   Frank Davis (*pro hac vice* forthcoming)
   fdavis@davisnorris.com
   Wesley W. Barnett (*pro hac vice* forthcoming)
   wbarnett@davisnorris.com
   Dargan Ware (329215)
   dware@davisnorris.com
The Bradshaw House
2154 Highland Avenue
Birmingham, AL 35205
Telephone: 205-930-9976

*Attorneys for Petitioners*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARCUS BROOKS, KATHARINE GUZENSKI, RODRIGO MALDONADO, CANDIDA ORTIZ, and COURTNEY WALKER,<br><br>Petitioners,<br><br>vs.<br><br>WARNERMEDIA DIRECT, LLC,<br><br>Defendant. | Case No. 2:23-cv-07579 GW (MRWx)<br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONERS' PETITION TO COMPEL ARBITRATION**<br><br>**Judge George H. Wu**<br><br>**Date**: November 6, 2023<br>**Time**: 8:30 AM |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on November 6, 2023, at 8:30 AM, or at such other time as this Court may order, Petitioners will and hereby do petition this Court, under Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, for an order compelling Respondent WarnerMedia Direct, LLC ("WarnerMedia") to arbitrate Petitioners' data privacy claims in the Central District of California.

Each Petitioner and WarnerMedia entered into an agreement requiring them to arbitrate all disputes, aside from two narrow exceptions that are not relevant here. Pursuant to that agreement, each Petitioner filed an individual demand for arbitration seeking to litigate that Petitioner's data privacy claims relating to their online video streaming before the American Arbitration Association ("AAA"), the organization that the parties' agreement states must administer the arbitration.  WarnerMedia has failed to comply with the parties' agreement because it has refused to register its arbitration agreement and pay fees to the AAA—fees AAA requires before it will empanel arbitrators and begin Petitioners' arbitrations.

Accordingly, WarnerMedia has "fail[ed], neglect[ed], or refus[ed] . . . to arbitrate under a written agreement for arbitration."  9 U.S.C. § 4.  Pursuant to the FAA, this Court should "direct[] that such arbitration proceed in the manner provided for in [the parties'] agreement."  *Id.*

Because WarnerMedia's conduct in refusing to pay fees to the AAA and otherwise comply with AAA rules has prevented the arbitrations that its own

1   agreement required, California law provides for sanctions, including the payment of

2   attorney fees and other arbitration costs.  Petitioners ask this Court to grant those

3   sanctions together with its order compelling arbitration with the AAA.

4        This Petition is based on this Notice of Petition, the following Memorandum

5   of Points and Authorities, the accompanying Declarations of Petitioners, the

6   accompanying Declaration of Patrick Huber, all records on file with this Court

7   (including the Petition itself), and such other and further oral and written arguments

8   as may be presented at, or prior to, the hearing on this matter.

9

10

11

12

13

14

15

16

17

18

19

20

21

# **TABLE OF CONTENTS**

BACKGROUND .......................................................................................... 3

    A.    Petitioners Sign Up for HBO Max Accounts.............................................. 3

    B.    WarnerMedia Compels Class Case to AAA Arbitration. ........................... 4

    C.    WarnerMedia Posted a New Arbitration Agreement on December 20, 2022 ........................................................................................................ 8

    D.    Each Petitioner Brings Their Dispute Under the HBO Max Terms. ........ 10

    E.    Each Petitioner Filed an Arbitration Demand with the AAA on July 18. 11

ARGUMENT............................................................................................. 13

I.    The HBO Max Terms Require WarnerMedia to Arbitrate Under AAA's Rules .................................................................................................... 14

    A.    The Parties Entered into a Valid Arbitration Agreement. ....................... 15

    B.    The Arbitration Agreement Covers the Present Dispute. ......................... 16

    C.    The Arbitration Agreement Invokes AAA Rules. .................................... 16

II.    WarnerMedia Should Be Sanctioned Under California Law Because It Failed to Arbitrate Claims Under the Terms It Imposed......................................... 20

CONCLUSION.......................................................................................... 23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases** **Page(s)**

3

*Abernathy v. DoorDash, Inc.*,
   438 F. Supp. 3d 1062 (N.D. Cal. 2020) ........................................................... 23

4

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ........................................................................................ 14

5

*AT&T Techs., Inc. v. Comm'ns. Workers*,
   475 U.S. 643 (1986) ........................................................................................ 16

6

*Brown v. Dillard's, Inc.*,
   430 F.3d 1004 (9th Cir. 2005) ......................................................................... 18

7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ......................................................................... 14

8

9

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) .............................................................................. 14, 19

10

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
   561 U.S. 287 (2010) ........................................................................................ 16

11

12

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) ...................................................................................... 2, 14

13

*Lee v. Ticketmaster L.L.C.*,
   817 F. App'x 393 (9th Cir. 2020) ................................................................... 15

14

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) .............................................................................. 15

15

16

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ......................................................................... 15

17

*Pre-Paid Legal Servs. v. Cahill*,
   786 F.3d 1287 (10th Cir. 2015) ....................................................................... 19

