JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

MICHAEL W. McTIGUE JR. (*pro hac vice*)
michael.mctigue@skadden.com
MEREDITH C. SLAWE (*of counsel*)
meredith.slawe@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

*Attorneys for Respondent*
WarnerMedia Direct, LLC

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MARCUS BROOKS, KATHARINE GUZENSKI, RODRIGO MALDONADO, CANDIDA ORTIZ, and COURTNEY WALKER,<br><br>Petitioners,<br><br>v.<br><br>WARNERMEDIA DIRECT, LLC,<br><br>Respondent. | CASE NO.: 2:23-cv-07579-GW-MRW<br><br>**RESPONDENT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; AUTHORITIES IN SUPPORT THEREOF**<br><br>**FILED UNDER SEPARATE COVER:**<br><br>**(1) DECLARATIONS OF SU KELSAY AND MICHAEL W. McTIGUE JR. IN SUPPORT; and<br>(2) [PROPOSED] ORDER.**<br><br>Judge:    Hon. George H. Wu<br>Courtroom:    9D<br>Date: December 14, 2023<br>Time: 8:30 a.m. |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 14, 2023, at 8:30 a.m., or as soon thereafter as the matter may be heard at the above-entitled Court, located at First Street United States Courthouse, Roybal Courthouse, 350 West 1st Street, Courtroom 9D, Los Angeles, California 90012, Respondent WarnerMedia Direct, LLC ("Respondent" or "WarnerMedia") will petition the Court to compel individual arbitration of Petitioners' claims, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Su Kelsay ("Kelsay Decl."), the Declaration of Michael W. McTigue Jr. ("McTigue Decl.") and exhibits thereto, the Proposed Order, any oral argument heard by the Court, and such other matters as the Court may consider.

This motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place on November 8, 2023.


DATED: November 16, 2023

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____*/s/Jason D. Russell*_____
JASON D. RUSSELL
Attorneys for Respondent
WARNERMEDIA DIRECT, LLC

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

    I.       PRELIMINARY STATEMENT ............................................... 1

    II.     RELEVANT FACTUAL BACKGROUND ............................... 3

          A.    Petitioners' Counsel, Petitioners, and Mass Arbitration ............... 3

          B.    Users Must Agree to the Terms of Use To Access HBO Max or Max ........................................................................ 4

          C.    The HBO Max Terms Designated the AAA as the Arbitral Forum Unless Unavailable and Provided That They May Be Updated ........................................................................ 4

          D.    Petitioners Create HBO Max Accounts Under the Superseded Terms ........................................................................ 5

          E.    Respondent Updates the HBO Max Terms of Use and Provides Notice to Petitioners ........................................ 6

          F.    The December 2022 Terms Designated NAM as the Arbitral Forum for Consumer Disputes .................................... 7

          G.    Keller Sends to Respondent Thousands of Near Identical Purported "Opt Outs" ........................................ 7

          H.    Keller Submits Thousands of Near Identical "Pre-Arbitration Notices of Dispute" to Respondent ............................. 9

          I.    Respondent Replaces HBO Max with Max and Implements Max Terms of Use .............................................. 9

          J.    Petitioner Guzenski Consents to Max Terms and Discovery Would Be Required to Determine if Other Petitioners Consented ........................................................................ 10

          K.    Petitioners' Counsel Attempt To Initiate Mass Arbitration in the AAA and the AAA Declines To Administer Petitioners' Arbitrations ........................................................................ 10

          L.    Petitioners Seek Relief in This Court Notwithstanding and Indeed Without Even Mentioning the Current Terms ................ 11

          M.    The Parties Meet and Confer and Petitioners' Counsel Refuse To Proceed in NAM ........................................ 13

    III.    ARGUMENT ...................................................... 13

A.    Petitioners Are Bound By the Current Terms Designating NAM as the Arbitral Forum for Their Disputes ..........................13

1.    Petitioners Ortiz, Maldonato, Brooks and Walker Are Bound by the December 2022 Terms ...............................14

(a)    Respondent Provided Petitioners Conspicuous Notice of the Change in Terms. .............................14

(b)    Petitioners Took Conspicuous Action To Manifest Their Assent to the December 2022 Terms........................................................................15

(c)    The Purported Opt Outs Do Not Change the Analysis ...........................................................16

2.    Petitioner Guzenski Is Bound by the Max Terms ............18

B.    Petitioners Should Be Compelled to Arbitration  Before NAM Even Under the Superseded Terms Because the AAA Is Not Available To Hear Their Claims....................................................18

IV.    CONCLUSION .................................................................20

CERTIFICATE OF COMPLIANCE..........................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Buechler v. Gannett Co.*,
No. 22-1464-CFC, 2023 WL 6389447 (D. Del. Oct. 2, 2023) ............................ 13

*Byrd v. SunTrust Bank*,
No. 2:12-CV-02314-JPM, 2013 WL 3816714 (W.D. Tenn. July 22, 2013) ........ 18

*Clerk v. Cash Central of Utah, LLC*,
No. CIV.A. 09-49644, 2011 WL 3739549 (E.D. Pa. Aug. 25, 2011)................... 19

*Crewe v. Rich Dad Educational, LLC*,
884 F. Supp. 2d 60 (S.D.N.Y. 2012) .................................................................... 18

*Dlugolecki v. PeopleConnect, Inc.*,
No. CV 20-3657-GW-GJSX, 2020 WL 13587803 (C.D. Cal. Nov. 9, 2020) 14, 15

*In re Gateway LX6810 Compensation Products Litigation*,
No. SACV 10–1563–JST (JEMx), 2011 WL 3099862 (C.D. Cal. July 21,
2011) ..................................................................................................................... 19

*Jocson v. Diamond Resorts International Club, Inc.*,
No. 218CV10604ABJEMX, 2019 WL 10854465 (C.D. Cal. Mar. 28, 2019)...... 15

*Reaper v. ACE American Insurance Co.*,
No. 21-CV-05876-HSG, 2022 WL 3348575 (N.D. Cal. Aug. 12, 2022) ............. 16

