UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MARCUS BROOKS, KATHARINE GUZENSKI, RODRIGO MALDONADO, CANDIDA ORTIZ, and COURTNEY WALKER, :

                       Petitioners,   :   No. 1:23-cv-11030 (KPF)

    - against -   :

WARNERMEDIA DIRECT, LLC,   :

                       Respondent.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF RESPONDENT'S MOTION TO COMPEL ARBITRATION

                                        Michael W. McTigue Jr.
                                        (Michael.McTigue@skadden.com)
                                        Meredith C. Slawe
                                        (Meredith.Slawe@skadden.com)
                                        SKADDEN ARPS SLATE
                                            MEAGHER & FLOM LLP
                                        One Manhattan West
                                        New York, New York 10001-8602
                                        Telephone: (212) 735-3000
                                        Facsimile:  (212) 735-2000

Dated:  New York, New York              *Attorneys for Respondent*
        February 9, 2024                    *WarnerMedia Direct, LLC*

**TABLE OF CONTENTS**

                                                                                                                          **Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................................... 1

ARGUMENT ........................................................................................................................................ 1

I.     THE DECEMBER 2022 TERMS BECAME EFFECTIVE ON DECEMBER
       20, 2022, AND PETITIONERS MANIFESTED ASSENT TO THOSE TERMS .............. 1

II.    THE OPPOSITION DOES NOT SHOW THAT PETITIONERS TIMELY
       EXERCISED RIGHTS TO OPT OUT OF THE CURRENT TERMS ............................... 4

III.   THE CURRENT TERMS ARE NEITHER
       PROCEDURALLY NOR SUBSTANTIVELY UNCONSCIONABLE ............................. 5

       A.     The Current Terms Are Not Procedurally Unconscionable .................................... 5

       B.     The Current Terms Are Not Substantively Unconscionable ................................... 6

IV.   THE AAA DECLINED TO HEAR PETITIONERS' CLAIMS ...................................... 10

CONCLUSION ................................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**            **Page(s)**

*A.F.C. Enterprises, Inc. v. New York City School Construction Authority*,
  33 A.D.3d 736 (2d Dep't 2006) ...............................................................................5

*Anderson v. Amazon.com, Inc.*,
  478 F. Supp. 3d 683 (M.D. Tenn. 2020) .................................................................4

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................................................6

*Bassett v. Electronic Arts, Inc.*,
  93 F. Supp. 3d 95 (E.D.N.Y. 2015) ........................................................................3

*Benson v. Voss Events, Inc.*,
  No. 20 Civ. 6874 (KPF) (S.D.N.Y. Feb. 24, 2021) ................................................3

*Bielski v. Coinbase, Inc.*,
  87 F.4th 1003 (9th Cir. 2023) .................................................................................9

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991) ................................................................................................6

*In re CenturyLink Sale Practices & Securities Litigation*,
  No. CV 17-2832, 2020 WL 3512807 (D. Minn. June 29, 2020) ...........................9

*DuBois v. Macy's East Inc.*,
  338 F. App'x 32 (2d Cir. 2009) ..............................................................................4

*Duraku v. Tishman Speyer Properties, Inc.*,
  714 F. Supp. 2d 470 (S.D.N.Y. 2010) ....................................................................7

*Gillman v. Chase Manhattan Bank, N.A.*,
  73 N.Y.2d 1 (1988)..................................................................................................5

*Graham v. Scissor-Tail, Inc.*,
  28 Cal. 3d 807 (1981) .............................................................................................6

*Grynko v. Sears Roebuck & Co.*,
  No. 1:13-CV-2482, 2014 WL 66495 (N.D. Ohio Jan. 6, 2014)..............................4

*Heckman v. Live Nation Entertainment, Inc.*,
  No. CV 22-0047-GW-GJSX, 2023 WL 5505999 (C.D. Cal. Aug. 10, 2023).......8

*Knutson v. Sirius XM Radio, Inc.*,
  771 F.3d 559 (9th Cir. 2014)..................................................................................3

