UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARCUS BROOKS, KATHARINE
GUZENSKI, RODRIGO MALDONADO,    :
CANDIDA ORTIZ, and COURTNEY
WALKER,    :

                   Petitioners,    :    No. 1:23-cv-11030-KPF

      - against -    :

WARNERMEDIA DIRECT, LLC,    :

            Respondent.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**RESPONDENT WARNERMEDIA DIRECT, LLC'S
SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT
OF ITS MOTION TO COMPEL ARBITRATION**


Michael W. McTigue Jr.
(Michael.McTigue@skadden.com)
Meredith C. Slawe
(Meredith.Slawe@skadden.com)
SKADDEN ARPS SLATE
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

Dated:  New York, New York
       October 11, 2024

*Attorneys for Respondent
WarnerMedia Direct, LLC*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT............................................................................................1

BACKGROUND ............................................................................................................3

I.     SUMMARY OF THE PRIOR PROCEEDINGS ...............................................3

     A.    Petitioners Moved to Compel Arbitration Pursuant to the Superseded HBO Max Terms of Use, Which Provided That They May Be Updated ........................3

     B.    Respondent Cross-Moved to Compel Arbitration Before NAM, and Provided Evidence Regarding Petitioners' Platform Activity and the Notice Provided to Petitioners of the December 2022 Terms..................................3

     C.    This Court's July 8, 2024, Opinion and Order Authorized Discovery on the Issue of Whether Petitioners' Assented to the Updated Terms ...............................4

     D.    Respondent Sought Limited Discovery, and This Court Compelled Petitioners to Comply With Their Discovery Obligations ......................................4

II.    SUPPLEMENTAL FACTUAL STATEMENTS................................................5

     A.    Petitioner Guzenski Clicked "Start Streaming" in June 22, 2023, and Purchased an HBO Max Subscription on March 13, 2023 .....................................5

     B.    Petitioner Maldonado Accessed Another Individual's Account on a Smart TV in His Home on 48 Separate Days Between December 28, 2022 and May 16, 2023 ........................................................................................................6

     C.    Petitioner Ortiz Made Monthly Payments Through a Third Party for Her HBO Max Subscription and Did Not Attempt to Cancel Her HBO Max Subscription Even After Reviewing the Changes in the Updated Terms ...............7

LEGAL STANDARDS..................................................................................................8

ARGUMENT ................................................................................................................8

I.     PETITIONERS GUZENSKI, ORTIZ, AND MALDONADO  MANIFESTED UNAMBIGUOUS ASSENT TO THE UPDATED TERMS ................................8

     A.    Petitioner Guzenski Manifested Assent to Both  the Max Terms and the December 2022 Terms ...............................................................................................9

     B.    Petitioner Maldonado's Extensive, Five-Month Use of HBO Max on Another Individual's Account Constitutes Unambiguous Assent to the December 2022 Terms ...........................................................................................11

C.    Petitioner Ortiz's Continued Monthly Payments Until May 2023
Constitutes Unambiguous Assent to the December 2022 Terms ..........................12

II.    THE UPDATED TERMS ARE ENFORCEABLE AS TO PETITIONERS
GUZENSKI, MALDONADO, AND ORTIZ ....................................................................14

III.    IF THE COURT COMPELS ARBITRATION BEFORE THE AAA WITH
PETITIONERS BROOKS AND WALKER, IT DOES NOT NEED TO COMPEL
RESPONDENT TO REGISTER ITS SUPERSEDED ARBITRATION
AGREEMENT WITH THE AAA .....................................................................................15

CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Bassett v. Electronic Arts Inc.*,
No. 13–CV–04208 (MKB)(SMG), 2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015),
*report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015)........................14

*Belton v. Comcast Cable Holdings, LLC*,
151 Cal. App. 4th 1224 (Cal. Ct. App. 2007)......................................................................14

*Bernal v. Kohl's Corp.*,
No. 23-cv-1542, 2024 WL 4337452 (E.D. Wis. Sept. 13, 2024)........................................15

*Brooks v. WarnerMedia Direct, LLC*,
No. 23 CIV. 11030 (KPF), 2024 WL 3330305
(S.D.N.Y. July 8, 2024).................................................................................................... *passim*

*Deebs v. Alstom Transportation, Inc.*,
346 F. App'x 654 (2d Cir. 2009) ...........................................................................................9

*Dlugolecki v. PeopleConnect, Inc.*,
No. CV 20-3657-GW-GJSX, 2020 WL 13587803 (C.D. Cal. Nov. 9, 2020)....................11

*In re Facebook Biometric Information Privacy Litigation*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016)...............................................................................11

*Ginoyan v. Barclays Bank Delaware*,
443 F. Supp. 3d 1136 (C.D. Cal. 2020)...............................................................................10

*Guz v. Bechtel National, Inc.*,
24 Cal. 4th 317 (2000) .........................................................................................................15

