UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARCUS BROOKS, KATHARINE GUZENSKI, RODRIGO MALDONADO, CANDIDA ORTIZ, and COURTNEY WALKER,<br><br>       Petitioners,<br><br>v.<br><br>WARNERMEDIA DIRECT, LLC.,<br><br>       Respondent. | Case No. 1:23-cv-11030-KPF<br><br>**PETITIONERS' SUPPLEMENTAL MEMORANDUM OF LAW IN RESPONSE TO COURT'S JULY 8, 2024 OPINION AND ORDER** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................3

ARGUMENT ...................................................................................................................................7

    I.    PETITIONERS AND WARNERMEDIA ASSENTED TO THE AAA AGREEMENT, WHICH THE COURT HAS AUTHORITY TO ENFORCE ...........................................................................................................8

    II.    PETITIONERS DID NOT ASSENT TO THE NAM AGREEMENT AS "AUTHORIZED USERS," AND OTHERS' USE OF THEIR ACCOUNTS MAKES NO DIFFERENCE ..............................................................8

    III.    PETITIONER GUZENSKI DID NOT ASSENT TO THE DECEMBER 2022 TERMS OR TO THE NAM AGREEMENT BY CLICKING "START STREAMING" OR CREATING AN ACCOUNT .................................9

    IV.    NEW THEORIES OF ASSENT MUST FAIL ........................................................10

    V.    THE COURT SHOULD IMPOSE SANCTIONS PURSUANT TO CAL. CIV. PROC. CODE § 1281.97 FOR WARNERMEDIA'S FAILURE TO ARBITRATE PURSUANT TO THE AAA AGREEMENT ...................................................................................................14

CONCLUSION ..............................................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)...........................................................................................................1

*Bates v. Sephora USA, Inc.*,
  No. CPF-24-518617 (Cal. Super. Ct. S.F. Cnty. Oct. 3, 2024) .................................................3

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022) .......................................................................................10, 11

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ...........................................................................................1

*Cobb v. Ironwood Country Club*,
  233 Cal. App. 4th 960 (2015) ....................................................................................12, 13

*DaPuzzo v. Globalvest Mgmt. Co., L.P.*,
  263 F. Supp. 2d 714 (S.D.N.Y. 2003)...................................................................................13

*Digerati Holdings, LLC v. Young Money Ent., LLC*,
  194 Cal. App. 4th 873 (2011) ....................................................................................12, 13

*Doherty v. Barclays Bank Del.*,
  No. 16-CV-01131, 2017 WL 588446 (S.D. Cal. Feb. 14, 2017)..........................................8, 9

*Fezzani v. Bear, Stearns & Co. Inc.*,
  No. 99 CIV. 0793, 2023 WL 2612454 (S.D.N.Y. Mar. 23, 2023) .........................................10

*Habtemariam v. Vida Cap. Grp., LLC*,
  No. 2:16-CV-01189, 2021 WL 1966325 (E.D. Cal. May 17, 2021) .....................................11

*Intuit Inc. v. 9,933 Individuals*,
  No. 20STCV22761, 2020 WL 7094231 (Cal. Super. Ct. L.A. Cnty. Oct. 6,
  2020) (unpublished), *aff'd*, No. B308417, 2021 WL 3204816 (Cal. Ct. App.
  July 29, 2021)......................................................................................................................1

*Kim v. Allison*,
  87 F.4th 998 (9th Cir. 2023) ...........................................................................................13

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995)....................................................................................................13, 14

*McDaniel v. Home Box Office, Inc.*,
  No. 1:22-cv-01942, 2023 WL 1069849 (S.D.N.Y. Jan. 27, 2023)..........................................1

*Mey v. DIRECTV, LLC*,
    971 F.3d 284 (4th Cir. 2020) ..................................................................................................8

*Pandolfi v. AviaGames, Inc.*,
    No. 3:23-cv-05971, 2024 WL 4051754 (N.D. Cal. Sept. 4, 2024)............................................1

*Peleg v. Neiman Marcus Grp., Inc.*,
    204 Cal. App. 4th 1425 (2012) ........................................................................................3, 12

*Sharp v. Ally Fin., Inc.*,
    328 F. Supp. 3d 81 (W.D.N.Y. 2018) ..............................................................................10, 11

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
    925 F.2d 1136 (9th Cir. 1991) ................................................................................................9

*Viking River Cruises, Inc. v. Moriana*,
    596 U.S. 639 (2022)................................................................................................................1

*Wilson v. 21st Century Ins. Co.*,
    42 Cal. 4th 713 (2007) .........................................................................................................13

**Statutes**

9 U.S.C. § 4........................................................................................................................................8

