UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARCUS BROOKS, KATHARINE GUZENSKI, RODRIGO MALDONADO, CANDIDA ORTIZ, and COURTNEY WALKER,

                      Petitioners,

-v.-

WARNERMEDIA DIRECT, LLC,

                      Respondent.

23 Civ. 11030 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

At issue in this case are the parties' cross-petitions to compel arbitration: Petitioners Marcus Brooks, Katharine Guzenski, Rodrigo Maldonado, Candida Ortiz, and Courtney Walker seek to arbitrate their video-privacy claims before the American Arbitration Association ("AAA"), while Respondent WarnerMedia Direct, LLC ("WarnerMedia") seeks to arbitrate those claims before National Arbitration and Mediation ("NAM"). In its previous Opinion and Order issued on July 8, 2024 (the "July 2024 Order"), the Court directed the parties to conduct limited discovery into whether the five Petitioners had assented to an updated arbitration agreement with WarnerMedia — distributor of the HBO Max video-streaming service — to arbitrate their disputes before NAM instead of the AAA. In light of the results of that discovery, the Court grants Respondent's motion to compel arbitration before NAM with respect to Petitioners Maldonado, Ortiz, and Guzenski. Conversely, the Court denies Respondent's motion with respect to Petitioners Brooks and Walker and

instead grants Petitioners' motion to compel arbitration before the AAA with respect to those two individuals.

## BACKGROUND[1]

**A.   The Court's July 8, 2024 Order**

The factual background and procedural history of this case are described in detail in the Court's July 2024 Order.  (*See* Dkt. #81 (July 2024 Order)).  The Court will not repeat them here.  The Court also notes that it previously resolved several key issues in its July 2024 Order.  As such, the Court resists the parties' attempts at relitigating some of those issues in their supplemental briefs, and will not reconsider what it has already adjudicated.

*First,* the Court decided that both the AAA Agreement[2] and the NAM Agreement[3] cover Petitioners' claims in this case, and that the Court has

---

[1]   The facts set forth in this Opinion are drawn from the Court's July 8, 2024 Opinion and Order (Dkt. #81 ("July 2024 Order")), the Declarations of Michael W. McTigue Jr. (Dkt. #90 ("McTigue First Decl."), 103 ("McTigue Second Decl.")) and Naomi Waibel (Dkt. #91 ("Waibel Decl.")), filed in connection with Respondent's supplemental memorandum of law in support of its motion to compel arbitration before NAM, as well as the Declaration of Albert Y. Pak (Dkt. #95 ("Pak Decl.")), filed in connection with Petitioners' supplemental memorandum of law in opposition to Respondent's motion.  The Court also relies, as appropriate, on certain of the exhibits attached to those declarations ("[Name] Decl., Ex. [ ]").

For ease of reference, the Court refers to Respondent's supplemental memorandum of law in support of its motion to compel arbitration before NAM as "Resp. Supp. Br." (Dkt. #89); to Petitioners' supplemental memorandum of law in opposition to Respondent's motion as "Pet. Supp. Br." (Dkt. #94); and to Respondent's response to Petitioners' supplemental memorandum of law as "Resp. Supp. Reply" (Dkt. #102).

[2]   Consistent with the Court's July 2024 Order, the "AAA Agreement" refers to the HBO Max Terms of Use dated (i) April 29, 2020, (ii) October 19, 2021, and (iii) November 1, 2022, all of which designated the AAA as the arbitral forum.  (July 2024 Order at 4).