18

19

*Sink v. Aden Enters., Inc.*,
   352 F.3d 1197 (9th Cir. 2003) ......................................................................... 19

20

21

MEMORANDUM IN SUPPORT OF PETITION TO COMPEL ARBITRATION

**Statutes**

9 U.S.C. § 4.................................................................................................13

**Other Authorities**

Cal. Code Civ. P. § 1281.97 ...............................................19, 20, 21, 22

Senate Bill 707................................................................................19, 20

MEMORANDUM IN SUPPORT OF PETITION TO COMPEL ARBITRATION

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Petitioners are individual HBO Max users who streamed HBO videos on their web browsers, mobile devices, and Smart TVs. These Petitioners initiated arbitrations against WarnerMedia in the American Arbitration Association ("AAA"), following WarnerMedia's mandatory arbitration clause in the HBO Max Terms of Use ("AAA Arbitration Agreement"), for transmitting their personal information to third parties through the HBO Max platform in violation of the federal Video Privacy Protection Act ("VPPA"). Petitioners bring the present action because WarnerMedia has refused to proceed in the arbitration process that WarnerMedia forced on Petitioners as a condition of signing up for HBO Max.

Since WarnerMedia launched the HBO Max platform in May 2020, it has mandated that its customers bring their disputes with it in private arbitration rather than in court. Earlier this year, WarnerMedia successfully compelled a putative class action lawsuit alleging VPPA claims from federal court to arbitration.

Thus, when each Petitioner filed an individual arbitration demand with the AAA, they expected WarnerMedia to honor its contract, as it forced the class Plaintiffs to do. But instead, WarnerMedia refused. The day after Petitioners filed their demands, WarnerMedia wrote to the AAA, saying "WarnerMedia's arbitration agreement is not, and will not be, registered with the AAA" and asking the AAA to decline to administer the arbitrations. The AAA responded by noting that

1  "WarnerMedia failed to comply with the AAA's policies regarding consumer

2  claims," and, accordingly, declined to administer the arbitrations.

3      Petitioners now ask this Court to compel arbitration before the AAA under its

4  Consumer Arbitration Rules.  Under binding precedent, a court must grant a petition

5  to compel arbitration if: (1) the parties have entered into a valid arbitration

6  agreement, and (2) the agreement covers the dispute.  *Howsam v. Dean Witter*

7  *Reynolds, Inc.,* 537 U.S. 79, 83–84 (2002).  Both prongs are easily met.  Each

8  Petitioner signed up for an HBO Max account, expressly agreeing to the AAA

9  Arbitration Agreement.  *See* Petitioner Declarations.[1]  The AAA Arbitration

10  Agreement in the HBO Max Terms of Use stated that disputes must be resolved by

11  binding arbitration, and that "[t]he arbitration will be governed by the Consumer

12  Arbitration Rules ("**AAA Rules**") of the American Arbitration Association

13  ("**AAA**")."

14      WarnerMedia may argue that the arbitration agreement in its current Terms of

15  Use applies, specifying National Arbitration and Mediation as the arbitration forum

16  ("NAM Arbitration Agreement"), but this arbitration agreement was first introduced

17

18

---

19  [1] "Petitioner Declarations" refer collectively to Declaration of Petitioner Marcus
    Brooks in Support of Petition to Compel Arbitration, Declaration of Petitioner
    Katharine (Rose) Guzenski in Support of Petition to Compel Arbitration,
20  Declaration of Petitioner Rodrigo Maldonado in Support of Petition to Compel
    Arbitration, Declaration of Petitioner Candida Ortiz in Support of Petition to
    Compel Arbitration, and Declaration of Petitioner Courtney Walker in Support of
21  Petition to Compel Arbitration, each filed concurrently with this Memorandum.

in the HBO Max Terms of Use dated December 20, 2022.[2]  Petitioners each agreed to arbitrate these disputes pursuant to the AAA Arbitration Agreement.  This Court must therefore compel WarnerMedia to arbitration with Petitioners before the AAA.

In addition, California law imposes mandatory statutory sanctions where, as here, a party forces an arbitration contract on consumers and then refuses to pay the fees required for the arbitration to move forward.  WarnerMedia acted with profound bad faith in compelling a class case to arbitration, and then refusing to participate in the arbitration process it compelled.  The California legislature enacted Senate Bill 707 in 2020 and Senate Bill 762 in 2021 specifically to deter this conduct, and this Court should sanction WarnerMedia under that law.

**BACKGROUND**

**A.**     **Petitioners Sign Up for HBO Max Accounts.**

Petitioners all reside in this District.  *See* Petitioner Declarations.  They each signed up for HBO Max accounts between July 2020 and April 2022.  *Id.*  In 2022, they retained counsel to investigate and, if appropriate, pursue data privacy claims against WarnerMedia in arbitration for unlawfully disclosing their personal information through the HBO Max video streaming platform.

---

[2] In May 2023, WarnerMedia re-branded its streaming service as simply "MAX" and revised its Terms of Use.  Despite the name change, the arbitration agreement in the MAX Terms of Use (dated May 23, 2023) remains the same in substance as the one that was introduced in the HBO Max Terms in December 2022.  *Compare* Ex. D, *with* Ex. E.