*Sadlock v. Walt Disney Co.*,
No. 22-CV-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31, 2023)........ 14, 15

## RULES

Fed. R. Evid. 901(a) ..................................................................................................... 17

## OTHER AUTHORITIES

Andrew J. Pincus et al., U.S. Chamber of Com. Inst. for Legal Reform,
*Mass Arbitration Shakedown: Coercing Unjustified Settlements* (Feb.
2023)1-............................................................................................................... 3, 12

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    PRELIMINARY STATEMENT**

As set forth in Respondent's motion to transfer, this action should be transferred to the U.S. District Court for the Southern District of New York because the very agreements Petitioners seek to enforce contain an unambiguous forum-selection clause providing that this dispute must be heard in New York. (ECF No. 41.) Regardless, Petitioners should be compelled to arbitrate their claims in National Arbitration and Mediation ("NAM")—not the American Arbitration Association ("AAA")—because NAM is the arbitral forum designated to hear consumer disputes under Respondent's arbitration clause.

Petitioners allege they are former users of Respondent's video streaming platform HBO Max.[1] They comprise just five of 1,030 individuals on whose behalf Keller Postman LLC ("Keller") and Davis & Norris, LLP (together, "Petitioners' Counsel") sought to file substantively identical arbitration demands with the AAA against Respondent.[2] The AAA declined to commence the intake process and to administer those arbitrations because Respondent's arbitration clause is not registered with the AAA, and for good reason: Respondent's arbitration clause does not designate the AAA as the arbitral forum. Rather, Respondent's arbitration clause designates NAM as the arbitral forum.

Petitioners are bound by this arbitration clause. Nevertheless, Petitioners are purporting to pursue claims under a prior arbitration clause found in an outdated version of the HBO Max Terms of Use (the "Superseded Terms") that designated the AAA as the arbitration provider. (Petitioners seek to apply the Superseded Terms in an attempt to take advantage of a fee structure that the AAA imposes at the outset of a "mass arbitration" filing, which Petitioners' counsel hopes to leverage in order to extort an early settlement having nothing to do with the merits of Petitioners' claims.) The Superseded Terms expressly provide that the arbitration clause may be updated and that future updates bind consumers absent a valid and timely rejection notice.

---

[1] On May 23, 2023, Respondent launched the Max platform, which replaced HBO Max.

[2] Petitioners' Counsel also purport to represent thousands of additional claimants. (*See* ECF No. 14-16 at 2.)

RESPONDENT'S MOT. TO COMPEL ARB.                CASE NO.:  2:23-cv-07579

Respondent updated the Superseded Terms and then replaced the Superseded Terms with new terms. On December 20, 2022, Respondents updated the Superseded Terms with various amendments, including amending the arbitration clause to (among other things) designate NAM as the arbitration provider. On May 23, 2023, Respondent replaced HBO Max with its enhanced service Max, pursuant to new Terms of Use. Both the updated HBO Max Terms of Use and the Max Terms of Use (collectively, the "Current Terms") require that consumer claims be brought before NAM. The arbitration clause in the Current Terms binds Petitioners because all Petitioners received notice of it and assented to it. Accordingly, Petitioners must pursue their claims before NAM.

Even if, as Petitioners erroneously contend, the Current Terms did not apply to them on the theory they are former subscribers who purported to "reject" the new terms, Petitioners should nonetheless be compelled to arbitrate their claims in NAM because the AAA is unavailable. Under the Superseded Terms, "[i]f the AAA is unavailable, another arbitration provider shall be selected by the parties or by the court." The AAA expressly declined under its own rules to hear the arbitrations and is therefore unavailable. Petitioners have not agreed to an alternate arbitral forum. The decision whether NAM should administer the disputes is therefore for the Court to make even if one assumes that the Superseded Terms apply (and they do not).

The Court should designate NAM—an established ADR body with more than 80 arbitration clauses in its registry—as the appropriate forum. NAM is the logical forum because Respondent's arbitration clause is registered with NAM. Any claims brought under the Current Terms—including thousands pursued by Petitioners' Counsel that are identical to the claims brought by Petitioners—undisputedly must be brought before NAM. It would be inefficient for all parties for some arbitrations to proceed before NAM and a select few others to proceed in another forum. Further, Petitioners have offered no reason why NAM would be unable to hear their claims fairly or efficiently.

For the foregoing reasons, Respondent requests that the Court compel Petitioners to arbitrate their claims as they are required to do under the Current Terms before NAM.

RESPONDENT'S MOT. TO COMPEL ARB.                    CASE NO.: 2:23-cv-07579

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Petitioners' Counsel, Petitioners, and Mass Arbitration

Petitioners' Counsel are lawyers from the Washington, D.C. office of Keller Postman LLC ("Keller") and the Birmingham, Alabama office of Davis & Norris, LLP. Keller has been recognized as the firm that has "led" a "mass-arbitration avalanche." Andrew J. Pincus et al., U.S. Chamber of Com. Inst. for Legal Reform, *Mass Arbitration Shakedown: Coercing Unjustified Settlement*s at 19 (Feb. 2023) ("*Mass Arbitration Shakedown*"), https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-Arbitration-Shakedown-digital.pdf. Keller routinely partners with Troxel Law LLP ("Troxel") to pursue mass arbitrations. *See, e.g.*, *id.* at 21 & 67 n.94. Although not co-counsel in connection with the Petition, Troxel published social media solicitations seeking claimants in connection with Petitioners' Counsel's mass arbitration efforts here and is identified as Petitioners' co-counsel on Petitioners' pre-arbitration notices of dispute. (*See, e.g.*, Exs. 1-2, 15.[3])

As the U.S. Chamber of Commerce has explained in describing mass arbitration: "By simultaneously filing thousands of arbitration demands with identical claims, plaintiffs' lawyers seek to trigger an immediate obligation to pay millions of dollars in fees." Pincus, *Mass Arbitration Shakedown* at 18. "Their goal appears not to be to obtain simultaneous decisions on the merits—the firms filing mass arbitrations appear to lack the resources to manage these large numbers of claims." *Id.* "Rather, the goal appears to be to use the threat of a huge fee payment to force companies to settle the claims *en masse*, regardless of the underlying merits." *Id.*

Petitioners are just five of thousands of individuals dispersed throughout the country whom Petitioners' Counsel purport to represent in a "mass arbitration" against Respondent. (*See* ECF No. 14-16 at 1; ECF No. 1 ¶ 1.)