*Lai Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*,
  180 F. Supp. 3d 236 (S.D.N.Y. 2016) ....................................................................7

*Lhotka v. Geographic Expeditions, Inc.*,
    181 Cal. App. 4th 816 (2010)......................................................................................8

*Louisville Title Insurance Co. v. Surety Title & Guaranty Co.*,
    60 Cal. App. 3d 781 (1976)........................................................................................3

*MacClelland v. Cellco Partnership*,
    609 F. Supp. 3d 1024 (N.D. Cal. 2022) ..................................................................7, 8

*Manukian v. Pritchard Industries, Inc.*,
    No. 22-CV-10724 (JLR) (OTW), 2023 WL 6311287 (S.D.N.Y. Sept. 28, 2023)................4

*Nayal v. HIP Network Servs. IPA, Inc.*,
    620 F. Supp. 2d 566 (S.D.N.Y. 2009) .......................................................................6

*Plazza v. Airbnb, Inc.*,
    289 F. Supp. 3d 537 (S.D.N.Y. 2018) .......................................................................6

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012) ......................................................................................3

*Streichert v. Town of Chester, New York,*
    No. 19-CV-7133 (KMK), 2021 WL 735475 (S.D.N.Y. Feb. 25, 2021)..............................5

*Szetela v. Discover Bank*,
    97 Cal. App. 4th 1094 (2002)....................................................................................6

*Tesla Wall Systems, LLC v. Related Companies, L.P.,*
    No. 17-CV-5966 (JSR), 2018 WL 4360777 (S.D.N.Y. Aug. 15, 2018) ............................2

*In re TikTok, Inc. Consumer Privacy Litigation*,
    565 F. Supp. 3d 1076 (N.D. Ill. 2021) ......................................................................9

*In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv
    Technology and Versys Femoral Head Products Liability Litigation,*
    No. 18-CV-10393, 2021 WL 5963392 (S.D.N.Y. Dec. 16, 2021) ....................................8

## Statutes

9 U.S.C. § 4..............................................................................................................................3

## Other Authorities

Andrew Pincus et al., U.S. Chamber of Com. Ins. For Legal Reform,
    *Mass Arbitration Shakedown: Coercing Unjustified Settlements* .......................................5

American Arbitration Association
    *Consumer Rules* ........................................................................................................5

American Arbitration Association,
    *Mass Arbitration Supplementary Rules* ...................................................................9

**PRELIMINARY STATEMENT**[1]

Respondent stands ready and willing to arbitrate Petitioners' claims. But the Opposition fails to refute the undeniable fact that Petitioners must arbitrate their claims before NAM.

*First,* the December 2022 Terms became effective the day they were posted on the platform. Petitioners do not dispute receiving notice of the updated terms, and under the facts and law, Petitioners' use of the platform thereafter manifested their assent to be bound by them.

*Second,* the Opposition does not support any argument as to the validity of the putative Opt-Outs from the December 2022 Terms (which added a risk of sanctions against counsel, thereby giving rise to a conflict of interest between Petitioners and their counsel).

*Third,* the Current Terms are not unconscionable. They were implemented in the same manner as the agreements that Petitioners contend apply. Their mass arbitration provisions are irrelevant to this dispute over four individual claims, which would not be subject to them. In any event, the mass arbitration provisions in the Current Terms are substantively fair and mutual.

*Fourth,* Petitioners can point to no substantive reason why their claims should not be administered by NAM. The AAA has declined to administer Petitioners' requested arbitrations, but NAM is prepared to administer them immediately, and would do so fairly.

In short, Petitioners should be required to arbitrate before NAM.

**ARGUMENT**[2]

**I.    THE DECEMBER 2022 TERMS BECAME EFFECTIVE ON DECEMBER 20, 2022, AND PETITIONERS MANIFESTED ASSENT TO THOSE TERMS**

Petitioners do not dispute that they received notice of the December 2022 Terms, but

---

[1]    Capitalized terms have the meanings ascribed to them in Respondent's Motion To Compel Arbitration (ECF No. 48) ("Motion" or "Mot.") and Petitioners' Opposition to the Motion (ECF No. 67) ("Opposition" or "Opp."). "Ex." refers to exhibits to the Declaration of Michael W. McTigue Jr. submitted with the Motion (ECF No. 48-2).