*James v. Comcast Corp.*,
No. 16-2218, 2016 WL 4269898 (N.D. Cal. Aug. 15, 2016)..............................................13

*Marshall v. Hipcamp Inc.*,
No. 3:23-cv-06156-TLF, 2024 WL 2325197 (W.D. Wash. May 22, 2024).......................12

*Mey v. DIRECTV, LLC*,
971 F.3d 284 (4th Cir. 2020) ...............................................................................................12

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ....................................................................................................8

*Motise v. America Online, Inc.*,
346 F. Supp. 2d 563 (S.D.N.Y. 2004) .................................................................................12

*Oberstein v. Live Nation Entertainment, Inc.*,
    60 F.4th 505 (9th Cir. 2023) ............................................................................9

*Olsen v. Charter Communications, Inc.*,
    No. 18CV3388 (JGK), 2019 WL 3779190 (S.D.N.Y. Aug. 9, 2019) ..............................11

*Pokrass v. DirecTV Group, Inc.*,
    No. EDCV 07-0423-VAP, 2008 WL 2897084 (C.D. Cal. July 14, 2008).........................10

*Ragone v. Atlantic Video at the Manhattan Center*,
    595 F.3d 115 (2d Cir. 2010) ..........................................................................10

*Sadlock v. Walt Disney Co.*,
    No. 22-cv-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31, 2023)...................8, 11, 13

*In re Uber Tech., Inc.*,
    No. CV 18-3169 PSG (GJSx), 2019 WL 6317770 (C.D. Cal. Aug. 19, 2019).................11

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991), *aff'd*, 125 F.3d 843, (2d Cir. 1997)....................................10

*Wallrich v. Samsung Electronics America, Inc.*,
    106 F.4th 609 (7th Cir. 2024) ..........................................................................15

## PRELIMINARY STATEMENT[1]

In this action, the parties dispute which of two arbitration agreements govern their disputes. Petitioners contend that their disputes are governed by HBO Max's terms of use in effect prior to December 20, 2022 (the "Superseded Terms"), which designates the AAA as the arbitration administrator. Respondent contends that HBO Max's (and, thereafter, Max's) Terms of Use in effect after December 20, 2022 apply (the "Updated Terms"), and those terms require arbitration before NAM.

This Court reached the following conclusions in its prior Opinion and Order:

(i) Petitioners received by email "reasonably conspicuous notice" of HBO Max's Updated Terms, which included the agreement to arbitrate before NAM, *Brooks v. WarnerMedia Direct, LLC*, No. 23 CIV. 11030 (KPF), 2024 WL 3330305, at *11 (S.D.N.Y. July 8, 2024);

(ii) If Petitioners assented to the Updated Terms—"*e.g.*, by accessing the HBO Max platform after the December 2022 Terms came into effect"—their efforts to opt out of or otherwise reject the Updated Terms are irrelevant, *id.* at *15;

(iii) If Petitioners assented to the Updated Terms, that agreement "was supported by consideration," *id.* at *15-16; and

(iv) If Petitioners assented to the Updated Terms, that agreement "is not unenforceable on the basis of unconscionability." *Id.* at *18.

The Court further found "that there is a disputed issue of fact as to whether the parties agreed to arbitrate before the NAM," ordered "limited discovery on this issue," and ordered that

---

[1] Capitalized terms have the meanings ascribed to them in Respondent's Motion to Compel Arbitration Before NAM ("Motion" or "Mot.," ECF No. 48), and Reply in Further Support of the Motion ("Reply," ECF No. 70). "Supp. Ex." refers to exhibits to the Supplemental Declaration of Michael W. McTigue Jr. in Further Support of Respondent's Motion to Compel Arbitration Before NAM, filed herewith.

the parties "submit a supplemental memorandum of law" addressing "Petitioners' assent *vel non* to the NAM Agreement." *Brooks*, 2024 WL 3330305, at *1, *19.

Now that discovery has been conducted, the evidence shows as follows:

**Petitioner Guzenski** accepted the May 23, 2023 Max Terms of Use on June 22, 2023. Respondent's business records show that at 11:34 a.m. (Pacific Time) on that date, Ms. Guzenski clicked "Start Streaming" on the Max application. Her shifting written responses to discovery, and her deposition testimony that she did not click "Start Streaming," merely demonstrate her lack of recollection on that issue. Independently, she also agreed to arbitrate before NAM when she purchased an HBO Max subscription on March 13, 2023, and thereafter paid for the HBO Max (later, Max) subscription each month until August 14, 2023. She is thus required to arbitrate before NAM.

**Petitioner Ortiz** continued making monthly payments for her subscription to HBO Max through a third-party until May 2023. On December 21, 2022, Ms. Ortiz was expressly notified that her continued subscription to HBO Max would constitute acceptance of the December 20, 2022 HBO Max Terms of Use, and Ms. Ortiz testified that she read the email notice on that date. She is thus required to arbitrate before NAM.