Cal. Civ. Proc. Code § 1281.97 ............................................................................................3, 14, 15

Cal. Civ. Proc. Code § 1281.97(a)(1) ...............................................................................................15

Cal. Civ. Proc. Code § 1281.97(b)(2) ...............................................................................................15

**Other Authorities**

1 Witkin, Summ. of Cal. Law Contracts § 995 (11th ed. 2024) ......................................................11

S.B. 707, 2019–2020 Reg. Sess. (Cal. 2019) ....................................................................................14

## INTRODUCTION

WarnerMedia compelled a class action stating Petitioners' video privacy claims to AAA arbitrations, *see McDaniel v. Home Box Office, Inc.*, No. 1:22-cv-01942, 2023 WL 1069849 (S.D.N.Y. Jan. 27, 2023), no doubt calculating that the "alternative to a class action [was] not 17 million individual suits, but zero individual suits," *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). But "like the dog that caught the car," WarnerMedia got the claims "out of class litigation and into arbitration," only to "realize[] that this *was* a large class and that resolving the claims individually would be hopelessly expensive." *Intuit Inc. v. 9,933 Individuals*, No. 20STCV22761, 2020 WL 7094231, at *13 (Cal. Super. Ct. L.A. Cnty. Oct. 6, 2020) (unpublished), *aff'd*, No. B308417, 2021 WL 3204816 (Cal. Ct. App. July 29, 2021). So WarnerMedia changed course, publishing and seeking to retroactively apply the NAM Agreement to deny consumers the benefits of "the prototype of the individualized and informal form of arbitration protected . . . by the FAA." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 656 (2022); *see also Pandolfi v. AviaGames, Inc.*, No. 3:23-cv-05971, 2024 WL 4051754, at *4-7, *11 (N.D. Cal. Sept. 4, 2024) (denying motion to compel arbitration after holding staged "bellwether" provision similar to NAM Agreement's staging provision unconscionable for its "chilling effect" and its attempt to deter consumers' "ability to find any counsel at all.").

Arbitration is supposed to "reduc[e] the cost and increas[e] the speed of dispute resolution." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011). Yet, because WarnerMedia refused to register the AAA Agreement and pay related fees as the AAA's rules required, the AAA declined administration of Petitioners' arbitrations pending court order. ECF No. 81 at 9-10.

The Court should now end the delay that ensued and compel AAA arbitrations. The Court has already found that Petitioners agreed to arbitrate their video privacy claims against WarnerMedia before the AAA. *Id.* at 4-5, 14-16. Petitioners each assented to the AAA

1

Agreement. *Id.* at 18. The underlying disputes fall within the scope of the AAA Agreement. *Id.* at 44-45. And the Court already rejected most of WarnerMedia's arguments that the Court cannot compel AAA arbitrations. *Id.* at 13-18 (Court has authority to compel AAA arbitrations); *id.* at 26-29 (Petitioner did not assent to NAM Agreement by accessing it); *id.* at 33 (Petitioner did not assent to NAM Agreement by letting a subscription expire after it was published); *id.* at 34-35 (Petitioner did not assent to NAM Agreement by logging into account after it was published).

The Court did authorize limited discovery on whether any Petitioner assented to the NAM Agreement as an "authorized user" and whether Petitioner Guzenski clicked "Start Streaming" on a login screen. Discovery has now established that no Petitioner was an "authorized user" on anyone else's HBO Max or Max account after WarnerMedia published the NAM Agreement. *See* ECF No. 86-6 at 2-3 ("Brooks Decl."); *id.* at 4-5 ("Guzenski Decl."); *id.* at 6-7 ("Maldonado Decl."); *id.* at 8-9 ("Ortiz Decl."); *id.* at 10-11 ("Walker Decl."). Discovery has also established that Petitioner Guzenski rejected the invitation to "Start Streaming" when she logged in to her inactive account in June 2023. Guzenski Decl. ¶ 7; Decl. of Albert Y. Pak ("Pak Decl."), Ex. 8, Guzenski Dep. Tr. at 21:6-14.

With those two remaining arguments for avoiding AAA arbitrations out the door, WarnerMedia may advance new arguments for the first time today. Those arguments must fail.

*First*, WarnerMedia has waived other theories of assent to the NAM Agreement. Any such theory is a theory WarnerMedia knowingly failed to raise in its three briefs on the parties' dueling motions to compel arbitration. It should not be countenanced at this late stage, particularly since Petitioners cannot even respond to such an unknown theory in this filing.