[3]   Consistent with the Court's July 2024 Order, the "NAM Agreement" refers to the HBO Max Terms of Use dated December 20, 2022 ("December 2022 Terms") and the Max Terms of Use dated May 23, 2023 ("May 2023 Terms"), both of which designated NAM as the arbitral forum.  (July 2024 Order at 5, 7-8).  Respondent updated the arbitral forum from the AAA to NAM in the December 2022 Terms.  (*Id.* at 5).

authority to compel arbitration before either arbitral forum. (July 2024 Order at 13-18, 44-46). *Second*, the Court explained that under California law, which governs the contract-formation issues in this case, the NAM Agreement is enforceable. (*Id.* at 19-22, 37). That is, the NAM Agreement was supported by consideration, and it is not procedurally or substantively unconscionable. (*Id.* at 37-44). In particular, the Court rejected Petitioners' argument that the NAM Agreement does not apply retroactively to claims that had already accrued at the time of the contract modification. (*Id.* at 40-41). *Third*, the Court evaluated Petitioners' rejection letters, which sought to opt Petitioners out of Respondent's new terms updating the arbitral forum from the AAA to NAM ("December 2022 Terms"), and determined that the opt-outs are irrelevant to the Court's analysis. (*Id.* at 36). Because the Court has already decided that the NAM Agreement is enforceable and that the rejection letters are irrelevant, the Court will not address Petitioners' renewed contention that "WarnerMedia's attempted contract modification is invalid under California law." (Pet. Supp. Br. 11-14). Similarly, to the extent that Respondent seeks to challenge the Court's authority to compel arbitration before the AAA (*see* Resp. Supp. Br. 15 & n.8), the Court also declines to reexamine that issue.

Rather, the Court made clear in the July 2024 Order that it was granting limited discovery for the purpose of resolving the sole issue of "whether Petitioners assented to the NAM Agreement." (July 2024 Order at 19). To that end, it directed the parties to exchange discovery as to whether any of the five Petitioners used Respondent's platform as an "authorized user" after the

3

December 2022 Terms came into effect. (*Id.* at 30, 33, 35). In addition, it asked the parties to ascertain whether Petitioner Guzenski had clicked the "Start Streaming" button when she visited Respondent's platform in June 2023 and thereby agreed to the updated arbitration terms. (*Id.* at 35). As the Court explained, if the parties uncovered evidence of Petitioners' assent in the course of this limited discovery, then the Court would enforce the updated NAM Agreement. (*Id.* at 44-47). Otherwise, Petitioners' claims would be covered by the original terms, which instructed the parties to arbitrate before the AAA. (*Id.*).

Finally, because the Court had yet to rule on the enforceability of either arbitration agreement, it dismissed Petitioners' request for sanctions without prejudice to renew and deferred any ruling on the issue of sanctions. (July 2024 Order at 46).

**B.    Discovery Findings**

Following the Court's July 2024 Order, the parties conducted limited discovery, which yielded additional evidence pertaining to three of the five Petitioners.[4]

*First*, Petitioner Maldonado accessed Respondent's platform on his Roku TV at home and streamed HBO Max content for at least three weeks between December 28, 2022, and May 16, 2023. (McTigue First Decl., Ex. 13 at 5; Waibel Decl. ¶ 25 (WarnerMedia's internal records reflecting that Mr.

---

[4]   Respondent acknowledges that "[d]iscovery did not provide additional information relevant to Petitioners Brooks and Walker." (Resp. Supp. Br. 2-3 (emphasis omitted)).

4

Maldonado used HBO Max on 48 different dates); *see* McTigue First Decl., Ex. 14 at 14:9-14:13 (Mr. Maldonado testifying that he watched "White Lotus" and "The Last of Us" during that period)). Mr. Maldonado did so through an account belonging to an individual named Jack Hardamson, whom Mr. Maldonado claims not to know. (McTigue First Decl., Ex. 14 at 12:17-13:16; Waibel Decl. ¶ 25).

*Second*, Petitioner Ortiz purchased a month-to-month, advertisement-free subscription to HBO Max through a third party, T-Mobile, and was aware that she had "full access" to Respondent's services until she cancelled her T-Mobile account in June 2023. (McTigue First Decl., Ex. 16 at 19:2-20:4; Waibel Decl. ¶ 28). Ms. Ortiz testified that although her subscription was month-to-month, she did not attempt to cancel it before June 2023. (McTigue First Decl., Ex. 16 at 23:18-23:24, 24:20-24:23). She paid $15.99 a month to maintain her HBO Max subscription through T-Mobile. (Waibel Decl. ¶ 28).