**B.     WarnerMedia Compels Class Case to AAA Arbitration.**

While Petitioners had active HBO Max accounts, in March 2022, in a separate action, Plaintiffs Angel McDaniel and Constance Simon filed a putative class action lawsuit against WarnerMedia in the Southern District of New York. *See* Compl., *McDaniel, et al. v. Home Box Office, Inc.*, 1:22-cv-01942-ER (S.D.N.Y. Mar. 8, 2022). Like Petitioners here, the Plaintiffs there alleged that WarnerMedia "violated the VPPA by knowingly transmitting Plaintiffs' and the putative class's personally identifiable information to unrelated third parties" through the HBO Max streaming platform. *Id.* ¶ 5.

Predictably, soon thereafter, WarnerMedia responded by doing what many big companies facing consumer class actions do: they filed a motion to compel arbitration. Mot., ECF No. 17. WarnerMedia argued that McDaniel and Simon "affirmatively agreed when they created their HBO Max accounts that these claims would be arbitrated and handled individually." Mem., ECF No. 18, at 7.

> This agreement was express: Plaintiffs voluntarily checked a box agreeing to HBO Max's Terms of Use, which include a prominent notice in the very first paragraph of the dispute resolution provisions that apply here. These binding contractual obligations must be enforced under directly applicable Supreme Court precedent, as well as the Federal Arbitration Act, Second Circuit precedent, and New York Law. Accordingly, the Court should compel Plaintiffs to submit their individual claims against HBO to binding arbitration, dismiss their class claims with prejudice, and stay this proceeding pending resolution of the arbitration process.

*Id.*  When the Plaintiffs there signed up for HBO Max accounts (in November 2020 and May 2021), McDaniel and Simon each entered into an arbitration agreement with WarnerMedia, in its words, "in the most unambiguous manner possible:  they clicked a button next to the words 'I agree.'"  Mem. at 12.  WarnerMedia demonstrated how the Plaintiffs there were required to create HBO Max accounts and accept the HBO Max Terms of Use before accessing video content on the platform:

> Plaintiffs took affirmative steps to accept HBO Max's TOU [(Terms of Use)] when they created their HBO Max accounts.  Plaintiffs allege that they subscribed to HBO Max through Amazon Prime Channels and AT&T Wireless.  See Class Action Complaint ("CAC") ¶¶ 67, 74. After subscribing via these distributors, Plaintiffs were required to create individual accounts with HBO Max in order to gain access to the HBO Max platform.  Davis Decl. ¶¶ 5–10, 12–16.  At the time Plaintiffs created their accounts, HBO Max's account-creation screen presented subscribers with the option to check a button next to the words "I agree to the HBO Max Terms of Use and Privacy Policy."  Id. ¶¶ 15–17.  The phrase "Terms of Use" appeared in different-colored font and hyperlinked to the TOU. Id ¶¶ 15–16.  Without checking that box, Plaintiffs could not have completed the account creation process that is required to use the HBO Max platform.

*Id.* at 8–9.  In an accompanying declaration, WarnerMedia made clear that "[a]nyone who purchases a subscription to HBO Max—whether it is via a third party distributor such as Amazon Prime Channels or AT&T, or directly with WarnerMedia—is required to create an account with HBO Max before they are able to activate their subscription"—and "[t]his has always been the case since HBO Max launched on

May 27, 2020." Decl., ECF No. 19, ¶ 8.  And in creating their accounts, the users agreed to the HBO Max Terms.

The HBO Max Terms "begin by trumpeting, in their first paragraph, an "IMPORTANT MESSAGE" notifying the reader in capitalized, bold font that "**THESE TERMS REQUIRE THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN COURTS OR JURY TRIALS**."  Mem. at 10.  The Terms "go on to state, in bold font, '**we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction.**'"  *Id.*  The Terms provide that WarnerMedia and its users "agree to arbitrate **all disputes** between us, except for claims arising from bodily injury or that pertain to enforcing, protecting, or the validity of your or our intellectual property rights[.]"  *Id.*

Additionally, the Terms provide that the "arbitration will be governed by the Consumer Arbitration Rules ('AAA Rules') of the American Arbitration Association ('AAA'), as modified by this arbitration provision, and will be administered by the AAA."  *Id.* at 11.  The AAA Arbitration Agreement states that all issues "are for the arbitrator to decide, except that issues relating to the scope and enforceability of the arbitration provision or whether a dispute can or must be brought in arbitration are for the court to decide."  *Id.*

MEMORANDUM IN SUPPORT OF PETITION TO COMPEL ARBITRATION

1    Plaintiffs in the class case were current HBO Max subscribers as of June

2    2022.[3]  WarnerMedia submitted a copy of its Terms of Use dated April 29, 2020,

3    noting that, the Terms "and Arbitration Agreement have been updated recently as a

4    result of the recent combination of WarnerMedia and Discovery to change certain

5    references from the prior parent company of WarnerMedia (AT&T) to its new parent

6    company (Warner Bros. Discovery), but the substance of the Arbitration Agreement

7    remains unchanged from the version that Plaintiffs saw when they created their HBO

8    Max accounts."  Mem. at 4, n.2.

9    In an apparent attempt to assuage the district court's concerns about

10   enforceability, WarnerMedia specifically highlighted provisions of the AAA

11   Arbitration Agreement in place "to ensure that subscribers can cost-effectively

12   pursue individuals claims, including by relieving subscribers of the burden of paying

13   any arbitration-related fees in claims worth $75,000 or less[.]"  *Id.* at 11–12.