---

[3] All "Ex." references are to exhibits to the concurrently filed Declaration of Michael W. McTigue Jr. in Support of Respondent's Motion To Compel Arbitration.

RESPONDENT'S MOT. TO COMPEL ARB.                    CASE NO.:  2:23-cv-07579

**B.    Users Must Agree to the Terms of Use To Access HBO Max or Max**

Respondent WarnerMedia operated HBO Max, a subscription-based video-on-demand streaming platform that offered an array of movies, television series, and specials from brands such as HBO, Warner Bros., and DC, as well as third-party films and television series. (Kelsay Decl. ¶ 3.) Respondent subsequently replaced HBO Max with its enhanced streaming platform, Max. (*Id.* ¶ 2.)

HBO Max customers were required to create an account to activate an HBO Max subscription. (*Id.* ¶ 5.) This process included the presentation of the HBO Max Terms of Use, which subscribers were required to accept to gain access to the platform. (*Id.*) Max customers are likewise required to create an account to activate their Max subscription and must accept the Max Terms of Use to gain access to the platform. (*Id.* ¶ 7.)

**C.    The HBO Max Terms Designated the AAA as the Arbitral**
**Forum Unless Unavailable and Provided That They May Be Updated**

Petitioners seek relief pursuant to HBO Max Terms of Use dated (i) April 29, 2020 (the "April 2020 Terms"), (ii) October 19, 2021 (the "October 2021 Terms") and/or (iii) November 1, 2022 (the "November 2022 Terms," and collectively the Superseded Terms as defined above). (ECF No. 1 ¶ 2; Exs. 3, 4, 5.) The Superseded Terms each designate AAA as the arbitral forum for consumer disputes, including the claims Petitioners seek to assert here. (Exs. 3 § 25(c); 4 § 5.4(c); 5 § 5.4(c).) The Superseded Terms further provide that "[i]f the AAA is unavailable, another arbitration provider shall be selected by the parties or by the court." (Exs. 3 § 25(c); 4 § 5.4(c); 5 § 5.4(c).)

The Superseded Terms provide that Respondent "reserves the right to modify" the agreement. (Exs. 3 § 2; 4 § 5.12; 5 § 5.12.) The April 2020 Terms provide: "Your continued use of the Platform after the changes come into effect and, in the case of any Subscription, your failure to cancel the same before it renews or within any relevant notice period, will mean you unconditionally accept and agree to be bound to the changes." (Ex. 3 § 2.) The October 2021 and November 2022 Terms similarly provide that the modified terms "will become effective and govern your use of the Platform upon the date and time

4

they are posted to the Platform." (Exs. 4 § 5.12; 5 § 5.12.) A consumer may opt out of changes to a modification of the arbitration clause in the Superseded Terms "by sending [Respondent] written notice within 30 days of the change." (Exs. 3 § 25(g); 4 § 5.4(g); 5 § 5.4(g).)

### D.    Petitioners Create HBO Max Accounts Under the Superseded Terms

Plaintiffs affirmatively allege that they created HBO Max accounts and agreed to the Superseded Terms. (ECF No. 1 ¶ 2.) The allegations and Respondent's records reflect the following:

- On September 12, 2020, Petitioner Candida Ortiz created an HBO Max account using the email address ccarolinaortiz@yahoo.com and assented to the April 2020 Terms. (Kelsay Decl. ¶ 28; *see also* ECF No. 31 ¶ 3.) This subscription expired on September 12, 2020. (Kelsay Decl. ¶ 28.) Respondent's records reflect that, on April 27, 2021, Ortiz also created a separate HBO Max account using the email address ccarolinaortiz2425@gmail.com and again assented to the April 2020 Terms. (*Id.* ¶ 30; Ex. 2.) Ortiz's second subscription expired on June 1, 2023. (Kelsay Decl. ¶ 30.)

- On September 18, 2021, Petitioner Rodrigo Maldonado created his HBO Max account and assented to the April 2020 Terms. (Kelsay Decl. ¶ 25.) Maldonado's subscription expired on September 18, 2022. (*Id.*) But Maldonado logged into the platform on December 30, 2022, and by doing so, reaffirmed his assent to the December 2022 Terms. (*Id.* ¶ 27.)

- On October 1, 2021, Petitioner Marcus Brooks created his HBO Max account and assented to the October 2021 Terms. (Kelsay Decl. ¶ 15.) Brooks' subscription expired on June 1, 2022. (*Id.*)

- On March 27, 2022, Petitioner Katherine Guzenski created her HBO Max account and assented to the October 2021 Terms. (Kelsay Decl. ¶ 17.) Guzenski's subscription expired on May 27, 2022. (*Id.*) However, Guzenski

1    logged into the new Max service on June 22, 2023, and by doing so, assented
2    to the Max Terms of Use, dated May 23, 2023 (the "Max Terms"). (*Id.* ¶¶
3    20-24.)

4    • On April 27, 2022, Petitioner Courtney Walker created her HBO Max
5    account and assented to the October 2021 Terms. (Kelsay Decl. ¶ 31.)
6    Walker's HBO subscription expired on September 27, 2022. (*Id.*)

7    **E.    Respondent Updates the HBO Max**
8    **Terms of Use and Provides Notice to Petitioners**

9    On December 20, 2022, Respondent updated the HBO Max Terms of Use (the
10   "December 2022 Terms"). (Ex. 6; Kelsay Decl. ¶ 10.) Respondent provided notice of this
11   update through (i) direct emails to subscribers and former subscribers and (ii) pop-up
12   notifications within the HBO Max streaming platform. (Kelsay Decl. ¶¶ 11-13.)
13   Respondent's email notification provided:

14   HBO Max has updated our **Terms of Use** ("Terms"). The updates contain
15   important information about your legal rights, including updates to the
16   arbitration clause and other rules and procedures that govern the resolution
17   of disputes between you and HBO Max. The updates won't affect the way
18   you use HBO Max.