[2]    Petitioners wrongly suggest Respondent "assume[d] in its briefs" that California law applies. (Opp. at 10 n.8.) Respondent made clear that the FAA and New York law applies. (ECF No. 50 at 17 (relevant agreements "state they are governed by the FAA, not California law,

contend that those terms did not become effective until "the date [their] subscription renew[ed] or 30 days from" the date those terms were posted (*i.e.*, 30 days from December 20, 2022). (Opp. at 5.) But the agreements on which Petitioners themselves rely[3] unambiguously state that modified terms become effective ***on the date they are posted*** to the platform. The October 2021 and November 2022 Terms both state that "modified Terms will become effective and govern your use of the Platform *upon the date and time they are posted to the Platform*." (Ex. 4 § 5.12 (emphasis added); Ex. 5 § 5.12 (emphasis added).)[4] Petitioners manifested assent to those terms:

*All Petitioners* manifested assent to the December 2022 Terms by using the platform to view those terms after they were made effective and by failing to effectively opt out of the updated terms thereafter. The Opposition claims that Respondent has argued that Petitioners' review of the terms alone should be treated as assent (Opp. at 12), but that is a strawman and not Respondent's position. Petitioners' failure to effectively opt out of the terms *after* reviewing them (as discussed in Respondent's Motion and Section III *infra*) bound them to the terms.

*Petitioner Ortiz* also manifested assent to the December 2022 Terms, not only by using the platform after the December 2022 Terms were made effective, but also by continuing her enrollment in the platform for months thereafter.[5]

---

and include *New York*—not California—choice of law clauses governing what state law applies when the FAA is inapplicable").) *Tesla Wall Sys., LLC v. Related Cos., L.P.*, No. 17-CV-5966 (JSR), 2018 WL 4360777 (S.D.N.Y. Aug. 15, 2018) (cited at Opp. at 10 n.8) is not to the contrary: there, a party maintained that one state's law applied but argued for a different state's law at "a particularly late stage in the case."

[3] It is not clear which version of the terms Petitioners believe to be applicable: their attempted filing with the AAA attached the November 2022 Terms and stated that it was "the arbitration agreement that governs all of these disputes" (Ex. 21), but the Opposition does not refer to the November 2022 Terms and instead contends that earlier versions apply (Opp. at 3).

[4] Respondent's December 2022 emails to Petitioners do not alter the fact that the December 2022 Terms became effective on December 20, 2022. The emails supplemented language in the Superseded Terms and specified additional ways a recipient could be bound other than by using the platform (and in fact Petitioners did use the platform).

[5] *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014), and *Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012) (cited at Opp. at 13), do not support Petitioner Ortiz's

2

***Petitioner Guzenski*** manifested assent to the December 2022 Terms by using the platform after those terms were made effective, and assented to the Max Terms by logging onto the platform in 2023. The Opposition seeks to call into doubt whether Ms. Guzenski clicked the "Start Streaming" button on the Max platform, but submits no evidence showing she did not (and offers no reason to believe she would have logged on for any other purpose). Ms. Guzenski alternatively contends she is not bound because she received "no incremental consideration." (Opp. at 15.) But Max offered additional content and the Max Terms included updated bilateral arbitration provisions, which is sufficient consideration.[6] *E.g., Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 104 (E.D.N.Y. 2015) (enforcing updated clause that included "[m]utual promises to arbitrate") (citing cases).