**Petitioner Maldonado** accessed the HBO Max account of another individual ("Jack") on his home television after December 20, 2022. Respondent's records reflect that he accessed HBO Max and streamed HBO programming on 48 different days between December 28, 2022 and May 16, 2023. That use constitutes unambiguous assent to the December 2022 Terms. He is thus required to arbitrate before NAM.

Discovery did not provide additional information relevant to **Petitioners Brooks** and

**Walker.**[2]

**BACKGROUND**

I.     <u>SUMMARY OF THE PRIOR PROCEEDINGS</u>

     A.    **Petitioners Moved to Compel Arbitration Pursuant to the Superseded HBO Max Terms of Use, Which Provided That They May Be Updated**

On September 12, 2023, Petitioners commenced this action to compel Respondent to arbitrate before the AAA pursuant to the Superseded Terms for HBO Max (ECF No. 1 ¶ 2; Supp. Exs. 1, 2, 3), which designate AAA as the arbitral forum for consumer disputes. (ECF No. 1 ¶ 2; Supp. Exs. 1 § 25(c); 2 § 5.4(c); 3 § 5.4(c).)

The Superseded Terms provide notice to subscribers that Respondent "reserves the right to modify" the agreement. (Supp. Exs. 1 § 2; 2 § 5.12; 3  5.12.) The Superseded Terms also expressly inform users how subscribers can agree to such changes:

> By continuing to use the Platform after any revised Terms come into effect and, in the case of any Subscription, your decision not to cancel your Subscription before it renews or within any relevant notice period, means you agree to be bound to the changes.

(Supp. Exs. 2 § 5.12; 3 § 5.12; Ex. 1 § 2 (substantially similar).)

     B.    **Respondent Cross-Moved to Compel Arbitration Before NAM, and Provided Evidence Regarding Petitioners' Platform Activity and the Notice Provided to Petitioners of the December 2022 Terms**

On November 16, 2023, Respondent filed a cross-motion to compel arbitration under the Updated Terms, all of which require arbitration before NAM. (ECF No. 48.)

Respondent had updated its terms to require arbitration before NAM as follows: On December 21 or 22, 2022, Respondent sent a direct email to all five Petitioners notifying them that "HBO Max has updated our Terms of Use," with two separate hyperlinks to the page containing

---

[2]     Respondent initially noticed the deposition of Ms. Walker but withdrew that notice. Respondent's rationale for doing so is set forth in the materials attached to Respondent's letter motion seeking leave to file those materials under seal, filed herewith under separate cover.

3

the updated December 2022 Terms. (Mot. at 6.) The email also expressly informed all five Petitioners how they could accept the December 2022 Terms:

> For prior and existing subscribers, like you, the terms apply beginning on the date your subscription renews or 30 days from today, whichever comes first . . . Your continued subscription to and/or access of HBO Max will confirm that you have reviewed and agreed to the updated Terms of Use.

(Mot. at 5; Supp. Ex. 4 ¶¶ 10-13 (Kelsay Declaration, ECF No. 48-1).) Additionally, on December 30, 2022, Maldonado was presented with an in-app pop-up that notified Maldonado of the updated Terms of Use. (Mot. at 6.)

Respondent sought to compel arbitration under the Updated Terms because each Petitioner confirmed that they accessed the HBO Max website after the December 2022 Terms came into effect, and Petitioner Guzenski logged agreed to the Max Terms on June 22, 2023. (Mot. at 15, 18; Supp. Exs. 5, 6 (Updated Terms).) Respondent further noted that "[d]iscovery may reveal that other Petitioners continued to use the streaming platforms after December 20, 2022," for example, as an authorized user of another user's account. (Mot. at 15 n.8.)

### C.    This Court's July 8, 2024, Opinion and Order Authorized Discovery on the Issue of Whether Petitioners' Assented to the Updated Terms

On July 8, 2024, this Court held that while "no Petitioner can be bound by the December 2022 Terms solely as a result of having used the site to view the terms," discovery could reveal other conduct by which Petitioners could have assented to the Updated Terms. *Brooks*, 2024 WL 3330305, at *12.

### D.    Respondent Sought Limited Discovery, and This Court Compelled Petitioners to Comply With Their Discovery Obligations

On July 12, 2024, Respondent propounded targeted written discovery and notices of deposition. Petitioners initially broadly objected to that discovery, and instead sent Respondent's short declarations purporting to show that they were not bound by the Updated Terms. (*See* ECF No. 86 at 2.)  Respondent thus requested that this Court compel responses to its written discovery

requests and appear for depositions: this Court did so on August 28, 2024. (*See* ECF No. 88 at 4.)

On September 12, 2024, each Petitioner provided Supplemental Responses and Objections to Respondent's Requests for Production and Interrogatories, and between September 24 and 25, 2024, Respondent took the deposition of Petitioners Ortiz, Brooks, Guzenski, and Maldonado.