*Second*, in all events, WarnerMedia's attempted contract modification is invalid as a matter of California law. WarnerMedia posted changes to the AAA Agreement on December 20, 2022, and then notified Petitioners by email that the changes would not be effective for 30 days. ECF

2

No. 81 at 5-6.  In the interim, each Petitioner served written notice rejecting WarnerMedia's proposed modifications to the arbitration procedures, exercising a contractual right within the existing AAA Agreement to commit their accrued claims to AAA arbitration.  *See* ECF No. 48-2 at 265 ("Brooks Opt-Out Letter"); *id*. at 267 ("Guzenski Opt-Out Letter"); *id*. at 269 ("Maldonado Opt-Out Letter"); *id*. at 271 ("Ortiz Opt-Out Letter"); *id*. at 273 ("Walker Opt-Out Letter") (collectively, "Opt-Out Letters").  Petitioners thus exercised a valid and enforceable right under California contract law to exempt their claims from changes to the arbitration provision.  *See Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1465 (2012) ("An arbitration agreement that expressly exempts all claims, accrued or known, from contract changes is valid and enforceable without resort to the covenant.").  And *Peleg*—which separately holds that attempts to apply unilateral contractual modifications retroactively to impair known claims violate the implied covenant of good faith and fair dealing—applies equally to consumer contracts.  *See, e.g.*, Pak Decl., Ex. 1, *Bates v. Sephora USA, Inc.*, No. CPF-24-518617, at *2-3 (Cal. Super. Ct. S.F. Cnty. Oct. 3, 2024) (holding that *Peleg* applies also to consumer contracts).

*Third*, to the extent Petitioners interacted with HBO at all after WarnerMedia began trying to force the NAM Agreement, they did so in ways that did not manifest their unambiguous assent— and are akin to the forms of interaction the Court rejected as indicators of unambiguous assent, like merely logging into an account or maintaining a subscription.  ECF No. 81 at 26-35.

The Court should also grant Petitioners' renewed request for statutory sanctions based on WarnerMedia's refusal to arbitrate.  Because WarnerMedia refused to initiate the arbitrations it forced customers to pursue, sanctions are mandatory under California law.  Cal. Civ. Proc. Code § 1281.97; *see also* ECF No. 13 at 26-29.

## BACKGROUND

Petitioners did not, as WarnerMedia previously contended, assent to the NAM Agreement

by clicking on a link in the NAM Email before the NAM Agreement had even come into effect. ECF No. 81 at 26-29. Petitioner Ortiz did not, as WarnerMedia previously contended, assent to the NAM Agreement by continuing to hold a subscription beyond December 2022 without personally interacting with the platform. *Id*. at 33. And Petitioner Guzenski did not, as WarnerMedia previously contended, assent to the NAM Agreement by logging in to her inactive account. *Id*. at 34-35. The Court did find, in response to WarnerMedia's argument that "Petitioners could have agreed to the December 2022 Terms by using the HBO Max platform as 'authorized users' on another person's account after the December 2022 Terms came into effect[,]" that the record contained "no evidence proving that those Petitioners did not use the HBO Max platform as 'authorized users' on *someone else's* account after the December 2022 Terms came into effect." *Id.* at 29. And the Court questioned WarnerMedia's bald assertion that Petitioner Guzenski clicked a "Start Streaming" button during a June 2023 login to her inactive HBO Max account. *Id*. at 34-35. So the Court authorized "limited, targeted discovery into Petitioners' assent *vel non* to the NAM Agreement in accordance with th[at] analysis . . . ." *Id.* at 47.[1]

<u>Petitioner Brooks</u>. Petitioner Brooks ended his subscription to HBO Max around July 2022 after growing tired of the content. Pak Decl., Ex. 7, Brooks Dep. Tr. at 46:18-49:8. He was not an "authorized user" on anyone else's account after WarnerMedia attempted to impose the NAM Agreement, Brooks Decl. ¶ 5, nor did he access the HBO Max or Max application or website after that time, Pak Decl., Ex. 2, Brooks Suppl. Interrog. Resp. at 5-6.

In addition, Petitioner Brooks opted out of changes to the arbitration provisions of the AAA

---

[1] Pursuant to the Court's Order clarifying the scope of discovery, ECF No. 88 at 4, Petitioners each provided verified Supplemental Responses and Objections to WarnerMedia's First Set of Interrogatories. *See* Pak Decl., Ex. 2, Brooks Suppl. Interrog. Resp.; *id.*, Ex. 3, Guzenski Suppl. Interrog. Resp.; *id.*, Ex. 4, Maldonado Suppl. Interrog. Resp.; *id.*, Ex. 5, Ortiz Suppl. Interrog. Resp.; *id.*, Ex. 6, Walker Suppl. Interrog. Resp. Each Petitioner also searched for and produced any available documents responsive to WarnerMedia's First Set of Requests for Production. And all but Petitioner Walker sat for depositions. *See id.*, Ex. 7, Brooks Dep. Tr.; *id.*, Ex. 8, Guzenski Dep. Tr.; *id.*, Ex. 9, Maldonado Dep. Tr., *id.*, Ex. 10, Ortiz Dep. Tr.