*Third*, Petitioner Guzenski clicked the "Start Streaming" button at 11:34 a.m. Pacific Time on June 22, 2023, accepting the updated terms and acknowledging that she had read Respondent's privacy policy. (Waibel Decl. ¶ 17). After clicking the "Start Streaming" button, she was presented with a screen informing her that her subscription had lapsed. (*Id.*). Ms. Guzenski claims that she did not click the button and instead "swiped . . . away" the new terms, which were presented to her in a pop-up when she logged into the HBO Max application to access her account in June 2023. (McTigue First Decl., Ex. 9 at 21:6-21:22 (Ms. Guzenski testifying that "[i]t was not a stand-alone

5

screen")). However, Respondent's business records reflect that users like Ms. Guzenski who had "legacy HBO Max credentials were presented with [a] stand-alone screen and were required to click 'Start Streaming' to access their account[s]." (Waibel Decl. ¶ 16). In response to the question of whether she had any evidence to refute Respondent's business records, Ms. Guzenski testified that she did not. (McTigue First Decl., Ex. 9 at 23:15-23:19). In addition, Ms. Guzenski also paid for a subscription to HBO Max through a third-party, Hulu, from March to August 2023. (McTigue First Decl., Ex. 9 at 15:13-18:22; *see id.*, Ex. 11 at KG000005-11). She testified that she added the HBO Max bundle to her Hulu subscription so that her sister could "keep using [HBO Max] should she need it." (*Id.*, Ex. 9 at 18:17-18:20).

## DISCUSSION

### A. Applicable Law

Under the Federal Arbitration Act (the "FAA"), a party to an arbitration agreement can petition the appropriate federal district court for an order compelling arbitration when its counterparty "fail[s], neglect[s], or refus[es] ... to arbitrate" under the terms of the agreement. 9 U.S.C. § 4. The court ruling on such a motion must decide "[i] whether the parties agreed to arbitrate, and, if so, [ii] whether the scope of that agreement encompasses the claims at issue." *Holick* v. *Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Bank Julius Baer & Co., Ltd.* v. *Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005), *abrogated on other grounds by Granite Rock Co.* v. *Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010)). The court

6

must also evaluate any evidence pertaining to arbitrability under a standard similar to that for summary judgment — that is, it must consider all relevant and admissible evidence and draw all reasonable inferences in favor of the non-moving party. *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017).

Under California law, which is the relevant state law for evaluating assent in this case, the parties to an agreement formed online may manifest their mutual assent to its terms on an inquiry-notice theory. *Berman* v. *Freedom Fin. Network, LLC*, 30 F.4th 849, 855-56 (9th Cir. 2022). The theory requires that "[i] the website provide[ ] reasonably conspicuous notice of the terms to which the consumer will be bound," and that "[ii] the consumer take[ ] some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at 856. For example, individualized email notice of changing terms "in combination with a user's continued use is enough for notice and assent." *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016).

**B.     Analysis**

As the Court explained above, it has already determined that Petitioners' claims fall within the scope of both the AAA and NAM Agreements (July 2024 Order at 44-46), and that Respondent provided reasonably conspicuous notice of the change in terms from the AAA to NAM through email (*id.* at 25). Therefore, the sole remaining issue that the Court must now resolve is whether Petitioners took some action "that unambiguously manifest[ed] [their] … assent to those terms." *Berman*, 30 F.4th at 856. It finds that three of the five

7

Petitioners — Mr. Maldonado, Ms. Ortiz, and Ms. Guzenski — agreed to the updated terms, while the other two — Mr. Brooks and Ms. Walker — remained bound by the original AAA Agreement.[5]