14   The district court rejected Plaintiffs' arguments that they never agreed to the

15   AAA Arbitration Agreement, finding that "they were given an opportunity to review

16   the terms when they registered for their HBO Max accounts."  Order, ECF No. 34,

17

18   _____

[3] *See* Reply Decl. Davis, ECF No. 28, ¶ 2 ("WarnerMedia's records further reflect

19   that Plaintiff Simon has maintained her HBO Max account and an active subscription through AT&T since May 6, 2021, and that she has continued accessing her HBO Max account and using the HBO Max platform since then,

20   most recently in June 2022."); ¶ 5 ("Plaintiff McDaniel has continued to pay monthly subscription fees directly to WarnerMedia every month since [September 2021].  Plaintiff McDaniel has continued accessing her HBO Max account and

21   using the HBO Max platform, most recently in June 2022.").

at 5. "The fact that they may not have done so is irrelevant; the terms were conspicuously presented for their review." *Id.* The court granted WarnerMedia's motion to compel arbitration, dismissed the class claims, and stayed the case pending arbitration. *Id.* at 8. The court ordered the parties to "submit a joint update on the status of arbitration every six months," with the first update being due on July 15, 2023. *Id.* The Parties never submitted a joint update—on July 17, 2023, Plaintiffs voluntarily dismissed their case. *See* Notice, ECF No. 35.

### C.   WarnerMedia Posted a New Arbitration Agreement on December 20, 2022

While WarnerMedia's motion to compel was still pending in the district court, on December 20, 2022, WarnerMedia sent an email to its subscribers stating that it had changed its Terms of Use with "updates to the arbitration clause." That email provided that, for existing HBO Max subscribers, "the [new] terms apply beginning on the date your subscription renews or 30 days from today, whichever comes first." The email did not disclose the pending class claims.

The new arbitration provision, dated December 20, 2022, includes various byzantine procedural requirements transparently designed to prevent any meaningful number of claimants from pursuing claims. *See* HBO Max Terms of Use (Effective Dec. 20, 2022) (Huber Decl. Ex. D). These new provisions entail more detailed pre-dispute notice obligations and mandate that each consumer personally attend an individualized settlement conference at WarnerMedia's request,

even if they are already represented by counsel. *Id.* Additionally, WarnerMedia shifted its arbitration provider from the AAA to National Arbitration and Mediation. *Id.* Furthermore, there is an "offer of settlement" provision that allows WarnerMedia to shift all arbitration costs to a consumer if the consumer fails to secure an award greater than WarnerMedia's offer, or, at the very least, prevents a prevailing consumer from exercising their statutory right to attorneys' fees. *Id.*

The revised Terms also introduce a staged "batching" provision, explicitly limiting the number of consumers allowed to proceed with arbitration at any given time. *Id.* If twenty-five or more claimants file demands, only fifty are allowed to pursue arbitration. *Id.* Once those fifty arbitrations are completed, the parties must engage in mediation, with no obligation to reach a settlement. *Id.* Following this, only one-hundred more claimants may move forward in arbitration, followed by another round of non-binding mediation. *Id.* Subsequently, only two-hundred additional claimants may proceed in arbitration, followed by yet another non-binding mediation. *Id.* If a claimant's claim is not resolved through this staging approach—and it could take several years to finish those first three-hundred-and-fifty arbitrations—a claimant can finally choose to opt out of arbitration and have their claim heard in court. *Id.* However, this opt out notice must meet certain criteria: (1) it must be personally signed by the claimant, (2) it cannot be sent by the claimant's attorney, and (3) it must be received by WarnerMedia within thirty days of the conclusion of the third set of staged proceedings. *Id.* If WarnerMedia rejects

a claimant's opt-out notice, that claimant, along with all remaining claimants who do not opt out, are compelled into a perpetual batching process, where only two-hundred claimants may advance per round of arbitrations. *Id.* With this provision in place, most Claimants would be subjected to waiting several *decades* to pursue their claims in arbitration, if they ever have the opportunity to do so.