19

20   These updated terms will apply as of today for new subscribers. For prior
21   and existing subscribers, like you, the terms apply beginning on the date your
22   subscription renews or 30 days from today, whichever comes first. You can
23   review the new updated Terms **here**.

24

25   Your continued subscription to and/or access of HBO Max will confirm that
26   you have reviewed and agreed to the updated Terms of Use.

27

28   (*See* Kelsay Decl. ¶ 11-12.) The email also provided two hyperlinks to a full presentation

6

RESPONDENT'S MOT. TO COMPEL ARB.              CASE NO.: 2:23-cv-07579

of the December 2022 Terms, indicated by the purple and underlined text above. (*Id.* ¶ 11.) Respondent's business records confirm that all five Petitioners received this email notice either on December 21 or 22, 2023.  (*Id.* ¶¶ 16, 18, 26, 29, 32.) Respondent's business records also confirm that on December 30, 2022, Maldonado was presented with an in-app pop-up that contained a link to the updated Terms of Use and provided: "We've updated our Terms of Use. These updates contain important information about your legal rights, including an updated arbitration clause. By continuing to subscribe to and/or access HBO Max, you agree to be bound by the updated Terms. Read the updated Terms at www.hbomax.com/terms-of-use/en-us." (*Id.* ¶ 27.)

The December 2022 Terms provided that the updated arbitration agreement would apply to "claims that arose before this or any prior Agreement." (Ex. 6 § 5.4(a).)

## F.    The December 2022 Terms Designated
## NAM as the Arbitral Forum for Consumer Disputes

The December 2022 Terms included updates to the arbitration clause contained in the Superseded Terms. Among other things, the December 2022 Terms designated NAM as the arbitration forum for consumer disputes. (Ex. 6 § 5.4(c).) Per its website, NAM offers "a nationwide panel of more than 2,600 top-tier former judges and legal practitioners" as potential arbitrators, all of whom "have a minimum of 10 years of legal experience." (Ex. 7 at 1.) "NAM works with more than 10,000 commercial entities, including over 50 percent of Fortune 100 companies." (*Id.*) NAM has 83 arbitration clauses in its registry, including Max's clause. (Ex. 8 at 4.)

## G.    Keller Sends to Respondent Thousands
## of Near Identical Purported "Opt Outs"

Between December 23, 2022, and January 24, 2023, Petitioners' Counsel sent Respondent thousands of substantively identical documents, each titled "Rejection of Recent Changes to HBO Arbitration Agreements" (the "Purported Opt Outs"). (Exs. 10-14.) Petitioners' Counsel submitted Purported Opt Outs on behalf of Petitioners and every other individual they claim to represent in this mass action. Among those for whom

7

Petitioners' Counsel submitted Purported Opt Outs are thousands of individuals who never subscribed to HBO Max. (Kelsay Decl. ¶ 34.) Each Purported Opt Out states in its entirety:

> HBO's Arbitration Agreement with me, contained in the Terms of Use dated 11/1/2022, states: "if [HBO] make[s] any future change to this arbitration provision (other than a change to the Notice Address), you may reject any such change by sending us written notice within 30 days of the change."
>
> I hereby reject HBO's recent changes to the Arbitration Agreement, reflected on HBO's current Terms of Use webpage (https://www.hbomax.com/terms-of-use/en-us)

(Exs. 10-14.) The Purported Opt Outs reference the updated terms and therefore confirm that Petitioners viewed the HBO Max website and the terms. (Exs. 10-14.) Otherwise, Petitioners would not know what terms they were purporting to reject.

Although Petitioners Brooks, Guzenski, Maldonado, and Walker's subscriptions expired before November 1, 2022, each of their Purported Opt Outs invoke and purport to opt out under the November 2022 Terms.[4] (Exs. 10-12, 14.)

The email address provided by Guzenski in her Purported Opt Out does not match the email address on her account. (*See* Kelsay Decl. ¶ 18; Exs. 1, 11.) And the email address provided by Ortiz in her Purported Opt Out matches the email address of just one of her two accounts. (*See* Kelsay Decl. ¶ 30; Exs. 2, 13.) Maldonado's Purported Opt Out is dated December 30, 2022, the same day that he was presented with the in-app pop-up notification notifying him of the December 2022 Terms. (*See* Kelsay Decl. ¶ 27; Ex. 12.)

---

[4] The Notice of Dispute and Purported Opt Out submitted by Petitioner Ortiz provided the email address ccarolinaortiz2425@gmail.com. (Exs. 1, 13.) Respondent's records reflect that Petitioner Ortiz created an HBO Max account on April 27, 2021, using the email address ccarolinaortiz2425@gmail.com, and Petitioner Ortiz's subscription with this email address expired on June 1, 2023. (Kelsay Decl. ¶ 30.)

8

**H.**    **Keller Submits Thousands of Near Identical**
     **"Pre-Arbitration Notices of Dispute" to Respondent**

Between January 5, 2023, and April 14, 2023, Petitioners' Counsel sent letters addressed to Respondent that collectively contained thousands of substantively identical "Pre-Arbitration Notices of Dispute" ("NODs"). These letters alleged that Respondent violated the Video Privacy Protection Act of 1988, 18 U.S.C. § 2710 ("VPPA") and claimed the NODs were being sent pursuant to the arbitration clause in the November 2022 Terms. (*See, e.g.*, Exs. 1-2.) Based on Respondent's review of the NODs and Respondent's business records, it appears that thousands of individuals on whose behalf Petitioners' Counsel purportedly sent NODs never had an HBO Max account. (Kelsay Decl. ¶ 33.)