Discovery may reveal Petitioners manifested assent to the Current Terms in additional ways, including uses of the platform beyond what is available in Respondent's records (*e.g.*, log-ins to the platform by Petitioners using others' accounts, or unauthorized log-ins). Thus, if this Court finds that the applicability of an arbitration agreement is "in issue", it should order "limited, targeted discovery" on that issue, as this Court did in *Benson v. Voss Events, Inc.*, No. 20 Civ. 6874 (KPF), slip op. at 1 (S.D.N.Y. Feb. 24, 2021) (Failla, J.); *see* 9 U.S.C. § 4. Here,

---

contention that she did not manifest assent to the December 2022 Terms by continuing her HBO Max subscription for months after those terms were introduced. Those cases both involved consumers who were given free trial subscriptions to services when they made purchases from a third party, but were not given notice of the agreements asserted to be applicable. Those courts held that because the consumers did not have notice of the agreements, they did not manifest assent to those agreements through continued use of the third party's services. Here, Ms. Ortiz does not dispute that she had notice of the December 2022 Terms.

[6]   Petitioners cite *Louisville Title Ins. Co. v. Sur. Title & Guar. Co.*, 60 Cal. App. 3d 781 (1976) (cited at Opp. at 15) where the court there held a modification was effective because consideration was exchanged that had "some value at least." *Id.* at 791. Here, value was also exchanged: both parties obtained new dispute resolution rights, and consumers like Petitioner Guzenski were given access to additional content on the Max platform. Lauren Forristal, *Max makes its US debut, giving subscribers 35k hours of content*, TechCrunch (May 23, 2023, 6:00 AM), https://techcrunch.com/2023/05/23/max-makes-its-debut-in-the-us-warner-bros-discovery-launch/ (noting Max provided "more than double the [content] that HBO Max offered").

discovery as to whether Petitioners are bound by the Current Terms would address both this Cross-Motion and the Petition. Overbroad and irrelevant discovery as requested by Petitioners that is unrelated to contract formation should not be permitted.

## II. THE OPPOSITION DOES NOT SHOW THAT PETITIONERS TIMELY EXERCISED RIGHTS TO OPT OUT OF THE CURRENT TERMS

Respondent demonstrated that the Superseded Terms were replaced by the Current Terms, thus it is Petitioners' burden to show "they did not consent to arbitration" under those terms, as they seek to do by pointing to the purported Opt-Outs. *Manukian v. Pritchard Indus., Inc.,* No. 22-CV-10724 (JLR) (OTW), 2023 WL 6311287, at *3 (S.D.N.Y. Sept. 28, 2023).[7] They have not met that burden. Petitioners assert "each Petitioner electronically signed their Opt-Out Letter themselves" (Opp. at 17), but provide *no* evidence of that.[8] Nor do Petitioners address the other legitimate concerns Respondent raised regarding those documents:

***First***, Respondent submitted evidence that "thousands of the individuals on whose behalf [Opt-Outs] were purportedly sent never had an HBO Max account." (ECF No. 48-1 ¶ 34.) The Opposition does not show otherwise. The Opposition asserts that this massive irregularity is "irrelevant" (Opp. at 17)—but it is plainly relevant to the question of whether Petitioners' Counsel was properly authorized to submit Opt-Outs on behalf of any of their purported clients.

---

[7] *Accord DuBois v. Macy's E. Inc.*, 338 F. App'x 32 (2d Cir. 2009) (nonprecedential summary opinion) (affirming referral to arbitration where employee "failed to present sufficient evidence to create a genuine issue of fact as to whether he opted out of binding arbitration"); *Grynko v. Sears Roebuck & Co.*, No. 1:13-CV-2482, 2014 WL 66495, at *6 (N.D. Ohio Jan. 6, 2014) (matter subject to arbitration agreement where "Plaintiff has not met *her burden* of raising a genuine issue of material fact as to whether she sent Sears an Opt–Out Form" (emphasis added)); *Anderson v. Amazon.com, Inc.*, 478 F. Supp. 3d 683, 696 (M.D. Tenn. 2020) (same).