## II.    SUPPLEMENTAL FACTUAL STATEMENTS

### A.    Petitioner Guzenski Clicked "Start Streaming" in June 22, 2023, and Purchased an HBO Max Subscription on March 13, 2023

**First**, Respondent's records conclusively establish that, at 11:34 a.m. (Pacific Time) on June 22, 2023, Guzenski logged into Max using her *krsobreira@gmail.com* email address, was presented with the below stand-alone screen, and clicked the "Start Streaming" button to access her account. (Supplemental Declaration of Naomi Waibel "Waibel Decl.," ¶ 17.) After clicking "Start Streaming," Guzenski was presented with a screen that informed Petitioner Guzenski that her subscription had lapsed.

Guzenski, in both written responses to Respondent's discovery requests and during her deposition, denied that she clicked "Start Streaming." Guzenski's accounts of her interaction with the Max platform in June of 2023 have varied upon each iteration.

- In her August 12, 2024, declaration, she stated that "To the extent that I logged into to my inactive account in June 2023, I would have done so only to collect account information for purposes of this case or to check to make sure that I was no longer being charged for the streaming service. **To the best of my knowledge**, I did not, as part of such login, click any 'Start Streaming' button or access or watch any content on the HBO Max or Max platforms." (Supp. Ex. 7 ¶ 7.)

- Guzenski changed her response in her September 12, 2024, Supplementary Interrogatory Response, first stating that she recalled "accessing **the HBO Max application** tied to krsobreira@gmail.com on [her] Google Pixel 4 Pro" device (that she no longer has), and that she unequivocally "did not click any 'Start Streaming' button, or stream any HBO Max or Max content, during this instance of access." (Supp. Ex. 8 at 5-6.)

- In her September 25, 2024 deposition, she testified first that she did not have her Google Pixel 4 Pro device in 2023, (Supp. Ex. 9 at 15:7-15:12), and that she accessed the Max application, not the HBO Max application, (*id*. at 20:18-21:2). She then testified that "I logged in to the application. **Pop-ups** came up for agreeing to new terms of service. **I swiped them away**, as I was not going to be streaming anything on the app," (*id*. at 21:6-

21:22), testifying that this was "to the best of my memory," (*id*. at 30:19-31:8). Guzenski also confirmed that she does not have any evidence that would refute Respondent's business records showing that she clicked "Start Streaming." (*Id*. at 23:15-19.)

Ms. Guzenski's shifting accounts of what happened over the course of seconds on June 22, 2023 only leads to one conclusion: she does not recall whether or not she clicked "Start Streaming." Respondent's business records resolve that question, and that evidence confirms that Ms. Guzenski clicked "Start Streaming" on June 22, 2023. Her testimony that she saw "pop-up[s]" and "swiped them away" is not correct: all users that logged into Max with legacy HBO Max credentials were presented with a stand-alone screen and were required to click "Start Streaming" to access their account; "swiping" that screen away was not possible. (Waibel Decl. ¶ 16.)

**Second**, on March 13, 2023, Guzenski purchased a subscription to HBO Max through a third-party, Hulu, and continued to pay for that subscription until August 14, 2023. (*See* Supp. Ex. 10 at 3; Supp. Ex. 11  at KG000005-11; Supp. Ex. 9 at 15:13-18:22) Guzenski testified that she purportedly purchased the subscription for her sister and did not use the account, but nonetheless paid for six months of an HBO Max and Max subscription from her bank account. (*See* Supp. Ex. 11 at KG000005–11; Supp. Ex. 9 at 18:17-20.)

### B.    Petitioner Maldonado Accessed Another Individual's Account on a Smart TV in His Home on 48 Separate Days Between December 28, 2022 and May 16, 2023

On August 12, 2024, Maldonado declared that "[t]o the best of my knowledge, from December 20, 2022, to the present, I have never been an 'authorized user' on any other person's HBO Max or Max account and therefore have never used the HBO Max or Max platform as an 'authorized user' on any other person's HBO Max or Max account." (Supp. Ex. 12 ¶ 5.) But in his September 12, 2024, Supplemental Interrogatory responses he identified that "likely in early 2023," he used his "Hisense Roku TV 6 Series-58" the ("Roku TV") to access the HBO Max and "saw a screen with profile names that, to the best of his recollection, were Jack, Ehsan, David, and Guest," clicked on the "Guest" option, and viewed "HBO Max content for approximately three weeks,

during which he streamed various HBO Max programming." (Supp. Ex. 13 at 5.) Maldonado purportedly does not know who "Jack, Ehsan, [and] David" are, or how this account appeared on his television in his home. (Supp. Ex. 14 at 12:17-13:16.) Maldonado testified at his September 25, 2024, deposition that that he watched exclusive HBO programming during this time, including "*The Last of Us*" and "*The White Lotus*." (*Id.* at 14:9-14:13.)