Agreement on January 8, 2023, before the NAM Agreement came into effect. Brooks Opt-Out Letter; *see also* ECF No. 81 at 28 n.4 (NAM Agreement effective only 30 days after posting). He did so because he believed it was in his best interests after consulting with his attorneys, Pak Decl., Ex. 7 at 59:3-14, and that doing so would allow him to pursue AAA arbitration, *id*. at 28:24-29:4. He also believed that companies change arbitration agreements to make them more unfavorable for consumers. *Id*. at 27:2-18. And he preferred AAA to NAM because he believed AAA was more established and more likely to be fair to him. *Id*. at 12:8-13:15.

Petitioner Guzenski. Petitioner Guzenski had an HBO Max account that expired before WarnerMedia attempted to impose the NAM Agreement. Pak Decl., Ex. 8 at 11:4-19; *see also* ECF No. 81 at 3. She does not recall what specific shows or content she watched on HBO Max when her account was active. Pak Decl., Ex. 8 at 12:20-13:11; 33:23-34:17.

Petitioner Guzenski was not an "authorized user" on anyone else's HBO Max or Max account after WarnerMedia attempted to impose the NAM Agreement. Guzenski Decl. ¶ 5. She opted out of changes to the arbitration provisions of the AAA Agreement on January 2, 2023, before the NAM Agreement came into effect. Guzenski Opt-Out Letter. After WarnerMedia attempted to impose the NAM Agreement, Petitioner Guzenski did not access the HBO Max or Max application or website aside from a single login to her inactive account in June 2023, Pak Decl., Ex. 3 at 5-6, which login the Court previously held did not constitute unambiguous assent to the NAM Agreement, ECF No. 81 at 34-35. During that login, she downloaded the Max application to her phone; opened it; logged in to her inactive account; saw a pop-up for a new terms of service; swiped away the pop-up without clicking "Start Streaming"; collected information for her claim and confirmed she was no longer paying for the service; and uninstalled the application. Pak Decl., Ex. 8 at 19:7-21:22.

From March through August 2023, Petitioner Guzenski paid for a higher tier of Hulu, an

5

unrelated streaming service, that included access to HBO Max or Max content. *Id.* at 16:7-17:21, 18:5-18:16. At no point in paying for her Hulu subscription did Petitioner Guzenski agree to WarnerMedia's NAM Agreement. Petitioner Guzenski does not recall signing into her inactive HBO Max account or creating a new HBO Max or Max account for her Hulu subscription. *Id.* at 17:22-18:2. She did not watch any HBO Max or Max content through her Hulu subscription and only purchased the Hulu subscription so that her sister could use it. *Id.* at 18:17-18:20.

Petitioner Maldonado. Petitioner Maldonado ended his HBO Max subscription in September 2022 because it was too expensive. Pak Decl., Ex. 9 at 9:2-12, 10:15-23, 10:24-11:6. He was not an "authorized user" on anyone else's account after WarnerMedia attempted to impose the NAM Agreement. Maldonado Decl. ¶ 5.

Petitioner Maldonado opted out of changes to the arbitration provisions of the AAA Agreement on December 30, 2022, before the NAM Agreement came into effect. Maldonado Opt-Out Letter. Over a period in early 2023, he had free access to and viewed HBO Max content through a television he purchased, but at no point did he renew his expired HBO Max subscription or otherwise assent to the NAM Agreement. Pak Decl., Ex. 4 at 5-6; *id.*, Ex. 9 at 11:22-14:8. When the free HBO Max access ended, Petitioner Maldonado did not seek to extend the access, and he has not accessed or watched any HBO Max or Max content since. *Id.* at 15:11-24.

Petitioner Ortiz. Petitioner Ortiz had an HBO Max account through her Yahoo email address, ccarolinaortiz@yahoo.com, which ended in 2020. Pak Decl., Ex. 10 at 16:14-24. She also had access to HBO Max through a promotion from her cellular provider, T-Mobile, which access she understands was associated with her Google email address, ccarolinaortiz2425@gmail.com, and which she had through June 2023, when she canceled her T-Mobile account. *Id.* at 16:25-18:19, 19:20-24; *see also* ECF No. 81 at 30-33 (holding that Petitioner Ortiz did not assent to the NAM Agreement by passively letting her already-existing

6

subscription expire). She watched HBO Max content in the first few months she had access through T-Mobile, before the NAM Agreement. Pak Decl., Ex. 10 at 20:11-21:12. She was not an "authorized user" on anyone else's account after WarnerMedia attempted to impose the NAM Agreement, Ortiz Decl. ¶ 5, nor did she access the HBO application or website after that time, Pak Decl., Ex. 5 at 5-6. Petitioner Ortiz opted out of the changes to the arbitration provisions of the AAA Agreement on January 14, 2023, before the NAM Agreement came into effect. Ortiz Opt-Out Letter.