### 1. Petitioner Maldonado Assented to the NAM Agreement

Mr. Maldonado manifested his unambiguous assent to the NAM Agreement through his continued use of Respondent's platform after the updated terms came into effect. Limited discovery uncovered evidence that Mr. Maldonado accessed Respondent's platform and streamed HBO Max content on his Roku TV at home for at least three weeks between December 28, 2022, and May 16, 2023. (McTigue First Decl., Ex. 13 at 5; Waibel Decl. ¶ 25). Because Mr. Maldonado benefitted from Respondent's services through his continued use of HBO Max, albeit on someone else's account, his conduct meets the threshold for assent. *See, e.g.*, *Sadlock* v. *Walt Disney Co.*, No. 22 Civ. 9155 (EMC), 2023 WL 4869245, at *12-13 (N.D. Cal. July 31, 2023) (determining that plaintiff "unambiguous manifested assent to the terms of [an arbitration] agreement by continuing to use the streaming service after he received . . . emails" notifying him of the updated terms); *Marshall* v. *Hipcamp Inc.*, 735 F. Supp. 3d 1283, 1289, 1295 (W.D. Wash. 2024) (applying equitable estoppel to

---

[5]  Petitioners argue that Respondent has waived novel theories of assent that it did not previously raise. (Pet. Supp. Br. 10-11). To the extent that limited discovery uncovered evidence of assent that Respondent did not discuss in its main briefing, the Court allows Respondent to proceed on those theories in light of its general order directing the parties to conduct discovery into Petitioners' assent to the NAM Agreement. (*See, e.g.*, July 2024 Order at 47).

8

a nonsignatory who benefitted from and "knowingly exploit[ed]" a contract between his romantic partner and a camping website and mobile app).

Mr. Maldonado argues that he was not an "authorized user" on Jack Hardamson's HBO Max account, especially because there is no evidence showing that Mr. Maldonado knows Mr. Hardamson. *Cf. Mey* v. *DIRECTV, LLC*, 971 F.3d 284, 288-89 (4th Cir. 2020) (finding assent when plaintiff opened a new phone line on her husband's account because she was "an authorized user who purportedly signed on his behalf"). (Pet. Supp. Br. 6, 8-9; McTigue First Decl., Ex. 14 at 12:17-13:16; Waibel Decl. ¶ 25). To be sure, in the cases cited by the parties in their supplemental briefs — and to the best of the Court's knowledge — an "authorized user" and the primary account holder typically share some sort of personal relationship. *See Mey*, 971 F.3d at 288 (marriage); *Marshall*, 735 F. Supp. 3d at 1289 (romantic partnership); *Doherty* v. *Barclays Bank Del.*, No. 16 Civ. 1131 (AJB) (NLS), 2017 WL 588446, at *1, 3-4 (S.D. Cal. Feb. 14, 2017) (evaluating whether plaintiff assented to an arbitration agreement as an authorized user on his father's credit card account).

But whether Mr. Maldonado knows Mr. Hardamson personally is irrelevant to the Court's inquiry, which ultimately turns on actual use. *Cf. Doherty*, 2017 WL 588446, at *4 (declining to find assent where plaintiff disputed "having knowledge that he was an authorized user" and using the credit card account to make balance transfers). Here, there is no doubt that Mr. Maldonado knew that he was accessing HBO Max through another person's account and using Respondent's platform to stream content.

9

Moreover, Respondent's December 2022 Terms were expansive in scope and covered "all authorized or unauthorized users or beneficiaries of the [HBO Max] Platform under this or prior Agreements." (McTigue First Decl., Ex. 5 § 5.4(a)). Therefore, authorized or not, Mr. Maldonado's use of HBO Max services after the effective date of the NAM Agreement qualifies as conduct manifesting his assent to Respondent's updated terms.