### D. Each Petitioner Brings Their Dispute Under the HBO Max Terms.

But Petitioners each agreed to the AAA Arbitration Agreement contained in the HBO Max Terms. Each Petitioner began the dispute-resolution process required by the AAA Arbitration Agreement by serving on WarnerMedia a Notice of Dispute in January 2023. *See* Huber Decl. ¶¶ 7–9. By serving a Notice of Dispute, Petitioners initiated the necessary contractual process for "the party who intends to seek arbitration." HBO Max Terms of Use (Huber Decl. Ex. A at 35); HBO Max Terms of Use (Effective Oct. 19, 2021) (Huber Decl. Ex. B at 45); HBO Max Terms of Use (Effective Nov. 1, 2022) (Huber Decl. Ex. C at 33) (all of these Terms are collectively referred to as the "HBO Max Terms" and the substantively identical arbitration provision therein as the "AAA Arbitration Agreement"). As required by the Agreement, Petitioners' Notices each contained (1) their name, mailing address, and email address; (2) a description of the nature and basis of their claim; (3) an explanation of the relief sought; (4) their signature; and (5) a statement explaining that they had retained an attorney and authorized HBO Max to disclose their

confidential HBO Max account details to the attorney for the purpose of resolving any potential claims.

WarnerMedia's counsel reached out to discuss the disputes, and, eventually, the parties agreed to mediate before a former federal judge, which took place on May 25, 2023.  Unfortunately, the mediation was unsuccessful, and, after almost two months of delay following the mediation, it became clear to Petitioners that WarnerMedia was not interested in resolving Claimants' disputes.

### E.     Each Petitioner Filed an Arbitration Demand with the AAA on July 18.

On July 18, 2023, Petitioners each filed arbitration demands with the AAA in accordance with the HBO Max Terms.  Huber Decl. ¶ 10; Huber Decl. Exs. L–Q.  The next day, the AAA confirmed receipt of the demands.  Shortly thereafter, that same day, WarnerMedia responded, stating that "[t]he AAA has previously confirmed that it will not administer any new consumer arbitrations involving WarnerMedia."  July 19, 2023 Letter from WarnerMedia (Huber Decl. Ex. P).  "As the AAA is aware, WarnerMedia's arbitration agreement is not, and will not be, registered with the AAA."  *Id.*  WarnerMedia asked the AAA to "promptly decline the administration of the Demands pursuant to its own procedures."  *Id.*  WarnerMedia also lodged baseless ethical accusations against Keller Postman and asked the AAA to "investigate Claimants' and Claimants' Counsel's actions in connection with these attempted filings."  *Id.*  WarnerMedia insisted in its response

1  that it "has designated National Arbitration and Mediation ("NAM") to administer

2  consumer arbitrations" in its current Terms of Use.  *Id.*

3      But WarnerMedia's response is not a justification for its refusal to comply

4  with its contractual obligations to Petitioners.    Petitioners responded to

5  WarnerMedia, stating that, "[u]nder AAA Consumer Rule 12, WarnerMedia was

6  required to submit its AAA arbitration agreement to AAA for review[.]"  July 20,

7  2023 Email from P. Huber (Huber Decl. Ex. Q); *see* AAA Consumer Rule 12

8  (requiring businesses that require their consumers to arbitrate disputes before the

9  AAA to submit their arbitration agreement for review and registry, and providing

10 that if an arbitration is filed by a consumer in the absence of that review and registry,

11 "AAA will conduct an expedited review at that time," and "business will also be

12 responsible for paying the nonrefundable review and Registry fee" in addition to

13 "other filings fees that are owed").  Petitioners asked AAA to "issue an invoice to

14 WarnerMedia for the nonrefundable review and Registry fee, along with any fees

15 associated with an expedited review."  July 20, 2023 Email from P. Huber (Huber

16 Decl. Ex. Q).

17     In a letter dated August 11, 2023, the AAA once again acknowledged receipt

18 of the individual demands and "note[d] that the arbitration clause submitted provides

19 for administration by the AAA."  August 11, 2023 AAA Letter (Huber Decl. Ex. R).

20 However, the AAA made clear that, "[p]rior to the filing of these arbitrations,

21 WarnerMedia specifically requested that their arbitration clause be removed from

the AAA's Consumer Clause Registry." *Id.* "WarnerMedia failed to comply with the AAA's policies regarding consumer claims, as set forth in the Consumer Due Process Protocol (Protocol) and Consumer Arbitration Rules (Rules), including the Costs of Arbitration[.]" *Id.* "[G]iven WarnerMedia's position that no version of its clause will be registered with the AAA and its prior non-compliance as stated above," the AAA "decline[d] to administer these cases" and closed its files. *Id.* The AAA stated that it "remains available to administer the parties' arbitrations . . . per a court order compelling these matters to arbitration administered by the AAA or in accordance with [AAA] rules." *Id.*

Petitioners then filed this action in Court so that the AAA would be able to arbitrate these disputes.

## ARGUMENT

The AAA Arbitration Agreement in the HBO Max Terms apply, which means the Court must compel WarnerMedia to arbitration under AAA rules—but that alone is not enough. Petitioners are also entitled to sanctions under the California Arbitration Act because WarnerMedia's evasion of the very arbitration provision it

invoked in compelling a class case to arbitration has prevented Petitioners from resolving their claims in arbitration.