**I.**    **Respondent Replaces HBO Max with**
     **Max and Implements Max Terms of Use**

On May 23, 2023, Respondent replaced HBO Max with Max. (Kelsay Decl. ¶¶ 2, 22.) On that same date, Respondent implemented Max Terms that expressly supersede any prior HBO Max Terms of Use with respect to all users of Max. (Ex. 9.) The Max Terms contain an arbitration clause that is substantially identical to the arbitration clause in the December 2022 Terms. (*Id.* § 5.4.)

Beginning on May 23, 2023, every HBO Max subscriber that attempted to access HBO Max was redirected to Max to sign into the new Max platform. (Kelsay Decl. ¶ 22.) The HBO Max platform was no longer accessible. (*Id.*) Every subscriber who then elected to use Max was presented with the Max Terms, and could not proceed to use Max without agreeing to be bound by the Max Terms, including its arbitration clause. (*Id.* ¶ 23.) Under the Max Terms, customers "agree that any arbitrations between you and Max will be subject to this [arbitration clause] and not to any prior arbitration agreement you had with Max, and, notwithstanding any provision in this Agreement to the contrary, you agree that this Section 5.4 amends any prior arbitration agreement you had with Max, including with respect to claims that arose before this or any prior arbitration agreement." (Ex. 9 §

9

5.4(g).) There was no right to opt out of the Max arbitration agreement. Max is defined to include, among others, Respondent. (*Id.* § 1.)

**J.    Petitioner Guzenski Consents to Max Terms and Discovery Would Be Required to Determine if Other Petitioners Consented**

Respondent's business records confirm that at least one Petitioner expressly consented to the Max Terms. On June 22, 2023, Guzenski logged into and accessed the Max platform. (Kelsay Decl. ¶¶ 22-24.) Through this log in and access, Guzenski was presented with and accepted the Max Terms. (*Id.*) In addition, Petitioner Ortiz's subscription did not expire until June 1, 2023, after the Max Terms took effect. (*Id.* ¶ 30.)

Petitioners may also have consented to the Current Terms as Authorized Users under an account of another subscriber. The Current Terms allow a customer who creates an account to add "Authorized Users" to their account. (Ex. 6 § 2.2; Ex. 9 § 2.2.) Authorized Users are bound by the Current Terms, including the arbitration agreement, by virtue of using HBO Max or Max. (Ex. 7 §§ 1, 5.4(a); Ex. 9 §§ 1, 5.4(a).) Authorized Users do not have the option to provide an email address to Respondent. (Kelsay Decl. ¶¶ 6-7.) Accordingly, Respondent is not able to identify Authorized Users. (*Id.*) Petitioners have not attested to the fact that they are not or were not Authorized Users on another customer's account. Because Authorized Users are bound by the arbitration agreement by virtue of accessing the platform, discovery would be required to determine whether certain Petitioners consented to the Current Terms.

**K.    Petitioners' Counsel Attempt To Initiate Mass Arbitration in the AAA and the AAA Declines To Administer Petitioners' Arbitrations**

On July 18, 2023, even though Petitioners' Counsel were well aware that the arbitration forum had been changed in the Current Terms to NAM, Petitioners' Counsel sought to file 1,030 substantively identical arbitration demands against Respondent with the AAA, including demands on behalf of these five Petitioners.[5] Prior to that date, the

---

[5] Respondent's records reflect that only 798 of the 1,030 claimants provided an email address associated with an HBO Max account. (Kelsay Decl. ¶ 36.) Additionally, at least

RESPONDENT'S MOT. TO COMPEL ARB.          CASE NO.:  2:23-cv-07579

AAA had already informed Respondent that it would not administer consumer arbitrations with Respondent because Respondent's arbitration agreement was not registered with the AAA. (Ex. 20 at 1; *see also* ECF No. 14-16 at 2.) In its cover email to the AAA, Petitioners' Counsel attached the November 2022 Terms that, according to Petitioners' Counsel, governed the disputes. (Ex. 21.)

After Petitioners' Counsel sought to file its arbitration demands with the AAA, Respondent informed Petitioners' Counsel that NAM is the arbitration administrator for all disputes relating to HBO Max. (*See, e.g.*, Ex. 20 at 1.) Respondent also stated that it was prepared to arbitrate the claims in NAM under applicable NAM rules. (*Id.* at 2.) Petitioners' Counsel refused.

On August 11, 2023, the AAA informed Petitioners' Counsel that Respondent did not have an arbitration agreement registered with the AAA. The AAA therefore declined to administer the arbitrations. (Ex. 16 at 1.) In so declining, the AAA referred the parties to the AAA's Consumer Arbitration Rules, which provide that "[i]f the AAA declines to administer a case," then "the parties may choose to submit their dispute to the appropriate court." Am. Arb. Ass'n, *Consumer Arbitration Rules* Rule R-12, at 17 (2014) (Ex. 19), https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf. The AAA did not accept the demands or issue any invoice to Respondent for the arbitrations that Petitioners' Counsel attempted to initiate.

## L.    Petitioners Seek Relief in This Court Notwithstanding and Indeed Without Even Mentioning the Current Terms

On September 12, 2023, Petitioners filed the Petition. The Petition requests (among other things) an order directing Respondent to "register[] its agreement with AAA and pay[] necessary fees." (ECF No. 1 ¶ 34.) Petitioners purport to bring this Petition under the Superseded Terms. (ECF No. 1 ¶¶ 2, 20, 25.)

This action was not brought to obtain relief on behalf of just five Petitioners.

---

555 of those 798 signed into the new Max streaming service (as of October 10, 2023) and have therefore expressly consented to the Current Terms designating NAM as the arbitral forum for their disputes. (*Id.*)

Petitioners' Counsel's ultimate aim is to force Respondent to register an obsolete and superseded arbitration clause with the AAA, so they can file thousands of additional claims with the AAA—even though, as the AAA itself has confirmed, the AAA is no longer designated as the arbitration administrator for Respondent and its customers. Petitioners' Counsel are banking on using the AAA fee structure to cause massive fees to be assessed on Respondent, thereby enabling them to extort a windfall settlement. *See* Pincus, *Mass Arbitration Shakedown* at 24.