[8] Petitioners claim Ms. Guzenski "timely rejected the proposed future change to the AAA Arbitration Agreement in the May 2023 Max Terms" (Opp. at 16). But the Max Terms do not permit a party to opt out of the arbitration provision; they only permit a party to opt out of future changes to that provision. Despite knowing this, counsel for Ms. Guzenski, Warren Postman, appears to have signed an improper and ineffective opt out letter purportedly on her behalf. (*See* ECF No. 68-1). Ms. Guzenski submitted no declaration explaining this document, including whether she authorized Mr. Postman to sign and send it.

***Second***, the Opposition asserts that Respondent does "not have standing to raise conflicts allegations" relating to Petitioners' relationship with Petitioners' Counsel. (Opp. at 18.)[9] But Respondent plainly has standing to vindicate its own rights to challenge actions putatively taken on Petitioners' behalf that affect Respondent. Nor can Petitioners' Counsel blithely rely on "privilege" to evade scrutiny of the Opt-Outs. (*Id.*)[10]

***Third,*** the Opposition asserts that there is an "alignment of interests between Petitioners" and counsel, and that the Current Terms "did not for the first time introduce risk of sanctions for pursuing frivolous claims" because that same risk "exists under the AAA Arbitration Agreement." (Opp. at 18 n.11.) But AAA Consumer Rule 44 only exposes *parties* to the risk of paying opposing parties' fees and costs. The Current Terms now expose *attorneys* to the risk of sanctions. The Superseded Terms Petitioners' Counsel seek to apply would allow them to use their clients as a shield from a sanction determination. That is the conflict.

### III. THE CURRENT TERMS ARE NEITHER PROCEDURALLY NOR SUBSTANTIVELY UNCONSCIONABLE

#### A. The Current Terms Are Not Procedurally Unconscionable

Under New York law, to establish unconscionability, a party challenging an agreement must show "that the contract was both procedurally and substantively unconscionable when made." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988). Petitioners argue that the Current Terms are procedurally unconscionable because "it is a contract of adhesion."[11]

---

[9] Neither *A.F.C. Enters., Inc. v. New York City Sch. Constr. Auth.*, 33 A.D.3d 736 (2d Dep't 2006), nor *Streichert v. Town of Chester*, No. 19-CV-7133 (KMK), 2021 WL 735475 (S.D.N.Y. Feb. 25, 2021) (each cited at Opp. at 18), stand for the proposition that a party cannot point to conflicts of interest that are germane to the resolution of factual issues.

[10] Discovery of privileged information is not necessary to address Respondent's concerns regarding the Opt-Outs. Pertinent facts and circumstances regarding the Opt-Outs could be discovered through targeted interrogatories or questioning without invading any privilege.

[11] Petitioners' California authorities (Opp. at 21) do not assist them. *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807 (1981), observed that "a contract of adhesion is fully enforceable according to its terms," *id.* at 819*,* and held the arbitration provision at issue unconscionable only

5

(Opp. at 21.) But the Current Terms were provided to Petitioners in the same manner as Superseded Terms that Petitioners seek to enforce, and are equally enforceable.[12] In any event, New York courts have consistently held—as has the Supreme Court—that a contract is not unconscionable merely because it is not negotiated.[13]

Petitioners are simply wrong that updated arbitration terms are unenforceable when those terms "appl[y] to claims that have accrued or are known." (Opp. at 22.) New York courts regularly hold that updated arbitration agreements are applicable to claims that have already accrued. *See, e.g.*, *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 551 (S.D.N.Y. 2018) (terms implemented in 2011 and modified in 2014 and 2015 applied to claims accrued in 2009); *Lai Chan v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*, 180 F. Supp. 3d 236, 241 (S.D.N.Y. 2016) ("The Second Circuit has indicated that . . . an arbitration provision may cover claims that accrued prior to the execution of the agreement to arbitrate"); *Duraku v. Tishman Speyer Props., Inc.*, 714 F. Supp. 2d 470, 473-74 (S.D.N.Y. 2010) (applying arbitration clause adopted in 2010 to claims filed in a lawsuit in 2009). Petitioners' reliance on cases decided under California law (Opp. at 22) is therefore misplaced.