While Maldonado testified that he only used this individual's account for "approximately three weeks," Respondent's records reflect that Maldonado, on his Roku TV, accessed HBO Max and streamed content on 48 different days between December 28, 2022 and May 16, 2023, on this individual's account. (Waibel Decl. ¶ 25.) Further, the HBO Max account associated with this individual began on March 11, 2021, and expired on March 20, 2024, (*id.*), notwithstanding Maldonado's testimony that he encountered a screen "to the effect of, 'Jack's account has expired' along with a message to 'renew your subscription'" three weeks after he started streaming content in "early 2023," (Supp. Ex. 13 at 6.)

### C.    Petitioner Ortiz Made Monthly Payments Through a Third Party for Her HBO Max Subscription and Did Not Attempt to Cancel Her HBO Max Subscription Even After Reviewing the Changes in the Updated Terms

Respondent's records reflect that on April 27, 2021, Ortiz purchased a month-to-month, advertisement free subscription plan to HBO Max for $15.99 per month through a third party, and created an HBO Max account on that same day using the using the email address *ccarolinaortiz2425@gmail.com*. (Waibel Decl. ¶ 28.) This month-to-month subscription expired on June 1, 2023. (*Id.*) Further, under the third-party subscription plan, Petitioner Ortiz paid the third-party $15.99 directly each month from April 2021 through May 2023 for her HBO Max subscription. Ortiz was purportedly unable to find the billing records to the third-party associated with her HBO Max subscription. (*See* Supp. Ex. 15 at 3.)

In her September 24, 2024 deposition, Ortiz testified that although she did not use her HBO Max account between April 2022 and June 2023, she "was aware that" she had full access to HBO

Max until June 2023. (*See* Supp. Ex. 16 at 19:2-20:4.) Ortiz also testified that she paid the third-party on a month-to-month basis, and that prior to June 2023, she did not attempt to cancel her subscription to HBO Max at any time. (*Id.* at 23:18-24, 24:20-24:23.) Further, Ortiz confirmed that she received the 2022 email from HBO Max "about the change in their agreement" and she reviewed the changes at that time. (*Id*. at 13:3-13:22.)

<h3 style="text-align:center">LEGAL STANDARDS</h3>

In resolving a motion to compel arbitration, the court applies "a standard similar to that applicable for a motion for summary judgment," and considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (cleaned up).

A party is bound by an arbitration agreement where (i) "the notice of the arbitration provision was reasonably conspicuous" and (ii) "manifestation of assent [is] unambiguous as a matter of law." *Meyer*, 868 F.3d at 76; *accord Sadlock v. Walt Disney Co.*, No. 22-cv-09155-EMC, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)).

<h3 style="text-align:center">ARGUMENT</h3>

## I.   PETITIONERS GUZENSKI, ORTIZ, AND MALDONADO MANIFESTED UNAMBIGUOUS ASSENT TO THE UPDATED TERMS

Petitioners Guzenski, Ortiz, and Maldonado are bound by the Updated Terms. This Court has already held that "Petitioner[s] do not dispute that they received reasonably conspicuous notice of HBO Max's updated terms of use in the form of the NAM Email." *Brooks*, 2024 WL 3330305, at *11. After having the opportunity to develop the factual record, all of the admissible evidence conclusively shows that Petitioners Guzenski, Ortiz, and Maldonado took affirmative actions to manifest their assent to the Updated Terms that require them to arbitrate before NAM.

### A.    Petitioner Guzenski Manifested Assent to Both the Max Terms and the December 2022 Terms

**Max Terms**. Guzenski unambiguously assented to the Max Terms on June 22, 2023 at 11:34 a.m. (Pacific Time) by clicking the "Start Streaming" button directly above prominent text that stated: "By selecting 'Start Streaming,' you agree to the Max **Terms of Use** and acknowledge you have read the **Privacy Policy**." (Waibel Decl. ¶ 17.) As this Court held:

> [C]licking the "Start Streaming" button does constitute unambiguous assent to the May 2023 Terms and the NAM Agreement therewith . . . whether Petitioner Guzenski is subject to the NAM Agreement is dependent upon whether she clicked the 'Start Streaming' button after encountering the 'Start Streaming' Notice during her June 2023 visit to the HBO Max platform.

*Brooks*, 2024 WL 3330305, at *14-15; *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515-16 (9th Cir. 2023) (an agreement was formed where website prompted a user to "click on the 'Place Order' button, directly above which [was] language stating: 'By continuing past this page and clicking 'Place Order', you agree to our Terms of Use'" and "[t]he 'Terms of Use' hyperlink [was] written in bright blue font, distinguishing it from the surrounding text").