<u>Petitioner Walker</u>. Petitioner Walker ended her subscription to HBO Max in September 2022. ECF No. 81 at 4. She was not an "authorized user" on anyone else's account after WarnerMedia attempted to impose the NAM Agreement, Walker Decl. ¶ 5, nor did she access the HBO Max or Max application or website after that time, Pak Decl., Ex. 6 at 5-6. Petitioner Walker opted out of the changes to the arbitration provisions of the AAA Agreement on December 30, 2022, before the NAM Agreement came into effect. Walker Opt-Out Letter.

## ARGUMENT

The Court should compel arbitration pursuant to the AAA Agreement, the only agreement to which Petitioners and WarnerMedia have all manifested unambiguous assent. Petitioners filed AAA demands, which WarnerMedia blocked by pointing to the NAM Agreement. WarnerMedia previously raised theories for why Petitioners had nevertheless assented to the NAM Agreement, ECF No. 48 at 15, most of which the Court already rejected, ECF No. 81 at 26-35. The targeted discovery the Court authorized showed that no Petitioner assented to the NAM Agreement as an "authorized user" or by clicking "Start Streaming." The novel theories WarnerMedia may proffer today at this late stage were waived, and they also fail to overcome the legal bar to its attempted contract modification and the factual bar to unambiguous assent. Fifteen months have passed since Petitioners filed their demands with AAA. The Court should compel WarnerMedia to submit to

AAA arbitrations and should grant Petitioners' renewed request for statutory sanctions.

I. **PETITIONERS AND WARNERMEDIA ASSENTED TO THE AAA AGREEMENT, WHICH THE COURT HAS AUTHORITY TO ENFORCE**

The Court has already held that it has authority to compel arbitration pursuant to the AAA Agreement. ECF No. 81 at 13-18. Each Petitioner signed up for an HBO Max account at a time that the AAA Agreement was in effect, and each iteration of the AAA Agreement—the April 2020 Terms, the October 2021 Terms, and the November 2022 Terms—contain an arbitration provision incorporating the AAA's rules. *Id.* at 4. "Petitioners assented to arbitrating their disputes with Respondent before the AAA pursuant to the AAA Agreement when they created an account on HBO Max." *Id.* at 44. The AAA Agreement "cover[s] Petitioners' respective disputes." *Id.* at 45. In these circumstances, the FAA not only permits, but requires, that the Court compel arbitration pursuant to the AAA Agreement. *Id.* at 13 (quoting 9 U.S.C. § 4).

II. **PETITIONERS DID NOT ASSENT TO THE NAM AGREEMENT AS "AUTHORIZED USERS," AND OTHERS' USE OF THEIR ACCOUNTS MAKES NO DIFFERENCE**

As WarnerMedia previously argued, the term "authorized user" has a specific meaning under all relevant terms of use. ECF No. 48-1 ¶¶ 6-8; ECF No. 48 at 15. As set forth above, no Petitioner was ever an "authorized user" on any account after December 2022.

Courts that have compelled non-accountholders to arbitration were addressing individuals who were "authorized users" on someone else's account, unlike Petitioners here. ECF No. 81 at 29-30; *see also Doherty v. Barclays Bank Del.*, No. 16-CV-01131, 2017 WL 588446, at *3-4 (S.D. Cal. Feb. 14, 2017); *Mey v. DIRECTV, LLC*, 971 F.3d 284, 287–88 (4th Cir. 2020) (compelling authorized user to arbitration because she signed an acknowledgment of the arbitration agreement).

The court in *Doherty* denied a company's motion to compel arbitration for fear of forcing the plaintiff to an arbitration he never consented to. 2017 WL 588446, at *3-4. The case was a putative class action alleging that a credit card issuer violated the Telephone Consumer Protection

8

Act ("TCPA"). *Id.* at *1. The lead plaintiff had been added to his father's credit card account as an "authorized user" before receiving the unwanted calls from the issuer for which he sued. *Id.* There was evidence that someone had used this "authorized user" account, *id* at *1, *4, though plaintiff had no knowledge of the details, *id.* at *4. On these facts, the court refused to find assent because the plaintiff "dispute[d] ever having knowledge that he was an authorized user" and because the person responsible for the account activity was unclear. *Id.* at *4.