### 2. Petitioner Ortiz Assented to the NAM Agreement

Ms. Ortiz assented to the December 2022 Terms by paying for and maintaining a monthly HBO Max subscription through T-Mobile for about six months after she received email notice of the updated terms. (McTigue First Decl., Ex. 16 at 19:2-20:4; Waibel Decl. ¶ 28). Because her subscription was month-to-month, if Ms. Ortiz "wanted to avoid agreeing to the new contract, [s]he had the ability simply to end h[er] business relationship with [Respondent]." *James* v. *Comcast Corp.*, No. 16 Civ. 2218 (EMC), 2016 WL 4269898, at *2 (N.D. Cal. Aug. 15, 2016). Instead of cancelling her subscription, however, Ms. Ortiz continued to pay for it until June 2023, thus "evidencing h[er] agreement to be bound by" the updated terms. *Id.*; *accord Olsen* v. *Charter Commc'ns, Inc.*, No. 18 Civ. 3388 (JGK), No. 18 Civ. 4972 (JGK), 2019 WL 3779190, at *6 (S.D.N.Y. Aug. 9, 2019) (finding assent when plaintiffs "paid their June and July billing statements without objection … [and] continued to accept [defendant's] internet services afterwards"); *Sadlock*, 2023 WL 4869245, at *12 ("This does not appear to be a situation where, *e.g.*, [plaintiff] was bound to an agreement with Disney that lasted for a year, with

Disney changing terms midstream wherein [plaintiff] was forced to live with those new terms until the year-long contract expired.").

### 3. Petitioner Guzenski Assented to the NAM Agreement

Ms. Guzenski manifested her unambiguous assent by clicking the "Start Streaming" button on June 22, 2023. (Waibel Decl. ¶ 17). In its July 2024 Order, the Court established that "clicking the 'Start Streaming' button *does* constitute unambiguous assent" to the NAM Agreement. (July 2024 Order at 34). That is because Respondent "explicitly advised that the act of clicking will constitute assent to the terms and conditions of [its updated] agreement." *Berman*, 30 F.4th at 857. (*See* July 2024 Order at 34-35). Although Ms. Guzenski denies clicking the button, she offers no evidence contradicting Respondent's business records showing that she did. (*See* McTigue First Decl., Ex. 9 at 23:15-23:19). The Court cannot accept her "own speculative[ ] and subjective[ ] testimony" in light of Respondent's "hard evidence adduced during discovery." *Deebs* v. *Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) (summary order) (internal quotation marks omitted).

In addition, like Ms. Ortiz, Ms. Guzenski also paid for a monthly HBO Max subscription through a third-party from March to August 2023, months after the December 2022 Terms took effect. (McTigue First Decl., Ex. 9 at 15:13-18:22; *see id.*, Ex. 11 at KG000005-11). Her continued payment serves as additional evidence of assent. *See James*, 2016 WL 4269898, at *2.

11

### 4. Petitioners Brooks and Walker Did Not Assent to the NAM Agreement

Limited discovery did not yield additional evidence pertaining to Petitioners Brooks and Walker. Because the existing record does not contain evidence of their assent to the NAM Agreement, the Court finds that Respondent "has failed to carry its burden in showing the existence of an agreement to arbitrate [before NAM] between the parties by a preponderance of the evidence," and that "arbitration [before NAM] is inappropriate." *Doherty*, 2017 WL 588446, at *4. Instead, having already found that Mr. Brooks and Ms. Walker assented to arbitrating their disputes before the AAA and that the AAA Agreement covers those disputes (July 2024 Order at 18, 44-46), the Court now grants Petitioners' motion to compel arbitration before the AAA with respect to those two individuals.

### 5. Sanctions Are Not Warranted

In their supplemental brief, Petitioners renew their request for sanctions under California law. (Pet. Supp. Br. 14-15). Specifically, Petitioners argue that under Section 1281.97 of the California Code of Civil Procedure, consumers like themselves can "[c]ompel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration" when the drafting party is in material breach of the arbitration agreement, in this case by failing to pay certain fees and costs necessary to initiate arbitration within 30 days of the due date. Cal. Civ. Proc. Code § 1281.97(a)(1), (b)(2). (Pet. Supp. Br. 14-15). Here, according to Petitioners, Respondent failed to pay certain fees and costs required to register the AAA Agreement. (*Id.* at 15).

Petitioners therefore ask this Court to "impose [sanctions] along with an order compelling arbitration pursuant to the AAA Agreement." (*Id.*).