## I.     The HBO Max Terms Require WarnerMedia to Arbitrate Under AAA's Rules.

Under the FAA, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In deciding whether to compel arbitration, courts apply a simple two-part test: (1) whether the parties have entered into a valid arbitration agreement, and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83–84 (2002).

Where the parties have formed a valid agreement to arbitrate, "the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000). The FAA "requires courts 'rigorously' to enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1621 (2018) (quoting *Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228, 233 (2013)). The court must compel WarnerMedia to arbitrate according to the terms of its agreement with Petitioners, specifically including compliance with AAA's procedural rules.

### A. The Parties Entered into a Valid Arbitration Agreement.

Petitioners plainly entered into a valid arbitration agreement with WarnerMedia when they agreed to the AAA Arbitration Agreement in the HBO Max Terms.[4]  Each Petitioner provided WarnerMedia with their personal information and signed up for an HBO Max account.  In so doing, just like Plaintiffs McDaniel and Simon in the class case, they each "entered into a valid and enforceable arbitration agreement by voluntarily clicking the 'I agree' button when they created their HBO Max accounts."  Mem. at 9.  "It is well-established that consumers manifest assent to arbitration when, presented with terms and conditions that include an arbitration agreement, they affirmatively click a box indicating that they agree to the terms." *Id.* at 10 (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)); *see also Lee v. Ticketmaster L.L.C.,* 817 F. App'x 393, 394 (9th Cir. 2020) (quoting *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175 (9th Cir. 2014)).  Accordingly, this Court, like the *McDaniel* Court, should find "that [Petitioners] assented to the [HBO Max] terms of usage."  Order at 6.

---

[4] As stated by WarnerMedia in its motion to compel, the HBO Max Terms of Use "and [AAA] Arbitration Agreement [had] been updated recently as a result of the recent combination of WarnerMedia and Discovery to change certain references from the prior parent company of WarnerMedia (AT&T) to its new parent company (Warner Bros. Discovery), but the substance of the Arbitration Agreement remains unchanged from the version that [Petitioners] saw when they created their HBO Max accounts."  Mem. at 4, n.2.

**B.    The Arbitration Agreement Covers the Present Dispute.**

Petitioners' claims also plainly fall within the scope of the AAA Arbitration Agreement in the HBO Max Terms.  By its terms, the AAA Arbitration Agreement applies to "**all disputes and claims** between" the user and WarnerMedia, "except for claims arising from bodily injury or that pertain to enforcing, protecting, or the validity of your or our intellectual property rights[.]"  HBO Max Terms (Huber Decl. Ex. A at 33; Huber Decl. Ex. B at 43; Huber Decl. Ex. C at 31–32).  The Supreme Court has instructed that, "[i]n determining the scope of an arbitration agreement, 'there is a presumption of arbitrability'" and "[d]oubts should be resolved in favor of coverage."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 314 (2010) (quoting *AT&T Techs., Inc. v. Comm'ns. Workers*, 475 U.S. 643, 650 (1986)).  Here there can be no doubt:  the disputes allege that WarnerMedia violated Petitioners' privacy rights under federal law, and therefore these disputes do not fall within the narrow exceptions in the contract.  The AAA Arbitration Agreement in the HBO Max Terms of Use therefore covers the present disputes.

**C.    The Arbitration Agreement Invokes AAA Rules.**

The AAA Arbitration Agreement incorporates AAA rules, which WarnerMedia flagrantly breached.  The Terms specify that the "arbitration will be governed by the Consumer Arbitration Rules ("**AAA Rules**") of the American Arbitration Association ("**AAA**"), as modified by this arbitration provision, and will be administered by the AAA."  HBO Max Terms (Huber Decl. Ex. A at 35; Huber

Decl. Ex. B at 46; Huber Decl. Ex. C at 34). Incorporation of AAA Rules renders those rules a part of the arbitration agreement. By agreeing to arbitrate with the AAA under AAA Rules, WarnerMedia committed itself to performing the necessary steps to make that happen, including, at minimum, registering its arbitration clause on AAA's Consumer Clause Registry and paying required arbitration fees.

After serving Notices of Dispute on HBO, and after months of informal discussions—including a mediation session with a former federal judge—WarnerMedia refused to comply with AAA rules. In a letter to the parties, AAA made clear that WarnerMedia had breached its contract with Petitioners. AAA wrote:

> Prior to the filing of these arbitrations, WarnerMedia specifically requested that their arbitration clause be removed from the AAA's Consumer Clause Registry. The AAA complied with their request. Per their request, WarnerMedia failed to comply with the AAA's policies regarding consumer claims, as set forth in the Consumer Due Process Protocol (Protocol) and the Consumer Arbitration Rules (Rules), including the Costs of Arbitration, which can be found on our website, www.adr.org.

August 11, 2023 AAA Letter (Huber Decl. Ex. R).

WarnerMedia's request to remove its arbitration clause, and its continued failure to register its arbitration clause after Petitioners filed their arbitration demands, violated the AAA Arbitration Agreement in at least two ways.