The threatened arbitration claims are frivolous on their merits. Petitioners' Counsel allege that each claimant was an HBO Max subscriber whose viewing information Respondent disclosed to Facebook in violation of the VPPA. That theory is premised on an elaborate set of preconditions involving a given user's means of access to the HBO Max service and use of the Facebook social media platform. Yet Petitioners' Counsel do not appear to have performed even a minimal level of diligence to assess whether members of their purported claimant pool have satisfied those preconditions such that they might be able to state a claim under the flawed theory of liability.

Respondent's preliminary analysis reveals that most claimants have no conceivable VPPA claim. An overwhelming majority of the putative claimants either do not appear to be HBO Max subscribers at all, or they never accessed hbomax.com on a web browser—which is just one of the essential predicates of Petitioners' Counsel's theory of liability—and thus could not possibly have a claim. For the remaining claimants, Petitioners' Counsel have not confirmed that any of the other essential preconditions have been met—*i.e.*, that claimants (i) had a Facebook account, (ii) accessed that account through a web browser, (iii) did not have settings that would prevent the Meta Pixel from functioning and (iv) simultaneously used their HBO Max account to stream prerecorded video on the same web browser. Remarkably, several claimants, including claimants who purportedly authorized Petitioners' Counsel to file arbitration claims with the AAA, are deceased.

(Exs. 17-18.)[6]

Petitioners' Counsel's theory of VPPA liability is also fatally defective for other reasons. To establish a claim under the VPPA, a claimant must show that the defendant knowingly disclosed a claimant's personally identifiable information ("PII") to a third party. Here, even claimants who meet the criteria set forth above have no claim because they themselves—not Respondent—would have disclosed any of their PII to Facebook. *See, e.g.*, *Buechler v. Gannett Co.*, No. 22-1464-CFC, 2023 WL 6389447, at \*4-5 (D. Del. Oct. 2, 2023) (dismissing complaint asserting VPPA violations where the "allegations . . . appear[ed] to establish that the subscriber-users themselves and/or Facebook—not [defendant]—implement[ed] the 'Tracking Methods' . . . that result[ed] in the disclosure of Plaintiffs' PII and Video Watching Data to Facebook"). Nor can any claimant plausibly allege that Respondent knowingly disclosed PII.

### M.    The Parties Meet and Confer and Petitioners' Counsel Refuse To Proceed in NAM

On November 8, 2023, the parties held a Local Rule 7-3 meet and confer in advance of this motion. (McTigue Decl. ¶ 2.) During the meet and confer, counsel to Respondent asked Petitioners' Counsel whether they would consent to having NAM administer the arbitrations given that the AAA is unavailable. (*Id.*) It is unclear whether Petitioners' Counsel presented this option to Petitioners.

## III.    ARGUMENT

### A.    Petitioners Are Bound By the Current Terms Designating NAM as the Arbitral Forum for Their Disputes

Petitioners are bound by the Current Terms, including the arbitration clause designating NAM as the arbitral forum for their disputes, because they have consented to those terms. Petitioners assert they "plainly entered into a valid arbitration agreement with WarnerMedia," referring to the arbitration clause in the Superseded Terms. (ECF No. 13

---

[6] Petitioners' Counsel have not explained how a deceased claimant could authorize a claim.

RESPONDENT'S MOT. TO COMPEL ARB.                    CASE NO.:  2:23-cv-07579

at 15.) Petitioners are likewise bound by updates to that arbitration clause. And Guzenski assented to and is bound by the Max Terms.

### 1. Petitioners Ortiz, Maldonato, Brooks and Walker Are Bound by the December 2022 Terms

A consumer is bound by an update to terms of use where the consumer is provided with (i) "reasonably conspicuous notice of the terms to which the consumer will be bound" and (ii) the consumer takes "some action . . . that unambiguously manifests his or her assent to those terms." *Sadlock v. Walt Disney Co.*, No. 22-CV-09155-EMC, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022)). Both standards are met here.

### (a) Respondent Provided Petitioners Conspicuous Notice of the Change in Terms.

An email notice of an update to terms of use is sufficient where it specifies the effective date, provides a link to the actual agreement and notes that there is "an *express update to the arbitration agreement.*" *Sadlock*, 2023 WL 4869245, at *12 (emphasis in original). Respondent provided each Petitioner notice of the updated December 2022 Terms in an email that meets all these criteria: It specifies that it will "apply beginning on the date your subscription renews or 30 days from today, whichever comes first." (*Supra* Background § II.E.) It provides a link to a copy of the full December 2022 Terms. (*Id.*) And it notes that the updates "contain important information about your legal rights, including updates to the arbitration clause and other rules and procedures that govern the resolution of disputes between you and HBO Max." (*Id.*) This email "gave [Petitioners] reasonably conspicuous notice of the [updated terms]." *Sadlock*, 2023 WL 4869245, at *12.

In addition, here the Superseded Terms put Petitioners on notice that there may be updates to the terms. *See Dlugolecki v. PeopleConnect, Inc.*, No. CV 20-3657-GW-GJSX, 2020 WL 13587803, at *2 (C.D. Cal. Nov. 9, 2020) (Wu, J.) (enforcing updated terms where "[p]laintiff agreed that the TOS could be revised 'from time to time,' and that such

14

revisions were 'effective immediately at the time of posting'"). The Superseded Terms each state that Respondent "reserves the right to modify" the agreement.[7] (*Supra* Background § II.C.)