### B. The Current Terms Are Not Substantively Unconscionable

The Current Terms are not substantively unconscionable:

---

because it designated "the union of one of the parties as the arbitrator of disputes arising out of employment," *id.* at 827, which is not the situation here. *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094 (2002), also does not help Petitioners: that case noted "adhesive arbitration provisions are not per se unconscionable," and has otherwise been overruled by the U.S. Supreme Court. *Id.* at 1101; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346-52 (2011).

[12] The Opposition cites no authority for its contention that Ms. Guzenski should not be bound by the Max Terms because of "surprise contracting." (Opp. at 22.) Ms. Guzenski cannot be surprised that she is bound by those terms: when she logged onto Max in 2023, she was conspicuously notified that "By selecting 'Start Streaming,' you agree to the Max Terms of Use."

[13] *See, e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991) (non-negotiated provision on back of cruise ticket enforceable); *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) ("even if the Agreement was a form contract offered on a 'take-it-or-leave-it' basis . . . this is not sufficient under New York law to render the provision procedurally unconscionable").

6

*First*, the Opposition wrongly criticizes the Current Terms' procedures for mass arbitrations. (*E.g.*, Opp. at 23.) Those provisions are not implicated in connection with a petition to compel individual arbitrations brought by only four Petitioners.[14]

*Second,* the Opposition's contentions that the mass arbitration provisions are "overly harsh" and lack "mutuality" are not well founded. (Opp. at 23.) The Opposition seeks to analogize those provisions to a protocol held unconscionable in *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1040 (N.D. Cal. 2022), but that case is entirely inapposite. There the provision mandated perpetual staging of just ten claims per stage with no opt-out to court and—critically—did not provide for tolling of arbitrations that had not yet commenced. The court thus hinged its decision on the fact that claims could "effectively" become "[time] barred" due to delay. *Id.* at 1042. There is no such risk here: there is not perpetual staging (claimants may opt out of arbitration after three stages), each stage permits 50 to 200 arbitrations, and—most fundamentally—the terms provide that claims pending arbitration are tolled. There is thus no risk here that claims may become time-barred by operation of the staging provision. Further, *MacClelland* expressly distinguished the provision at issue there from clauses that—as here— allow for an opt out of arbitration after a staging process. *Id.* at 1042-43.)[15]

---

[14] The Opposition claims it is "irrelevant" Petitioners' Counsel sent Opt-Outs for individuals who were never subscribers of Respondent because those individuals are not "parties to this action" (Opp. at 17), but at the same time challenges mass arbitration procedures in the Current Terms, which do not apply when only five cases are pursued in arbitration. Petitioners cannot have it both ways.

[15] The Opposition complains that the opt-out notice must be personally signed by the claimant and submitted after the of the final stage of a mass arbitration process (Opp. at 23), but offers no support for its contention that such a requirement is unconscionable. Indeed, in class settlements, many courts require individuals seeking to opt out to submit personally signed forms, *e.g.*, *In re TikTok, Inc. Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1092-93 (N.D. Ill. 2021); *In re CenturyLink Sale Pracs. & Sec. Litig.*, No. CV 17-2832, 2020 WL 3512807, at *3 (D. Minn. June 29, 2020), and Petitioners' Counsel has asked for the same when serving as class counsel. *E.g.*, Motion for Preliminary Approval of Class Action Settlement at 45, *Miller v. Syracuse Univ.*, No. 5:21-cv-01073 (N.D.N.Y filed Dec. 14. 2023) (ECF No. 53-3) (motion