*First*, in the face of Respondent's business records, Guzenski's shifting, self-serving testimony that she did not click "Start Streaming" is insufficient to create a genuine issue of material fact precluding her from being compelled to arbitration pursuant to the Max Terms. *See Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) (plaintiffs' "own speculative, and subjective, testimony" that contradicted the "hard evidence" was "insufficient to defeat summary judgment").

*Second*, if Petitioner Guzenski argues that because she only accessed the Max platform and agreed to the Max Terms "to collect account information for purposes of this case or to check to make sure that I was no longer being charged for the streaming service" her assent was ambiguous, this is meritless. (Supp. Ex. 7 ¶ 7.) As factual matter, Guzenski was not required to

access her account to obtain any information relating to her account.[3] Any information regarding billing could readily be accessed through her own bank records, and any her account information (including billing information) was attainable through contacting Max directly, either through the Max Help website or a call to its help line.[4]

Likewise, Guzenski, as matter of fact and law, cannot allege that Max **forced** her to log on to the Max platform and agree to the Max Terms: Respondent did not do "anything to prevent [Guzenski] from closing the [Max application upon seeing the "Start Streaming" stand-alone screen] or [gathering the information through other means]." *Ginoyan v. Barclays Bank Delaware*, 443 F. Supp. 3d 1136, 1141 (C.D. Cal. 2020) (compelling arbitration and rejecting plaintiff's argument that defendant "forced him" to take the action that constituted assent to the arbitration agreement). Guzenski was represented by counsel at the time: if she had any concerns about taking an action that manifested assent to the Max Terms, she was free to consult her lawyers. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 120 (2d Cir. 2010) ("[E]ven assuming the truth of [plaintiff's] representation that she did not understand the arbitration agreement at the time she signed it . . . she could have consulted a lawyer if she chose.").[5]

---

[3]    Guzenski's counsel instructed her not to answer what information she was collecting on June 22, 2023. (Supp. Ex. 9 19:25-20:12.) To the extent that Petitioner Guzenski argues that her access does not constitute assent because the information that she sought to obtain was only accessible on her account, she cannot so contend without explaining what information she sought to obtain. Accordingly, Guzenski should be compelled to produce what information she collected on June 22, 2023. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991), *aff'd*, 125 F.3d 843, (2d Cir. 1997) ("the attorney-client privilege cannot at once be used as a shield and a sword.").

[4]    *See* Waibel Decl. ¶ 20 (explaining that in June of 2023, all current and former HBO Max and Max subscribers could contact WarnerMedia to obtain such information).

[5]    Relatedly, any claim that the Max Terms are somehow unconscionable as applied to Petitioner Guzenski in these circumstances is meritless for similar reasons: logging in to Max and accepting the Max Terms was not required for any essential activity. *See Pokrass v. DirecTV Grp., Inc.*, No. EDCV 07-0423-VAP, 2008 WL 2897084, at *7 (C.D. Cal. July 14, 2008) ("Plaintiff does not dispute that, like the cable-delivered musical entertainment at issue in *Belton*, the satellite-delivered television entertainment for which he contracted is a nonessential recreational activity . . . the contract was not procedurally unconscionable.").

**December 2022 Terms**. Independently, Guzenski is bound by the December 2022 Terms by virtue of her purchase of an HBO Max subscription on March 13, 2023 through a third party. (*See supra* Background § II.A.) Regardless of whether Guzenski used HBO Max, her continued payment constitutes unambiguous assent. *See Olsen v. Charter Commc'ns, Inc.*, No. 18CV3388 (JGK), 2019 WL 3779190, at *6 (S.D.N.Y. Aug. 9, 2019) ("[T]he plaintiffs manifested their assent to the Updated Terms. They paid their June and July billing statements without objection, and they continued to accept Charter's internet services afterwards.").

### B. Petitioner Maldonado's Extensive, Five-Month Use of HBO Max on Another Individual's Account Constitutes Unambiguous Assent to the December 2022 Terms

Maldonado accessed HBO Max on his Roku TV in his home and streamed content on 48 different days between December 28, 2022 and May 16, 2023, on an account belonging to another individual. (*See supra* Background § II.B.) Maldonado was notified in three different manners (the April 2021 Terms, the December 21, 2021 direct email, and the in-platform pop-up on December 30, 2022) that his continued use of HBO Max, even without a subscription, would constitute agreement to the December 2022 Terms. (*See supra* Background §§ II.A-B.) As this Court made clear, "use of the HBO Max platform by Petitioners Brooks, Maldonado, and Walker as 'authorized users' on **accounts other than their own** after the December 2022 Terms came into effect could plausibly constitute acceptance of those terms." *Brooks*, 2024 WL 3330305, at *13 (emphasis added); *see also In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) ("individualized notice in combination with a user's continued use is enough for notice and assent"); *In re Uber Tech., Inc.*, No. 18-3169, 2019 WL 6317770, at *4 (C.D. Cal. Aug. 19, 2019) ("Plaintiff does not refute that she received such an email, nor that she continued to use the App after receiving the email"); *Sadlock*, 2023 WL 4869245, at *12 ("emails followed by continued use is sufficient to establish assent"); *Dlugolecki v. PeopleConnect, Inc.*, No. 20-3657, 2020 WL 13587803, at *2 (C.D. Cal. Nov. 9, 2020) (same).