In denying a stronger motion to compel than the one WarnerMedia advances here, the court in *Doherty* perceived real harm to forcing the plaintiff to an arbitration to which he may have never agreed. *Id.* (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1138-42 (9th Cir. 1991)). That harm would be even more acute for Petitioners, who never had "authorized user" accounts after the NAM Agreement came into effect, and *explicitly informed WarnerMedia* that they did not assent to the NAM Agreement when they exercised a contractual right in the AAA Agreement that WarnerMedia drafted. ECF No. 67 at 6-8; Brooks Decl. ¶ 5; Guzenski Decl. ¶ 5; Maldonado Decl. ¶ 5; Ortiz Decl. ¶ 5; Walker Decl. ¶ 5.

That same harm would be doubly acute if premised on the "inverse authorized user" theory WarnerMedia may advance. That is, WarnerMedia may contend that Petitioners Ortiz and Guzenski assented to the NAM Agreement because *others* may have accessed HBO Max or Max content through third-party accounts they did not use, even though neither accessed themselves and both lacked knowledge of others' specific use. In *Doherty*, the court expressly refused to compel arbitration under such circumstances, where there was evidence that someone used the account, but the plaintiff did not know whom. 2017 WL 588446, at *1.

### III.   PETITIONER GUZENSKI DID NOT ASSENT TO THE DECEMBER 2022 TERMS OR TO THE NAM AGREEMENT BY CLICKING "START STREAMING" OR CREATING AN ACCOUNT

The Court also observed that Petitioner Guzenski theoretically "may have assented to the

NAM Agreement if she clicked the 'Start Streaming' button when she logged onto the platform in June 2023." ECF No. 81 at 45. She did not. Guzenski Decl. ¶ 7. Petitioner Guzenski logged in to her inactive HBO Max account—which had been inactive since May 2022—to obtain information for this case and to confirm she was not paying for the service. *Id.*; *see also* Pak Decl., Ex. 8 at 21:6-22. She recalls swiping away a pop-up asking her to agree to new terms because she had no intention to access any content. *Id.* at 19:7-21:22.

"[M]erely logging onto HBO Max without clicking the 'Start Streaming' button does not constitute unambiguous assent to the May 2023 Terms and the NAM Agreement therewith." ECF No. 81 at 34-35 (compiling cases). "Logging in alone does not amount to 'some action, such as clicking a button or checking a box, that unambiguously manifest[s] [one's] assent' to a website's terms of use." *Id*. at 34 (alterations in original) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)). That holding stands.

## IV. NEW THEORIES OF ASSENT MUST FAIL

WarnerMedia may today advance, for the first time, novel theories of assent it previously did not raise. These theories fail for three reasons.

*First*, WarnerMedia has waived any such arguments. It previously chose to advance only two arguments that the Court has not already rejected: Petitioners' possible "authorized user" status and Petitioner Guzenski's June 2023 login to her inactive account. ECF No. 48 at 15. It has waived other theories. *See Sharp v. Ally Fin., Inc.*, 328 F. Supp. 3d 81, 105 (W.D.N.Y. 2018) ("It is well-established in this Circuit that new arguments raised in successive briefing papers will not be considered where those arguments could have been raised in a previous submission.") (compiling cases). WarnerMedia should "not have an unlimited capacity to file repetitive motions, repurposing arguments to address the same issue over and over again." *Fezzani v. Bear, Stearns & Co. Inc.*, No. 99 CIV. 0793, 2023 WL 2612454, at *4 (S.D.N.Y. Mar. 23, 2023) (citing *Sharp*,

10

328 F. Supp. 3d at 105). Petitioners lack the ability to respond to any novel theories of assent because WarnerMedia would be making them for the first time today.[2]

*Second*, in all events, WarnerMedia's attempted contract modification is invalid under California law. WarnerMedia posted changes to the AAA Agreement on December 20, 2022, and then notified Petitioners by email that the changes would not be effective for 30 days. ECF No. 81 at 5-6. In the interim, each Petitioner served written notice rejecting WarnerMedia's proposed modifications to the arbitration procedures, exercising a valid and enforceable right within the existing AAA Agreement to commit their accrued claims to AAA arbitration. *See* Opt-Out Letters. These letters establish the absence of assent irrespective of what new theories WarnerMedia offers.