The Court cannot award sanctions under Section 1281.97 because such an award violates the equal-treatment principle of the FAA. Indeed, several district courts in the Ninth Circuit have already found that the FAA preempts Section 1281.97 for that reason. *See, e.g., Belyea* v. *GreenSky, Inc.*, 637 F. Supp. 3d 745, 759 (N.D. Cal. 2022); *Martinez* v. *Refinitiv, Ltd.*, No. 24 Civ. 5481 (JLS) (JPR), 2024 WL 5424373, at *3-4 (C.D. Cal. Nov. 14, 2024). This Court agrees. Under the equal-treatment principle, a court may not invalidate an arbitration agreement based on "legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Viking River Cruises, Inc.* v. *Moriana*, 596 U.S. 639, 650 (2022) (quoting *Kindred Nursing Ctrs. Ltd. P'ship* v. *Clark*, 581 U.S. 246, 251 (2017)). As a result, the FAA "preempts any state rule discriminating on its face against arbitration." *Id.* (internal quotation marks omitted) (quoting *Kindred Nursing Ctrs. Ltd. P'ship*, 581 U.S. at 251). Section 1281.97 is one such rule because it imposes a 30-day payment deadline and, if that deadline is not met, gives the non-drafting party the option to either withdraw from arbitration or compel arbitration. *Belyea*, 637 F. Supp. 3d at 758; *see* Cal. Civ. Proc. Code § 1281.97(b)(1)-(2). That Petitioners wish to compel arbitration instead of withdrawing from it in this case makes no difference, as Section 1281.97 is ultimately a rule that "affects the 'enforceability'" of an arbitration agreement,

enabling one side to enforce the contract or not. *Belyea*, 637 F. Supp. 3d at 758.

Furthermore, to the extent that Petitioners are asking this Court to compel Respondent to pay the fees and costs required to initiate arbitration with the AAA, that is "a procedural issue entrusted to the arbitrator or arbitral body — not the court — for resolution within [the arbitration] proceeding." *Frazier* v. *X Corp.*, — F.4th —, No. 24-1948, 2025 WL 2502133, at *1 (2d Cir. Sept. 2, 2025). The Second Circuit made clear in *Frazier* that there is "no role for a court to involve itself in a dispute in an ongoing arbitral proceeding over a party's payment of fees or compliance with arbitral policies under [the FAA]." *Id.* at *9. That is exactly the case here. Under the AAA's rules, Respondent must pay certain fees and costs to register its arbitration agreement. (*See* Pet. Supp. Br. 15). The AAA declined to administer the arbitrations that Petitioners seek here because Respondent refused to pay the fees and costs in violation of the AAA's rules. (Dkt. #13 at 22). In short, the AAA's application of its own policies and its allocation of arbitral fees are procedural issues outside the purview of this Court.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Respondent's motion to compel arbitration before NAM and in accordance with the NAM Agreement with respect to Petitioners Maldonado, Ortiz, and Guzenski. The Court DENIES IN PART Respondent's motion with respect to Petitioners Brooks and Walker. And it GRANTS IN PART Petitioners' motion to compel arbitration

14

before the AAA and in accordance with the AAA Agreement with respect to Petitioners Brooks and Walker. Furthermore, the Court DENIES Petitioners' request for sanctions. Finally, although neither side has requested a stay, the Court exercises its own discretion and STAYS the case pending the completion of the arbitration proceedings. *See Occilien* v. *Related Partners, Inc.*, No. 19 Civ. 7634 (KPF), 2021 WL 184399, at *9 (S.D.N.Y. Jan. 19, 2021) ("[W]hen a stay is not requested, the district court has discretion in determining whether to stay or dismiss the case pending arbitration."); *see also Katz* v. *Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015) ("A stay enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award."). The parties are directed to file joint status updates on the arbitration proceedings in each forum every six months, with the first set of updates due on or before **May 4, 2026**.

      SO ORDERED.

Dated:    November 4, 2025
           New York, New York

                                            KATHERINE POLK FAILLA
                                            United States District Judge