1      *First*, WarnerMedia violated the very rules it adopted in its AAA Arbitration

2  Agreement.  WarnerMedia drafted the AAA Arbitration Agreement to specify an

3  arbitration administered by AAA:  "The arbitration will be governed by the

4  Consumer Arbitration Rules ("**AAA Rules**") of the American Arbitration

5  Association ("**AAA**"), as modified by this arbitration provision, and will be

6  administered by the AAA."  HBO Max Terms (Huber Decl. Ex. A at 35; Huber Decl.

7  Ex. B at 45; Huber Decl. Ex. C at 33).  AAA's Consumer Arbitration Rule 12

8  required WarnerMedia to submit its AAA Arbitration Agreement to the AAA for

9  review and registry.  When Petitioners filed their arbitration agreements with the

10  AAA in the absence of that review and registry, Consumer Rule 12 required that

11  WarnerMedia pay the fee for an "expedited review" of the AAA Arbitration

12  Agreement, as well as the "Registry fee," together with "any other filing fees," so

13  that AAA could proceed to an expedited review and registry of the AAA Arbitration

14  Agreement.  By refusing to comply with the requirements of Consumer Rule 12,

15  WarnerMedia breached the AAA Arbitration Agreement it entered into with

16  Petitioners.

17      *Second*, WarnerMedia's failure to initiate arbitration under AAA rules by

18  refusing to pay the required costs of arbitration is a flagrant violation of its arbitration

19  agreement.  Where a party refuses to pay filing fees charged by the arbitral forum

20  designated under its arbitration agreement, it breaches that agreement.  *See, e.g.*,

21  *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010–11 (9th Cir. 2005) ("Dillard's clearly

breached the arbitration agreement" by failing to pay its "share of the filing fee"); *Sink v. Aden Enters., Inc.,* 352 F.3d 1197, 1201 (9th Cir. 2003) ("Aden's failure to pay required costs of arbitration was a material breach of its obligations in connection with the arbitration."); *Pre-Paid Legal Servs. v. Cahill,* 786 F.3d 1287, 1294 (10th Cir. 2015) (holding that a party defaulted on its arbitration agreement when AAA terminated the arbitration due to the party's nonpayment). WarnerMedia cannot avoid costs that are the direct—and entirely foreseeable—consequence of requiring each Petitioner to bring claims individually in a forum that charges separate filing fees for each arbitration. The FAA entitles Petitioners to relief for WarnerMedia's unambiguous breach of contract.

Further, the FAA is designed not only to enforce general agreements to arbitrate, but also to protect contractual designations of forum and procedure. "Not only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures." *Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1621 (2018). "Indeed, we have often observed that the Arbitration Act requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.'" *Id.* This Court should compel WarnerMedia to arbitrate under the terms it drafted, which requires submitting to the administration

of the AAA, registering its arbitration clause on the AAA Consumer Clause Registry, and paying all requisite fees.

## II.    WarnerMedia Should Be Sanctioned Under California Law Because It Failed to Arbitrate Claims Under the Terms It Imposed.

In addition to compelling arbitration before AAA, the Court should also award substantive remedies to Petitioners for HBO's bad faith conduct.  Each Petitioner is a resident of California, and WarnerMedia agreed that "any arbitration hearings will take place in the county (or parish) or your billing address."  HBO Max Terms (Huber Decl. Ex. A at 35; Huber Decl. Ex. B at 46; Huber Decl. Ex. C at 34).  The California Legislature has codified remedies for a breach of an agreement to arbitrate in California.  *See* S.B. 707, 2019–2020 Reg. Sess. (Cal. 2019), codified at Cal. Civ. Proc. § 1281.97.  The "Legislature f[ou]nd[]" specifically that

> A company's strategic non-payment of fees and costs severely prejudices the ability of employees or consumers to vindicate their rights. This practice is particularly problematic and unfair when the party failing or refusing to pay those fees and costs is the party that imposed the obligation to arbitrate disputes.

S.B. 707 § (1)(a).

The California Senate Judiciary Committee explained that Senate Bill 707 was designed to sanction bad faith acts like what WarnerMedia did here:

> Companies have been using arbitration agreements for years to prohibit employees and consumers from having their claims heard in court or as a class action. With no other recourse left to adjudicate their claims, employees have begun filing individual arbitration claims, with one employer having over 12,000 individual claims filed against it. Some employers have been refusing to pay fees and costs required to initiate arbitration, effectively placing their employees in a procedural limbo. This bill is

1
2

> intended to affirm that these practices constitute material breach of an employment or consumer arbitration agreement and provide procedures for employees or consumers to pursue in order to have their claims heard in the event of such a breach.

3   Huber Decl. Ex. T. The remedies of Senate Bill 707 fit this case perfectly:

4
5
6

> (a) In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration administrator, the drafting party to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement…

7
8

> (b) If the drafting party materially breaches the arbitration agreement and is in default under subdivision (a), the employee or consumer may ...:

9

> (2) Compel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration

10   Cal. Civ. Proc. § 1281.97.

11   Petitioners meet every element. WarnerMedia is the "drafting party," since it

12   is "the company or business that included a predispute arbitration provision in a

13   contract with a consumer." Cal. Civ. Proc. § 1280(e). Petitioners brought

14   arbitrations under the HBO Max Terms against WarnerMedia in which "the rules of

15   the arbitration administrator," here AAA, require WarnerMedia to "pay certain fees

16   and costs before the arbitration can proceed." Cal. Civ. Proc. § 1281.97(a).