**(b)    Petitioners Took Conspicuous Action To Manifest Their Assent to the December 2022 Terms**

A consumer's continued use of a website after receiving notice of updated terms constitutes assent to the new terms. *See Sadlock*, 2023 WL 4869245, at *12 ("The Court agrees with the *Facebook*, *West*, and *Uber* courts that emails followed by continued use is sufficient to establish assent."); *Dlugolecki*, 2020 WL 13587803, at *2 (plaintiff bound by new terms where court "conclude[d] that the preponderance of the evidence indicates" that he "used the website after [the] changes to the TOS"). Petitioners concede that they all accessed the HBO Max website after Respondent implemented the December 2022 Terms. (*See supra* Background § II.G.) Indeed, each Petitioner's Purported Opt Out cited the current link for the December 2022 terms and stated that the Petitioner "rejected" those terms. (Exs. 10-14.) They could not have "rejected" terms they had not seen. Further, Respondent's records reflect that Petitioners Ortiz and Guzenski continued to subscribe to or use either the HBO Max or Max streaming service after the Current Terms took effect.[8] (*See* Kelsay Decl. ¶¶ 20-24, 30.)

---

[7] Petitioners are bound by updates to the terms even though they are former subscribers. As a threshold matter, the Superseded Terms provide that the arbitration clause survives termination. (Ex. 3 § 25(a); Ex. 4 § 5.4(a); Ex. 5 § 5.4(a).) *See Jocson v. Diamond Resorts Int'l Club, Inc.*, No. 218CV10604ABJEMX, 2019 WL 10854465, at *6 (C.D. Cal. Mar. 28, 2019) (enforcing arbitration agreement post-termination where it "explicitly stat[ed] that the arbitration provisions survive termination of the purchase agreements"). Moreover, Petitioners concede that updates to the arbitration clause bind them even after termination. Indeed, Petitioners' Brooks, Guzenski, Maldonado and Walker's subscriptions all expired long before November 2022, yet all purported to opt out of the November 2022 Terms. (*See supra* Background § II.D.) Petitioners thus admit that they had assented to the November 2022 Terms post-termination. By the same token they assented to the December 2022 update.

[8] Discovery may reveal that other Petitioners continued to use the streaming platforms after December 20, 2022, as well: for example, customers are permitted to allow a certain number of Authorized Users access to their account. (*See* Ex. 6 § 2.2; Ex. 9 § 2.2.) Respondent reserves the right to seek discovery should the Court find that there is a question of fact as to which terms apply.

RESPONDENT'S MOT. TO COMPEL ARB.              CASE NO.: 2:23-cv-07579

1    **(c)    The Purported Opt Outs Do Not Change the Analysis**

2    Petitioners may attempt to rely on their Purported Opt Outs, but there are serious

3    questions about whether these documents were duly authorized or are authentic.

4    First, the Purported Opt Outs raise concerns about Petitioners' Counsel's authority

5    to attempt to opt out on behalf of their purported clients. It is well-settled that "[p]ersons

6    dealing with an assumed agent are bound at their peril to ascertain the extent of the agent's

7    authority." *Reaper v. ACE Am. Ins. Co.*, No. 21-CV-05876-HSG, 2022 WL 3348575, at

8    *4 (N.D. Cal. Aug. 12, 2022). There is good reason to question Petitioners' Counsel's

9    authority here. They have submitted materially identical Purported Opt Outs on behalf of

10    all of the individuals they purport to represent in this mass arbitration, including thousands

11    of individuals who never even had HBO Max accounts and could not have opted out of

12    anything. (*See supra* Background §§ II.G-H.)

13    Moreover, the Current Terms include provisions that Petitioners' Counsel

14    themselves would like to avoid because they require counsel's adherence to Rule 11

15    standards and, for the first time, authorize arbitrators to award sanctions against counsel.

16    The amended arbitration clause Petitioners' Counsel are attempting to sidestep mandates

17    that counsel "comply[] with the requirements of Federal Rule of Civil Procedure 11(b),

18    including certification that the claim or relief sought is neither frivolous nor brought for

19    an improper purpose." (Ex. 6 § 5.4(c).) It also "authorize[s]" the arbitrator "to impose any

20    sanctions under the NAM Rules, Federal Rule of Civil Procedure 11, or applicable federal

21    or state law, against all appropriate represented parties and counsel." (*Id.*) As noted above,

22    thousands of the claims Petitioners' Counsel have threatened to pursue are frivolous. (*See*

23    *supra* Background § II.L.) Because there was improper vetting of claimants, there would

24    be a substantial risk that Petitioners' Counsel could face sanctions for prosecuting these

25    claims in arbitration under the December 2022 Terms.

26    Thus, Petitioners' Counsel's unique interest in avoiding the Current Terms created

27    a conflict of interest. Petitioners' Counsel was therefore required to obtain informed

28    consent from their clients with respect to any decision to opt out of the Current Terms.

16

1  That includes, in this context, providing complete information about the basis for
2  Petitioners' Counsel's decision to seek to opt out of the amended arbitration clause that
3  could be disadvantageous to Petitioners' Counsel because they could subject Petitioners'
4  Counsel to sanctions. Given that, as Keller's marketing materials tout, they "[s]ign up"
5  clients "in 2-3 minutes," there is reason to question whether Petitioners' Counsel provided
6  adequate information to their clients regarding this conflict. (Ex. 15.) And Petitioners'
7  Counsel have not disputed that they have not disclosed this potential conflict to their
8  clients.[9] Consequently, if the Court were to give any credence to the Purported Opt Outs,
9  discovery would be needed to determine whether they were authorized based on informed
10  consent.

11      Second, under bedrock rules of evidence, "[t]o satisfy the requirement of
12  authenticating or identifying an item of evidence, the proponent must produce evidence
13  sufficient to support a finding that the item is what the proponent claims it is." Fed. R.
14  Evid. 901(a). The Purported Opt Outs appear to be digitally signed, but there is no
15  electronic verification of those signatures on the documents or elsewhere. Nor do the
16  signatures appear to clearly correspond to the names of the respective Petitioners.

17      In addition, the Purported Opt Outs of Guzenski and Ortiz are facially defective
18  and must be rejected because they do not contain the correct email address for their
19  respective accounts.[10] (*See supra* Background § II.G.) Regardless, Petitioner Guzenski
20  affirmatively agreed to the Current Terms when she logged into and accessed the Max
21  platform.