Petitioners complain that the Current Terms will lead to unreasonable delay.  But Petitioners do not—and cannot—contend that *their own* claims would be delayed.  Regardless, the Current Terms contemplate a three-step process where in each stage, a subset of claims selected by each side are individually arbitrated, after which the parties engage in a global mediation process (paid for by Respondent).  (Ex. 6 § 5.4(i); Ex. 9 § 5.4(i).)  This is similar to the Multi-District Litigation ("MDL") process used by federal courts "to 'promote the just and efficient' resolution of a large number of similar cases," where a subset of cases—"bellwether trials"—are conducted "'to provide data points for settlement discussions with respect to the universe of cases' within the MDL," while the other cases are stayed.  *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & Versys Femoral Head Prods. Liab. Litig.*, No. 18-CV-10393, 2021 WL 5963392, at *1 (S.D.N.Y. Dec. 16, 2021).  The typical MDL takes many years to resolve[16]—as Petitioners' counsel well knows.[17]

In addition, the Current Terms implement a "system to adjudicate a group of cases with the purpose of facilitating global or widespread resolution via ADR" which the *MacClelland* court identified as conducive to early resolution.  609 F. Supp. 3d at 1044.  The Current Terms do not preclude Petitioners from proceeding with the same counsel as other claimants, and the

---

submitted by Keller proposing opt-outs include signatures).  Nor does the Opposition support its claim that the ability to opt-out would only be available "after years delay."  (Opp. at 23.)

[16] Andrew Pincus et al., U.S. Chamber of Com. Inst. For Legal Reform, *Mass Arbitration Shakedown: Coercing Unjustified Settlements* at 54 (Feb. 2023), https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-Arbitration-Shakedown-digital.pdf (noting that recent MDL proceedings last more than six years on average).

[17] Keller is counsel in numerous MDLs that have been ongoing for multiple years.  *E.g.*, MDL 2795, *In re CenturyLink Sales Practices and Securities Litig.* (D. Minn.) (proceedings lasting more than six years); MDL 2885, *In re 3M Combat Arms Earplug Prods. Liab. Litig.* (N.D. Fla.) (ongoing 58 months and counting); MDL 2924, *In re Zantac (Ranitidine) Prods. Liab. Litig.* (S.D. Fla.) (ongoing 48 months and counting).

provisions regarding "coordinated counsel" apply equally to Petitioners and to Respondent.[18] (Ex. 6 § 5.4(i); Ex. 9 § 5.4(i))  The notice requirements also apply equally to Petitioners and Respondent, and are therefore patently "mutual."[19]  (Ex. 6 § 5.4(b); Ex. 9 § 5.4(b).)[20]

***Third,*** Petitioners contend the Current Terms allow Respondent "to shift all of the costs of arbitration to a consumer if the consumer loses." (Opp. at 24.)  That is wrong.  The Current Terms state parties bear their own fees and costs "*unless* the arbitrator awards sanctions or finds that either the substance of the claim, the defense, or the relief sought is frivolous or brought for an improper purpose."  (Ex. 6 § 5.4(c); Ex. 9 § 5.4(c) (emphasis added).)  In that regard, they are similar to the AAA rules the Petitioners' seek to enforce.  AAA, *Consumer Rules*, R-44(c) at 28 (noting that the arbitrator may allocate fees to the other party upon a determination that a claim was frivolous).  The Current Terms further state that the arbitrator may only "award[] . .

---

[18] Contrary to Petitioners' suggestion, the use of "coordinated counsel" as part of a mass arbitration definition is hardly unique.  The AAA defines a mass arbitration as when twenty-five similar demands are filed and "representation of the parties is consistent or coordinated across the cases."  AAA, *Mass Arbitration Supplementary Rules*, MA-1(b) at 4 (effective Aug. 1, 2023).

[19]   That the notice requirement requires a claimant to provide information that is accessible to the other party does not render it unconscionable, nor does it show that it lacks "mutuality." (Opp. at 24.)  That requirement applies equally to Respondent when it asserts a claim.  Such pre-arbitration dispute provisions are routinely upheld by courts.  *E.g.*, *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023) (rejecting challenge to pre-arbitration procedures).