That Maldonado's use of HBO Max was on an individual's account that he purportedly did not know is irrelevant.[6] The plain language of the December 2022 Terms expressly provided that "[Respondent] and you agree to arbitrate all disputes and claims between us" and defined "you" to include "**all authorized or unauthorized users or beneficiaries of the Platform under this or prior Agreements between us**." (Supp. Ex. 5 § 5.4(a) (emphasis added)); *see Mey v. DIRECTV, LLC*, 971 F.3d 284, 288-89 (4th Cir. 2020) (plaintiff assented to arbitration agreement where arbitration provision covered " 'all authorized [ ] users or beneficiaries of services ... under th[e] [a]greement[,]'" even though plaintiff's account "was in her husband's name and she was merely an authorized user"); *see also Marshall v. Hipcamp Inc.*, --- F.Supp.3d ----, No. 23-6156, 2024 WL 2325197, at *7 (W.D. Wash. May 22, 2024) ("Therefore, by gaining a benefit under the contract, Mr. Marshall 'knowingly exploits' the contract between Ms. Mitchell and Hipcamp and is equitably estopped from avoiding the arbitration provision" (citation omitted)).

Setting aside the plain terms of the agreement, common sense compels this result: "[a]ny other conclusion would permit individuals to avoid the Defendant's Terms of Service simply by having third parties create accounts and then using them as the Plaintiff did." *Motise v. Am. Online, Inc.*, 346 F. Supp. 2d 563, 566 (S.D.N.Y. 2004).

Simply put, Maldonado gained the benefits of unfettered access and use to HBO Max for five straight months after being expressly notified that such conduct would constitute acceptance of the December 2022 Terms. Maldonado is bound by that agreement.

### C.    Petitioner Ortiz's Continued Monthly Payments Until May 2023 Constitutes Unambiguous Assent to the December 2022 Terms

Petitioner Ortiz is bound to the Updated Terms. She continued to make monthly payments through a third party for her HBO Max subscription after receiving notice—which she

---

[6]    It strains credulity that Maldonado does not know who this individual is. (*See* Supp. Ex. 14 at 13:7-25 (testifying that neither he nor his family members know who "Jack" is).)

acknowledged having read at the time—informing her that her continued subscription to HBO Max would constitute acceptance of the December 2022 Terms. (*See supra* Background §§ I.B, II.C.) This Court emphasized that "[o]n Respondent's own account of the facts, Ortiz neither logged into her account, nor streamed any content, nor clicked a button 'accepting" the December 2022 Terms, **nor made any payments** to Respondent following her receipt of the NAM Email; that is, she took no action at all." *Brooks*, 2024 WL 3330305, at *14; (*see also* Opp'n at 13 (emphasizing that Respondent did "not allege that Petitioner Ortiz continued to make payments to WarnerMedia pursuant to an already-existing HBO Max subscription after the December 2022 Terms came into effect")). Ortiz conceded that although she did not use her HBO Max account between April of 2022 and June of 2023, she "was aware that" she had full access to HBO Max until June 2023, and that she did not attempt to cancel her HBO subscription at any time after December 20, 2022. (*See supra* Background § II.C.)

It is well established that making the decision to continue to renew a month-to-month contract and pay the monthly bill constitutes unambiguous assent to an updated arbitration agreement. As the court in *Sadlock* explained: this is not a "a situation where, *e.g.*, [Ortiz] was bound to an agreement with [Respondent] that lasted for a year, with [Respondent] changing terms midstream wherein [Ortiz] was forced to live with those new terms until the year-long contract expired," and "[Ortiz] does not dispute that [s]he could have immediately ended [her] contractual relationship with [Respondent] instead of continuing" her monthly subscription until May 2023. 2023 WL 4869245, at *12; *see also James v. Comcast Corp.*, No. 16-2218, 2016 WL 4269898, at *2 (N.D. Cal. Aug. 15, 2016) ("[Plaintiff's] contract was a month-to-month contract rather than a fixed term contract; if [plaintiff] wanted to avoid agreeing to the new contract, he had the ability simply to end his business relationship with Comcast").

In short, Ortiz manifested unambiguous assent by continuing to renew her HBO Max subscription and paying for her monthly subscription through a third party.