It is worth reviewing here the fundamentals that animated the analysis in *Berman*: "To form a contract under . . . California law, the parties must manifest their *mutual assent* to the terms of the agreement." 30 F.4th at 855 (emphasis added). "To avoid the unfairness of enforcing contractual terms that consumers *never intended to accept*, courts confronted with online agreements such as those at issue here have devised rules to determine whether meaningful assent has been given." *Id*. at 856 (emphasis added). These principles apply equally to proposed modifications of existing contracts, which modifications themselves are contracts that "require[] mutual assent." 1 Witkin, Summ. of Cal. Law Contracts § 995 (11th ed. 2024); *Habtemariam v. Vida Cap. Grp., LLC*, No. 2:16-CV-01189, 2021 WL 1966325, at *5 (E.D. Cal. May 17, 2021) ("Under California law, contracts can be modified by subsequent agreements only with the parties' mutual assent.").

These basic principles are why, in California, courts allow parties like Petitioners to enforce provisions within contracts that exempt accrued or known claims from corporate efforts to move

---

[2] On August 1, 2024, Petitioners formally requested all documents on which WarnerMedia intended to rely in its supplemental submission so that they could assess and respond to any novel theories of assent. WarnerMedia objected to this request as premature and, as of 5:00 p.m. Eastern Time on the day of this filing, undersigned counsel has not received any such documents.

11

the arbitration goalposts. *See Peleg*, 204 Cal. App. 4th at 1465 ("An arbitration agreement that expressly exempts all claims, accrued or known, from contract changes is valid and enforceable without resort to the covenant."). WarnerMedia knew about Petitioners' claims here, as each Petitioner noticed a dispute under the AAA Agreement before the NAM Agreement took effect. ECF No. 81 at 8-9. WarnerMedia also gave each Petitioner, in the AAA Agreement, the option to exempt known claims from changes to the arbitration procedures:

> **Future Changes to Arbitration Provision**: Notwithstanding any provision in this Agreement to the contrary, we agree that if we make any future change to this arbitration provision (other than a change to the Notice Address), you may reject any such change by sending us written notice within 30 days of the change to the arbitration Notice Address provided above. By rejecting any future change, you are agreeing that you will arbitrate any dispute between us in accordance with the language of this provision.

ECF No. 48-2 at 48, 102, 147-48. Petitioners validly enforced that option under *Peleg*. Independently, and even if there were no opt-out provision for Petitioners to enforce, California's implied covenant of good faith and fair dealing bars unilateral modifications like the one WarnerMedia tries. *See, e.g., Peleg*, 204 Cal. App. 4th at 1465 ("A unilateral modification provision that is silent as to whether contract changes apply to claims, accrued or known, is impliedly restricted by the covenant so that changes do not apply to such claims."); *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 963 (2015) ("When one party to a contract retains the unilateral right to amend the agreement governing the parties' relationship, its exercise of that right is constrained by the covenant of good faith and fair dealing which precludes amendments that operate retroactively to impair accrued rights.").

Further, the Court should recognize *Peleg*'s and *Cobb*'s applicability even though this is a consumer case. "*Every contract* contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract." *Digerati Holdings, LLC v. Young Money Ent., LLC*, 194 Cal. App. 4th

873, 885 (2011) (emphasis added) (citing *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007)).  Illustrating this universality, the Ninth Circuit touched on the impropriety of Tinder's effort to avoid liability to consumers by revising its terms of use to bar class participation after users filed a putative class action.  *Kim v. Allison*, 87 F.4th 998, 1001 n.7 (9th Cir. 2023) (citing *Cobb*, 233 Cal. App. 4th at 966).  Relying on *Cobb*, the Ninth Circuit observed that this was a "retroactive waiver of rights that may be invalid under California law."  *Id*. at 1001, 1001 n.7.  *Cobb* itself was a case involving not employees, but members of a private club, which violated the implied covenant by purporting to change the club's bylaws to impair the contractual rights of current members.  *Id.* at 966.  A California court recently enforced *Peleg* to bar the retroactive modification of a consumer contract on this very ground.  *See* Pak Decl., Ex. 1 at *2-3.

California law prohibiting WarnerMedia's attempted modification reflects a fundamental concern:  Petitioners could not have understood that even after they exercised a right to preserve AAA arbitration *that WarnerMedia inserted* into the AAA Agreement, WarnerMedia would turn around and argue that their later behavior in reliance on that right forfeited the very AAA arbitrations they sought to preserve.  If Petitioners had that understanding, they could have conformed their behavior accordingly.  But they did not, because they would have first needed to divine that the AAA Agreement's opt-out provision was illusory.  Courts typically do the opposite.  *See, e.g.*, *DaPuzzo v. Globalvest Mgmt. Co., L.P.*, 263 F. Supp. 2d 714, 729 (S.D.N.Y. 2003) ("In accordance with cardinal doctrines of contract interpretation, courts must endeavor to read a contractual document in a manner that gives effect to all of its provisions . . . .") (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995)).  And even though the Court has questioned the import of the opt-out letters and, by extension, the opt-out provision in the AAA Agreement, WarnerMedia at minimum "drafted an ambiguous document, and . . . cannot now claim the benefit of the doubt.  The reason for this rule is to protect the party who did not

13

choose the language from an unintended or unfair result." *Mastrobuono*, 514 U.S. at 63.