17   WarnerMedia has not paid any of its required fees. Accordingly, Petitioners here,

18   as "consumer[s] may … [c]ompel arbitration in which the drafting party *shall pay*

19   *reasonable attorney's fees and costs* related to the arbitration." Cal. Civ. Proc. §

20   1281.97(b)(2) (emphasis added).

21

1       Unlike many sanctions regimes, the remedies under the California Arbitration

2   Act are mandatory.  That is because the pattern of behavior the California Legislature

3   observed corrodes the ability to bring claims in arbitration, which is the sole

4   procedural mechanism for relief for most consumer claims.  Requiring WarnerMedia

5   to pay attorneys' fees in arbitration serves the clear purpose of the statute—to deter

6   WarnerMedia from obstructing the very arbitration process it imposed on its

7   customers and used historically to its advantage.

8       WarnerMedia may argue that it has not failed to pay required arbitration fees

9   because the AAA declined to administer Petitioners' arbitrations, but that is

10  backwards.  The AAA declined to administer the arbitrations *because* WarnerMedia

11  refused, in violation of the AAA Rules and WarnerMedia's own contract, to pay the

12  required fees to register its clause and commence the arbitrations.   Nor can

13  WarnerMedia argue that the AAA's refusal was solely because of its refusal to

14  register its arbitration clause, as opposed to its refusal to pay the required fees.  First,

15  registering an arbitration clause with the AAA itself required WarnerMedia to pay a

16  fee, *see* AAA Consumer Rule 12, which it refused to pay.  That failure itself satisfies

17  the statutory element of a drafting party failing "to pay certain fees and costs before

18  the arbitration can proceed."  Cal. Civ. Proc. § 1281.97.  Second, the fact that

19  WarnerMedia *also* violated its contract and AAA rules in *other* ways (e.g., by

20  defying the authority of AAA to review the clause) cannot improve WarnerMedia's

21  position under the statute.  The statute requires sanctions whenever a drafting party

fails to pay fees required to move the arbitration forward.  It does not require that this be the *only* violation of the arbitration contract.  And for good reason: a contrary approach would perversely allow drafting parties to continue with the bad faith tactics the law was meant to stop by doubling down and repudiating other AAA rules at the same time it refuses to pay fees.

Despite requiring consumers to arbitrate with AAA for *years*, WarnerMedia refused to proceed to arbitration when Petitioners filed valid demands.  In the face of that recalcitrance, AAA was forced to close the cases: "given WarnerMedia's position that no version of its clause will be registered with the AAA and its prior non-compliance as stated above, we decline to administer these cases and will close our files."  August 11, 2023 AAA Letter (Huber Decl. Ex. R).  AAA has no judicial power with which to force WarnerMedia to arbitrate under the rules it agreed to—that is for this Court.

## CONCLUSION

Courts do not look kindly upon a company "faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause [even if it] never expected that so many would actually seek arbitration."  *Abernathy v. DoorDash, Inc.,* 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020).

WarnerMedia's bad-faith strategy of breaching the adhesion contract it drafted—*after* it compelled a class case to arbitration alleging the same claims as

Petitioners here—is brazen, reprehensible, and sanctionable.  Without hesitation, this Court should apply the well-settled principles of the FAA and the sound policy and remedial scheme of the California Arbitration Act.  This Court should compel WarnerMedia to arbitration before the AAA under AAA's consumer arbitration rules, and it should order WarnerMedia to pay Petitioners' attorneys' fees.

Date: September 25, 2023

*/s/ Warren D. Postman*

**KELLER POSTMAN LLC**

Warren D. Postman (330869)
Albert Y. Pak (*pro hac vice* forthcoming)
1100 Connecticut Ave, N.W. Suite 1100
Washington, D.C. 20036
Telephone:  202-918-1123

Patrick A. Huber (*pro hac vice* forthcoming)
150 North Riverside Plaza, Suite 4100
Chicago, IL 60606
Telephone:  312-280-5790

**DAVIS & NORRIS, LLP**

Frank Davis (*pro hac vice* forthcoming)
Wesley W. Barnett (*pro hac vice* forthcoming)
Dargan Ware (329215)
The Bradshaw House
2154 Highland Avenue
Birmingham, AL 35205
Telephone: 205-930-9976

*Attorneys for Petitioners*

MEMORANDUM IN SUPPORT OF PETITION TO COMPEL ARBITRATION

1

## __Certificate of Compliance__

2      The undersigned, counsel of record for Petitioners, certifies that this brief

3  contains 6,131 words, which complies with the word limit of L.R. 11-6.1.

4   September 25, 2023                    _/s/ Warren D. Postman_

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

MEMORANDUM IN SUPPORT OF PETITION TO COMPEL ARBITRATION