22      In short, because Petitioners consented to the December 2022 Terms and have not
23  effectively opted out of the updated arbitration provisions, they are bound by the
24  arbitration clause in the Current Terms designating NAM as the arbitral forum for their

25  ────────────
26  [9] Respondent is also investigating another potential conflicts of interest involving Keller stemming from work performed by one of Keller's name partners on behalf of an affiliate of Respondent while employed by the U.S. Chamber of Commerce Litigation Center as Vice President and Chief Counsel for Appellate Litigation.
27
28  [10] Ortiz's Purported Opt Out contains the email address on just one of her two accounts. (*See supra* Background § II.G.)

RESPONDENT'S MOT. TO COMPEL ARB.          CASE NO.:  2:23-cv-07579

1    disputes.

2    ## 2.    Petitioner Guzenski Is Bound by the Max Terms

3    Guzenski should be compelled to arbitrate in NAM for the independent reason that

4    she consented to the Max Terms designating NAM as the arbitral forum for consumer

5    disputes. Based on Respondent's records, on June 22, 2023, Guzenski logged into and

6    accessed the Max platform. (*See supra* Background § II.J.) In so doing, Guzenski was

7    required to accept the Max Terms. (*See id* §§ II.I-J.) Under the Max Terms, Guzenski

8    agreed that any arbitration between her and Respondent "will be subject to this [arbitration

9    clause] and not to any prior arbitration agreement you had with [Respondent]." (*Id.*) This

10   agreement covered "claims that arose before this or any prior arbitration agreement." (*Id.*)

11   Guzenski's agreement to use a new platform was not subject to an opt-out right with

12   respect to that platform's terms and conditions. Guzenski is thus bound by the Max Terms

13   arbitration clause mandating that any claims be arbitrated before NAM.[11]

14   ## B.    Petitioners Should Be Compelled to Arbitration

15   ## Before NAM Even Under the Superseded Terms

16   ## Because the AAA Is Not Available To Hear Their Claims

17   Even under the Superseded Terms, Petitioners should be compelled to arbitration

18   before NAM because the AAA is unavailable to hear their putative claims.

19   Courts routinely appoint alternative arbitration providers where "the parties'

20   agreement reflects a broader intention to arbitrate even if the designated forum or fora

21   prove unavailable." *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 76 (S.D.N.Y.

22   2012) (compelling arbitration where designated arbitral forum was unavailable); *see also*

23   *Byrd v. SunTrust Bank*, No. 2:12-CV-02314-JPM, 2013 WL 3816714, at *12 (W.D. Tenn.

24   July 22, 2013) (compelling arbitration even though designated arbitration forums, the

25   AAA and JAMS, were unavailable where arbitration clause provided that "[i]f AAA and

26   JAMS are unavailable, . . . another forum may be chosen"); *Clerk v. Cash Cent. of Utah,*

27   _____

28   [11] Discovery may reveal that other Petitioners also accessed Max—*e.g.*, as Authorized Users—and thus expressly agreed to the Max Terms. (*See supra* Background § II.J.)

18

RESPONDENT'S MOT. TO COMPEL ARB.        CASE NO.:  2:23-cv-07579

*LLC*, No. CIV.A. 09-4964, 2011 WL 3739549, at *6 (E.D. Pa. Aug. 25, 2011) (appointing alternative arbitration provider and holding that "[t]he arbitration clause remains valid and enforceable despite the unavailability of the NAF to administer arbitration"); *In re Gateway LX6810 Comp. Prods. Litig.*, No. SACV 10–1563–JST (JEMx), 2011 WL 3099862, at *2 (C.D. Cal. July 21, 2011) (compelling arbitration even though designated forum was unavailable).

Here, the AAA is unavailable: it has expressly stated that it will not administer the arbitrations between Petitioners and Respondent. (*See supra* Background § II.K.) The Superseded Terms expressly provided for that contingency, stating that "[i]f the AAA is unavailable, another arbitration provider shall be selected by the parties or by the court." (*Id.* § II.C)

NAM is the logical alternative arbitration forum because Respondent has registered with NAM and designated NAM as the arbitral forum in the December 2022 Terms and current Max Terms. (*See supra* Background §§ II.F, K.) Arbitration before NAM would also streamline proceedings and permit more efficient adjudication. Petitioners' Counsel have already threatened to pursue thousands of arbitrations asserting identical claims and have already attempted to assert 1,030 arbitrations. (*See id.* § II.K.) The vast majority of claimants who have actually used Respondent's HBO Max or Max streaming services will undisputedly be subject to the Max Terms based on use of the Max platform and consent to those terms. It would be manifestly inefficient to have parallel proceedings in two or more different arbitral forums.

Although Petitioners' Counsel have refused to arbitrate before NAM, they have provided no reasoned basis for their obstinance. NAM is an established alternative dispute resolution forum that works with more than 10,000 commercial entities and serves as an arbitral forum for half of the Fortune 100. (*Supra* Background § II.F.) It counts among its ranks more than 2,600 arbitrators nationwide who are former judges and legal practitioners. (*Id.*) Petitioners' claims can be fairly and efficiently heard before NAM.

RESPONDENT'S MOT. TO COMPEL ARB.                    CASE NO.:  2:23-cv-07579

1
## IV.    CONCLUSION

For the foregoing reasons, if this Court does not transfer this action to the U.S. District Court for the Southern District of New York—as requested by Respondent's pending motion to transfer (ECF No. 41)—Petitioners should be compelled to arbitrate their purported claims before NAM.

DATED: November 16, 2023

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____ */s/Jason D. Russell*
JASON D. RUSSELL
Attorneys for Respondent
WARNERMEDIA DIRECT, LLC

RESPONDENT'S MOT. TO COMPEL ARB.                    CASE NO.:  2:23-cv-07579

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Respondent WarnerMedia Direct, LLC, certifies that this brief contains 6, 488 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

DATED: November 16, 2023

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____ */s/Jason D. Russell* _____
JASON D. RUSSELL
Attorneys for Respondent
WARNERMEDIA DIRECT, LLC

RESPONDENT'S MOT. TO COMPEL ARB.          CASE NO.:  2:23-cv-07579