[20]   Overall these arbitration provisions are readily distinguishable from those held unconscionable in *Heckman v. Live Nation Ent., Inc.*, No. CV 22-0047-GW-GJSX, 2023 WL 5505999 at *17 (C.D. Cal. Aug. 10, 2023), and *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 820 (2010) (cited at Opp. at 25).  The agreement in *Lhotka* included a "limitation on damages" and "the requirement that [the company's] costs and attorneys' fees be paid if suit is filed related to certain claims," among other provisions not included in the Current Terms.  181 Cal. App. 4th at 820.  The agreement in *Heckman*, among other things, provided that (i) claimants could not opt out of arbitration or the mass arbitration protocol; (ii) an arbitrator could unilaterally group claims and use them as "precedent" for other claims without procedural safeguards; (iii) the arbitrator had the power to override a claimant's decision to disqualify an arbitrator; (iv) claimants had no right to discovery; (v) the provision imposed other procedural limitations on claimants, such as that complaints could not exceed 10 pages and argument was limited to five pages; and (vi) the provision provided only for a right to appeal decisions granting—but not denying—injunctive relief, which the court found was effectively a non-mutual right of appeal because "claimants would be the only parties pursuing any real form of injunctive relief (certainly in the context of a mass arbitration)."  2023 WL 5505999 at *10-17. *None* of those provisions are present here.

attorneys' fees and costs *in accordance with applicable law.*" (Ex. 6 § 5.4(c); Ex. 9 § 5.4(c).)

## IV. THE AAA DECLINED TO HEAR PETITIONERS' CLAIMS

Petitioners posit that requiring arbitration before NAM could delay adjudication of their claims, but here *Petitioners* are delaying arbitration by insisting on proceedings before the AAA. Petitioners suggest the AAA told the parties it *could be* available if Respondent registered the superseded agreements with the AAA (which would make no sense and confuse consumers), or if a court compelled AAA arbitration (which a court cannot do, as Respondent's Opposition to the Petition (ECF No. 50) explains). (Opp. at 19.)  Both are hypothetical scenarios based on irrational, unlikely contingencies.  The AAA is not available to hear Petitioners' claims.

NAM is available now, however.  Respondent's arbitration provision is registered with NAM.  The Superseded Terms expressly provide that "[i]f the AAA is unavailable, another arbitration provider shall be selected by the parties or by the court" (Ex. 3 § 25(c); Ex. 4 § 5.4(c).)  Adjudication of Petitioners' claims without delay is best achieved by proceeding with arbitrations before NAM, which is capable of fairly and adequately adjudicating Petitioners' claims.  Petitioners have not shown otherwise (nor could they).  NAM is widely used and well-credentialed.[21]  (*See* Mot. at 7; Exs. 7, 8.)[22]  It would therefore be proper for this Court to compel arbitration before NAM regardless of whether the Current or Superseded Terms apply.

## CONCLUSION

Petitioners should be compelled to arbitrate their purported claims before NAM.  If not, threshold discovery would be needed as to whether Petitioners are bound by the Current Terms.

---

[21] NAM's New York roster of arbitrators and mediators includes numerous retired New York judges.  *See* https://www.namadr.com/neutrals/ny-metro-roster/?state=New%20York.

[22] If the Court finds that the Superseded Terms apply to any Petitioner, any order should be tailored to those Petitioners and *only* these Petitioners and not require the registration of an outdated arbitration agreement.  The AAA rules contemplate and the AAA employs a procedure through which it conducts an "expedited review" of an arbitration clause and assesses a fee on an individual case basis.

10

| | |
|---|---|
| Dated: New York, New York<br>February 9, 2024 | Respectfully submitted,<br><br>*/s/ Michael W. McTigue Jr.*<br>Michael W. McTigue Jr.<br>(Michael.McTigue@skadden.com)<br>Meredith C. Slawe<br>(Meredith.Slawe@skadden.com)<br>SKADDEN ARPS SLATE<br>   MEAGHER & FLOM LLP<br>One Manhattan West<br>New York, New York 10001-8602<br>Telephone: (212) 735-3000<br>Facsimile: (212) 735-2000<br><br>*Attorneys for Respondent*<br>*WarnerMedia Direct, LLC* |