## II.    THE UPDATED TERMS ARE ENFORCEABLE AS TO PETITIONERS GUZENSKI, MALDONADO, AND ORTIZ

There is no question that the Updated Terms are enforceable to Petitioners Guzenski, Maldonado, and Ortiz. The Court already held that "because the Court previously determined that the NAM Agreement is not procedurally unconscionable, and because a finding of unenforceability requires both procedural unconscionability and substantive unconscionability, the Court concludes that the NAM Agreement is not unenforceable on the basis of unconscionability." *Brooks*, 2024 WL 3330305, at \*18.

Nothing in the fully developed factual record has changed that merits revisiting this conclusion. To the extent that Petitioners argue, as they did in the Opposition (Opp. at 22), that Updated Terms violated the implied covenant of good faith and fair dealing because it applies to claims that accrued and this was a purported unilateral amendment, this argument again fails. As this Court stated, [t]he "Court does not agree that the NAM Agreement's retrospective application renders it unconscionable, however [because] [t]he cases Petitioners cite in support of their position each deal with arbitration agreements in employment contracts, not consumer contracts." *Brooks*, 2024 WL 3330305, at \*17; *see also Bassett v. Elec. Arts Inc.*, No. 13-CV-04208 (MKB)(SMG), 2015 WL 1298644, at \*11 (E.D.N.Y. Feb. 9, 2015) (applying California law), *report and recommendation adopted*, 93 F. Supp. 3d 95 (E.D.N.Y. 2015); *Belton v Comcast Cable Holdings, LLC*, 151 Cal App 4th 1224, 1246 (Cal. Ct. App. 2007) ("Plaintiffs did not lack *meaningful choice*, including obtaining the same service for free over the Internet or radio airwaves, or simply forgoing the nonessential recreational activity").[7]

---

[7]    Petitioners may attempt to rely on *In Re Shelby Bates*, No. CPF-24-518617 (Cal. Sup. Ct., S.F. Cnty. Oct. 3, 2024) to argue the implied covenant applies outside of the employment context. But the nonbinding, unpublished, two-page San Francisco trial court order in *Shelby* was drafted by Petitioners' counsel, contains no meaningful analysis, and conflicts with the California appellate court and federal court decisions, including this Court's decision. Further, in *Shelby*, unlike here, there was no evidence of petitioner's affirmative assent to the updated terms.

In any event, the implied covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-50 (2000). Nothing in the Updated Terms frustrate Petitioners' right to the benefits of their agreement with Respondent: each will still be able to participate in the arbitration process before NAM.

## III.    IF THE COURT COMPELS ARBITRATION BEFORE THE AAA WITH PETITIONERS BROOKS AND WALKER, IT DOES NOT NEED TO COMPEL RESPONDENT TO REGISTER ITS SUPERSEDED ARBITRATION AGREEMENT WITH THE AAA

As set forth in the Motion and Reply, Petitioners Walker and Brooks both took conspicuous action to manifest their assent by accessing the HBO Max platform after receiving notice of the December 2022 Terms. (*See* Mot. at 15-16; Reply at 1-4.) Though the Court rejected this argument, this Court recognized that it:

> need not 'compel Respondent to 'register[ ] its arbitration agreement with [the] AAA and pay[ ] necessary fees,' (Resp. Opp. 13 (quoting Dkt. #1 ¶ 34)), as (unlike *Wallrich*) the AAA has not excused Respondent's failure to pay those fees or asked Petitioners to advance the fees on Respondent's behalf. This Court need only compel the parties to proceed to arbitration in accordance with the AAA's rules; if, thereafter, the AAA requires Respondent to pay certain fees or otherwise, this Court's order would incorporate the AAA's direction.

*Brooks*, 2024 WL 3330305, at *7 (alterations in original).[8]

**CONCLUSION**

The irrefutable evidence adduced through discovery and Respondent's business records confirms Petitioners Guzenski, Maldonado, and Ortiz should be compelled to arbitrate their purported claims before NAM.

---

[8]     While this Court initially considered the underlying facts here to be distinguishable from those in *Wallrich v. Samsung Electronics America, Inc.*, 106 F.4th 609 (7th Cir. 2024), a federal court recently applied Wallrich under substantially similar facts. It held "Petitioners in this case filed their arbitration demands before the AAA. Kohl's refused to register its arbitration agreement and pay the requisite fees. In accordance with its rules the AAA declined to administer the cases. Pursuant to Rule 12 of the AAA's Consumer Arbitration Rules, petitioners are free to pursue their substantive claims in court." *Bernal v. Kohl's Corp.*, No. 23-cv-1542, 2024 WL 4337452, at *4 (E.D. Wis. Sept. 13, 2024). The same result is warranted here.

Dated:  New York, New York
         October 11, 2024

Respectfully submitted,

*/s/ Michael W. McTigue Jr.*
Michael W. McTigue Jr.
(Michael.McTigue@skadden.com)
Meredith C. Slawe
(Meredith.Slawe@skadden.com)
SKADDEN ARPS SLATE
    MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8602
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

*Attorneys for Respondent*
*WarnerMedia Direct, LLC*