*Third*, any novel theories WarnerMedia may advance today cannot show that Petitioners manifested unambiguous assent to the NAM Agreement. Petitioners Brooks and Walker had no interaction with the HBO Max or Max service at all after WarnerMedia attempted to impose the NAM Agreement. Petitioners Guzenski and Ortiz had access to HBO Max and Max content through third-party services after WarnerMedia attempted to impose the NAM Agreement, but did not form a contract with WarnerMedia through those third-party subscriptions—and did not personally access HBO Max or Max content, make payments to directly to WarnerMedia, or do anything aside from maintaining third-party services that granted them access to the platform which they did not use. That is not enough "action" to show assent. ECF No. 81 at 33. And while Petitioner Maldonado viewed HBO content more recently on a television that came with free access to that content, he at no point agreed to the NAM Agreement to do so, and in all events explicitly opted out of the NAM Agreement.

## V. THE COURT SHOULD IMPOSE SANCTIONS PURSUANT TO CAL. CIV. PROC. CODE § 1281.97 FOR WARNERMEDIA'S FAILURE TO ARBITRATE PURSUANT TO THE AAA AGREEMENT

Petitioners previously explained that WarnerMedia's conduct in refusing to register the AAA Agreement warrants sanctions under California law. ECF No. 13 at 26-29. The Court denied that request without prejudice. ECF No. 81 at 46. Petitioners renew their request.

California's Legislature passed a bill to prevent exactly the type of conduct WarnerMedia engaged in here. *See* S.B. 707, 2019–2020 Reg. Sess. (Cal. 2019), codified at Cal. Civ. Proc. Code § 1281.97; *see also* S.B. 707 § 1(d) ("A company's strategic non-payment of fees and costs severely prejudices the ability of employees or consumers to vindicate their rights. This practice is particularly problematic and unfair when the party failing or refusing to pay those fees and costs is the party that imposed the obligation to arbitrate disputes."). Where a "drafting party" like

14

WarnerMedia fails to pay within 30 days the fees and costs required before an arbitration can proceed under the rules of the arbitration administrator, the drafting party is in "material breach of the arbitration agreement." Cal. Civ. Proc. Code § 1281.97(a)(1). This breach gives consumers the right to "[c]ompel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration." *Id.* § 1281.97(b)(2).

Here, Petitioners brought AAA demands pursuant to the AAA Agreement over a year ago. The Court should compel those arbitrations because WarnerMedia's efforts to use the NAM Agreement as a diversion have uniformly failed. The AAA rules required WarnerMedia to pay certain fees and costs associated with registering the AAA Agreement, which WarnerMedia failed to do. ECF No. 13 at 18 (explaining fees WarnerMedia failed to pay); ECF No. 14-18 at 2 ("WarnerMedia failed to comply with the AAA's policies regarding consumer claims, as set forth in the Consumer Due Process Protocol (Protocol) and the Consumer Arbitration Rules (Rules), including the Costs of Arbitration"). WarnerMedia still has not paid those fees. In these circumstances, sanctions are mandatory. Cal. Civ. Proc. Code § 1281.97. The Court should impose them along with an order compelling arbitration pursuant to the AAA Agreement.

## CONCLUSION

For the reasons above, the Court should grant Petitioners' motion to compel arbitration pursuant to the AAA Agreement, deny WarnerMedia's cross-motion to compel arbitration pursuant to the NAM Agreement, and grant Petitioners' motion for the mandatory sanctions provided by California law.

Dated: October 11, 2024                                   Respectfully submitted,

                By:     /s/ Albert Y. Pak

**KELLER POSTMAN LLC**

Albert Y. Pak
Warren D. Postman (*pro hac vice* forthcoming)
1101 Connecticut Avenue N.W., Ste. 1100
Washington, DC 20036
(202) 918-1123
albert.pak@kellerpostman.com
wdp@kellerpostman.com

Kiran N. Bhat (*pro hac vice*)
2333 Ponce De Leon Boulevard, Ste. 100
Coral Gables, FL 33134
(305) 845-4684
kiran.bhat@kellerpostman.com

*Attorneys for Petitioners*